RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| VIEWSTAR LLC, | : |
| | :    Case No.: 24-22716 (SHL) |
| Debtor. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF HEARING ON DEBTOR'S MOTION
### TO APPROVE DEBTOR-IN-POSSESSION FINANCING

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the annexed motion (the "Application") of Viewstar LLC (the "Debtor"), pursuant to sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), for entry of an order authorizing the Debtor to obtain post-petition debtor-in-possession financing in the amount of up to $125,000.00 (the "DIP Loan") from 10 Mountainview LLC ("10 Mountainview," or the "DIP Lender") pursuant to the terms of that certain *DIP Loan Term Sheet* executed by the Debtor and the DIP Lender and annexed to the Motion as Exhibit A (the "DIP Term Sheet") will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, on **March 6, 2025 at 10:00**

**a.m.**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing and filed with the Bankruptcy Court in accordance with the Local Rules, and served upon undersigned counsel for the Debtor so as to be received no later than **February 27, 2025** (the "Objection Deadline"). If no objections are timely filed and served by the Objection Deadline, the Motion may be signed by the Bankruptcy Court without a hearing.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to participate in the Hearing, whether making a "live," or "listen only" appearance before the Court, must make an electronic appearance utilizing the Electronic Appearance portal located at the Court's website at: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be entered no later than 24 hours in advance of the Hearing. Requests to receive a Zoom link should not be emailed to the Court, and the Court will not respond to late requests that are submitted on the day of the hearing. Further information can be found at the Court's website at https://www.nysb.uscourts.gov/zoom-videohearing-guide.

**PLEASE TAKE FURTHER NOTICE** that the moving and objecting parties are required to attend the Hearing, and failure to attend may result in relief being granted or denied upon default.

Dated: New York, New York
January 29, 2025

RUBIN LLC

By:    */s/ Paul A. Rubin*
      Paul A. Rubin
      Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

R<span>UBIN</span> LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| VIEWSTAR LLC, | : |
| | :    Case No.: 24-22716 (SHL) |
| Debtor. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**DEBTOR'S MOTION TO APPROVE DEBTOR-IN-POSSESSION FINANCING**</u>

Viewstar LLC, the debtor and debtor in possession herein (the "<u>Debtor</u>"), hereby submits this motion (the "<u>Motion</u>"), pursuant to sections 105 and 364 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), for entry of an order, substantially in the form annexed hereto (the "<u>DIP Order</u>") authorizing the Debtor to obtain post-petition debtor-in-possession financing in the amount of up to $125,000 (the "<u>DIP Loan</u>") from 10 Mountainview LLC ("<u>10 Mountainview</u>," or the "<u>DIP Lender</u>") pursuant to the terms of that certain *DIP Loan Term Sheet* executed by the Debtor and the DIP Lender and annexed hereto as <u>Exhibit A</u> (the "<u>DIP Term Sheet</u>"). In support of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1.      The Debtor seeks approval of a modest DIP Loan in the amount of up to $125,000.00 in order to cover the expenses of administration of the Debtor's chapter 11 case with the goal of promptly commencing a marketing and sale process for the Debtor's sole significant asset, the Property (defined below).  While the Debtor acknowledges that the DIP Lender is an insider of the Debtor, the Debtor, through its restructuring officer and counsel engaged in arms' length, good faith negotiations that resulted in the DIP Term Sheet, which does not contain any onerous or extraordinary provisions.  The Motion is not a request for section 364(d) priming financing.  Moreover, the Debtor was unable to obtain post-petition financing from other sources, because the potential lenders contacted by the Debtor were unwilling to provide debtor-in-possession financing in such a small amount on an unsecured basis.

2.      Thus, the DIP Loan represents the only option for the Debtor to be able to obtain the funds necessary to administer its chapter 11 case for the benefit of the Debtor, its estate, and all creditors.

## BACKGROUND

### The Mortgage Loans

3.      The Debtor is the owner of real property located at `10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property").  The Property does not have any tenants and is currently vacant.

4.      The Property is encumbered by a senior mortgage lien dated April 1, 2020 (the "Senior Mortgage") securing a loan (the "Senior Mortgage Loan") from Sterling National Bank ("Sterling") to the Debtor in the restated original principal amount of $12,600,000.00.  By virtue

---

[1] Capitalized terms used but not defined in the Preliminary Statement have the meaning ascribed to them below.

of certain allonges and assignments executed by Sterling, RREF IV-D SN Portfolio, LLC (the "Senior Mortgagee") is the holder of the Senior Mortgage.

5.      The Property is also encumbered by a junior mortgage lien dated April 1, 2020 (the "Junior Mortgage") securing a loan (the "Junior Mortgage Loan") from 10 Mountainview to the Debtor in the original principal amount of $4,200,000.00.

**The Foreclosure Action**

6.      In July 2022, the Debtor failed to make certain required payments under the Senior Mortgage Loan, and the Senior Mortgagee delivered default notices to the Debtor in connection with the Debtor's default.

7.      As a result of the Debtor's defaults, on September 28, 2022, the Senior Mortgagee commenced a foreclosure action (the "Foreclosure Action") in the Superior Court of New Jersey, Bergen County (the "State Court") to foreclose on the Senior Mortgage.  In the Foreclosure Action, the State Court appointed a receiver (the "Receiver") for the Property.  On March 7, 2024, the State Court awarded the Senior Mortgagee a Final Judgment in Foreclosure and Sale (the "Foreclosure Judgment").

8.      On or about June 19, 2024, the Sherriff of Bergen County noticed a foreclosure sale of the Property scheduled for July 26, 2024 at 12:00 p.m.

**The Involuntary Chapter 7 Case**

9.      On the morning of July 26, 2024, just hours before the scheduled foreclosure sale of the Property, an individual named Deahn Meir (the 'Petitioning Creditor"), purporting to be a creditor of the Debtor with a claim in the amount of $100,000.00 based on a loan, filed an involuntary petition (the "Involuntary Petition") under chapter 7 of the Bankruptcy Code against the Debtor in the United Staes Bankruptcy Court for the District of New Jersey (the "NJ Bankruptcy Court"), commencing the Debtor's involuntary chapter 7 case, which was assigned

case number 24-17410 (RG) (Gambardella, J.) (the "Involuntary Chapter 7 Case").

**Commencement Of The Chapter 11 Case**

10.     Following the filing of the Debtor's Involuntary Chapter 7 Case, the Debtor retained bankruptcy counsel to address the involuntary filing.  The Debtor determined, in consultation with its professionals, that the voluntary filing of a chapter 11 case in order to conduct an orderly marketing and sale process for the Property would maximize value and prevent potential future involuntary cases filed against the Debtor, even if the Debtor were successful in dismissing the Involuntary Chapter 7 Case.

11.     Before filing its own voluntary chapter 11 case, the Debtor conferred with counsel for the Senior Mortgagee and the Junior Mortgagee, both of whom expressed support for a chapter 11 case with venue in this Court, rather than through the Involuntary Chapter 7 Case in the NJ Bankruptcy Court.  The Debtor also retained Lee E. Buchwald as the Debtor's restructuring officer (the "Restructuring Officer").

12.     On August 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, commencing the above-captioned chapter 11 case (this "Chapter 11 Case").

13.     Following the Petition Date, the Debtor, through the Restructuring Officer, sought post-petition financing to fund the costs of administrative expenses incurred by the Debtor and its professionals in the Chapter 11 Case.  The Restructuring Officer contacted three potential lenders who provide small DIP real estate loans.  One is based in New York City, another is based in Miami, and the third is based in Westport, Connecticut.  But no lender was willing to extend post-petition financing for such a small amount on an unsecured basis.  The Senior Mortgagee also informed the Debtor that it would not be willing to provide a DIP loan and would not consent to any attempt to prime its liens with post-petition liens on the Property in favor of a DIP lender.  Left

4

with no other alternative, the Debtor approached 10 Mountainview and negotiated with it to provide the DIP Loan.

14.     The Debtor has also been negotiating with the Senior Mortgagee to formulate a joint chapter 11 plan, for which the Debtor and the Senior Mortgagee will be plan co-proponents. The proposed plan will provide for a sale of the Property and a distribution to general unsecured creditors regardless of whether proceeds from the sale of the Property are sufficient to satisfy all secured claims.

**The Proposed DIP Loan**

15.     The following disclosures regarding the Debtor's request for post-petition financing are made in compliance with the requirements of Local Rule 4001-2(a):

i.      The amount of the DIP Loan is up to $125,000.00.

ii.     The conditions to closing on the DIP Loan is the entry of the DIP Order and no trustee, examiner or receiver (other than the pre-petition receiver) having been appointed for the Debtor.

iii.    The DIP Loan will mature upon the earlier of (a) 180 days from entry of the DIP order, (b) the closing on the sale of the Property, and (c) the effective date of any confirmed chapter 11 plan for the Debtor. The DIP Loan will bear interest at 12% and default interest at 20%.

iv.     The DIP Loan will not prime any existing liens securing claims against the Debtor. The DIP Loan will constitute a claim entitled to "super-priority" status.

v.      The DIP Term Sheet provides for a carve-out for (a) all U.S. Trustee's fees and Court fees, (b) fees and expenses of any chapter 7 trustee, not to exceed $25,000, (c) the allowed fees and expenses of professionals retained by the Debtor, and (d) the fees of the Restructuring Officer.

vi.     The DIP Term Sheet does not contain any cross-collateralization provisions.

vii.    The DIP Term Sheet does not contain any rollup provisions.

viii.   The DIP Term Sheet does not contain any provision that would limit the Court's power or discretion, or interfere with the Debtor's exercise of its fiduciary duties or its rights and powers.

ix.      The DIP Loan proceeds shall not be used to challenge any of the DIP Lender's pre-petition loan documents.

x.       The DIP Lender may terminate the DIP Loan upon the occurrence of any event of default as set forth in the DIP Term Sheet. The following are events of default under the DIP Term Sheet: (a) the filing of a chapter 11 plan not consented to by the DIP Lender; (b) the filing of a pleading seeking to vacate or modify the DIP Order; (c) dismissal or conversion of the Debtor's chapter 11 case; (d) default on the DIP Loan; (e) appointment of a chapter 11 trustee or examiner with expanded powers; (f) a sale of the Property, unless such sale is conducted in accordance with bid procedures approved by the DIP Lender; (g) the Debtor's filing, or support of, a motion to grant a claim priority status senior to the super-priority claim for the DIP Loan; (h) the granting of any lien senior to the DIP Loan; and (i) any successful challenge to the DIP Lender's pre-petition loan documents.

xi.      The DIP Term Sheet does not contain any change-in-control provisions.

xii.     The DIP Term Sheet does not contain any deadline for the sale of the Property.

xiii.    The DIP Term Sheet does not contain any prepayment penalty.

xiv.     The chapter 11 case is not jointly-administered with any other case, so the DIP Term Sheet does not contain any provisions governing inter-debtor claims.

xv.      The DIP Term Sheet does not contain any provisions for funding non-debtor affiliates.

xvi.     The DIP Term Sheet does not contain any provisions requiring the Debtor to pay DIP Lender's expenses or attorney's fees in connection with the DIP Loan.

xvii.    All defined terms are defined in the Motion

xviii.   The DIP Term Sheet does not contain any provisions regarding the reaffirmation of the DIP Lender's prepetition loan documents.

16.      Based on the disclosures made above, the Debtor has also complied with the requirements under Local Rule 4001-2(b) to describe the Debtor's efforts to obtain financing, the basis for the Debtor's determination that the DIP Loan is on the best terms available, and whether the DIP Loan is being extended in good faith.

## BASIS FOR RELIEF REQUESTED

17.     The obtaining of post-petition credit afforded super-priority administrative status is governed by section 364(c) of the Bankruptcy Code, which provides that "[i]f the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

18.     Courts have articulated a three-part test to determine whether financing should be authorized under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

> a.     the debtor is unable to obtain unsecured credit under section 364(b), *i.e.*, by allowing a lender only an administrative claim;
>
> b.     the credit transaction is necessary to preserve the assets of the estate; and
>
> c.     the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

19.     The Debtor has sought out financing from all of its known sources, and the DIP Loan offered by the DIP Lender was the only financing available to the Debtor on the expedited time frame necessitated by the need for the prompt commencement of a sale process for the Property.  The Debtor was unable to obtain unsecured financing with other potential lenders, and the DIP Lender required the DIP Loan to be granted super-priority administrative status.  The DIP Loan is necessary cover the expenses (including professional fees) necessary to preserve the assets

of the estate, and the terms of the DIP Loan Term sheet were heavily negotiated at arm's length and in good faith. The DIP Loan constitutes the only path for the Debtor to be able to fund the expenses of administration of the chapter 11 case to enable the Debtor to maximize value through a robust sale process for the benefit of all creditors.

20.     Moreover, approval of the DIP Loan will not prejudice any creditors. The terms of the DIP Term Sheet do not require the Debtor to grant liens to secure the financing, and the DIP Loan does not prime the existing liens of other creditors of the Debtor, including the liens of the Senior Mortgagee. Accordingly, approval of the DIP Financing is in the best interest of the Debtor, its estate, and creditors.

WHEREFORE, based on all of the foregoing, the Debtor respectfully requests that the Court grant the Motion, enter the DIP Order annexed hereto authorizing the Debtor to obtain the DIP Loan on the terms of the DIP Term Sheet, and grant the Debtor such other and further relief as is just and proper.

Dated: New York, New York
      January 29, 2025

<div style="margin-left: 40%;">

RUBIN LLC

By:   */s/ Paul A. Rubin*
     Paul A. Rubin
     Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

</div>

# EXHIBIT A

## (DIP Term Sheet)

# DIP LOAN TERM SHEET

| | |
|---|---|
| Borrower | Viewstar LLC, a New Jersey limited liability company (the "Debtor"), in Chapter 11 Case, Case No. 24-22716-SHL (the "Chapter 11 Case") filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). |
| Lender | 10 Mountainview LLC, a New York limited liability company (the "DIP Lender" or "10 Mountainview"). |
| Loan Amount | An aggregate principal amount of up to $125,000.00 (the "DIP Loan" and, together with any interest, the "DIP Obligations"). |
| Structure | The DIP Loan proceeds shall be available as a debtor-in-possession term loan to the Debtor in a multiple draw facility based on the approval of Mr. Lee E. Buchwald, the Debtor's Restructuring Officer (the "CRO") and the DIP Lender (together, the "Parties"). <br><br> The DIP Loan shall be documented in the form of this term sheet (the "DIP Term Sheet"), duly executed by the Parties and annexed as an exhibit to the order entered by the Bankruptcy Court approving the terms of the DIP Loan on a final basis (the "DIP Order"), which shall be in form and substance acceptable to the DIP Lender in its sole discretion. |
| Use of Proceeds | The DIP Loan proceeds shall be used by the Debtor to pay the fees and expenses of the Debtor's professionals and the CRO, fees owed to the Office of the United States Trustee, and operating and other expenses incurred by the CRO on behalf of the Debtor. For the avoidance of doubt, the DIP Loan proceeds shall not be used to Challenge any of the DIP Lender's pre-petition loan documents (the "Prepetition Loan Documents"). |
| Maturity | The DIP Loan shall mature (the "Maturity Date") upon the earliest to occur of: (i) 180 days from the entry of the DIP Order; (ii) the closing of a sale of substantially all of the Debtor's assets to the highest and best bidder in accordance with Bid Procedures (defined below); and (iii) the effective date of a confirmed chapter 11 plan for the Debtor. |
| Funding | The DIP Loan shall be funded solely from the DIP Loan proceeds provided by the DIP Lender. With respect to each drawing made by the Debtor, the DIP Lender shall not provide any funds to the Debtor unless: (i) it receives a written draw request from the Debtor on two business days' notice; and (ii) the DIP Lender has received from the CRO a schedule of payments supporting each draw request which shall be approved by the DIP Lender in consultation with the CRO. |

| | |
|---|---|
| Interest Rate | 12% per annum, accruing monthly and payable on the Maturity Date. Interest shall be calculated on the basis of the actual number of days elapsed in a 360-day year. |
| Default Interest Rate | Upon the occurrence of and during the continuation of an Event of Default, as defined below, the DIP Loan will automatically bear interest at a rate of 20% per annum, accruing monthly and payable on the Maturity Date. |
| Amortization | None. |
| Priority and Security | All obligations of the Debtor to the DIP Lender with respect to the DIP Loan and the DIP Loan proceeds shall at all times constitute a claim against the Debtor and its estate in the Chapter 11 Case, which is an administrative expense claim having priority, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, and seniority (in each case, subject to the Carve-Out (as defined below)), over any and all allowed administrative expenses and secured and unsecured claims against the Debtor or its estate, now existing or hereafter arising, including, without limitation, administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(b) and (c), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 or 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code (such claim, a "<u>Super-Priority Claim</u>").<br><br>Subject to the Carve-Out, any such Super-Priority Claim shall have recourse to and be payable from all pre-petition and post-petition property and assets of the Debtor and its estate, and all proceeds thereof, including for the avoidance of doubt: (i) claims against the Debtor's directors and officers (if any); and (iii) the proceeds of any and all avoidance power claims or causes of action under sections 544, 545, 547, 548 through 551, and 553(b) of the Bankruptcy Code. |
| Carve-Out | The carve-out (the "<u>Carve-Out</u>") shall be the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee for Region 2 under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. §3717; (ii) all reasonable and documented fees and expenses, in an aggregate not to exceed $25,000, incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed by the Bankruptcy Court at any time, whether by interim or final compensation or other order, all accrued and unpaid claims for fees, costs and expenses incurred by persons or firms retained by the Debtor appointed pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code; and (iv) the fees of the CRO. |

| | |
|---|---|
| Credit Bidding | The DIP Order shall provide that, in connection with any sale of any of the Debtor's assets, whether under section 363 of the Bankruptcy Code or under any chapter 11 plan: (i) 10 Mountainview shall have the right to credit bid the full amount of all amounts due and outstanding (the "<u>Prepetition Obligations</u>") under its Prepetition Loan Documents; and (ii) the DIP Lender shall have the right to credit bid all amounts outstanding under the DIP Loan, in each case, in accordance with section 363(k) of the Bankruptcy Code, provided that its bid include an agreement to satisfy all senior liens and encumbrances, allowed professional fees and other administrative expense priority claims against the Debtor and plan funding requirements set forth in Debtor's plan of reorganization. |
| Conditions Precedent to the Closing of the DIP Facility | The funding of the DIP Loan shall be subject to the following conditions precedent:<br>• Entry of the DIP Order by the Bankruptcy Court in the Chapter 11 Case, which shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, or vacated; and<br>• No trustee, examiner with expanded powers, or receiver shall have been appointed or designated with respect to the Debtor other than the receiver appointed prepetition. |
| Events of Default | The DIP Loan shall be subject to the following Events of Default (which can be waived by the DIP Lender in its absolute discretion):<br>• The Debtor's filing of a chapter 11 plan in the Chapter 11 Case that has not been consented to by the DIP Lender;<br>• The Debtor shall file a pleading seeking to vacate or modify the DIP Order over the objection of the DIP Lender;<br>• The Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code;<br>• A default, subject to any applicable grace and/or cure periods, by the Debtor under the terms of the DIP Loan;<br>• Appointment in the Chapter 11 Case of a Chapter 11 trustee or examiner with enlarged powers;<br>• Any sale of all or substantially all of the Debtor's assets unless such sale is conducted in accordance with bid procedures approved by the Bankruptcy Court (the "Bid Procedures") which shall be in form and substance acceptable to the DIP Lender in its sole discretion.<br>• The Debtor filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order by the Bankruptcy Court, granting any super- |

| | |
|---|---|
| | priority claim or lien (except as contemplated herein) which is senior to or *pari passu* with the DIP Obligations; <br>• The granting of any lien senior to or *pari passu* with the DIP Loan; and <br>• Any successful Challenge respecting any of 10 Mountainview's Prepetition Loan Documents; |
| Termination | Upon the occurrence and during the continuance of an Event of Default, the DIP Lender may, by written notice to the Debtor, its counsel, the U.S. Trustee and counsel for any committee, terminate the DIP Loan, declare the obligations in respect thereof to be immediately due and payable and exercise all rights and remedies under the DIP Order. |
| Controlling Documents | In the event of any inconsistencies between this DIP Term Sheet and the DIP Order, the terms of the DIP Order shall control. |
| Investigation Rights | Any committee appointed in the Chapter 11 Case (the "<u>Committee</u>") shall have a maximum of sixty (60) calendar days from entry of the DIP Order, or, if no such Committee has been appointed, any party in interest (other than the Debtor) shall have a maximum of seventy-five (75) calendar days, (as applicable, the "<u>Investigation Period</u>") to investigate and commence an adversary proceeding or contested matter, as required by the applicable Federal Rules of Bankruptcy Procedure, and challenge (each, a "<u>Challenge</u>") the findings, the Debtor's stipulations, or any other stipulations contained in the DIP Order, including, without limitation, any challenge to the validity, priority or enforceability of the liens securing the obligations under the Prepetition Loan Documents, or to assert any claim or cause of action against 10 Mountainview arising under or in connection with the Prepetition Loan Documents or the Prepetition Obligations, as the case may be, whether in the nature of a setoff, counterclaim or defense of Prepetition Obligations, or otherwise.  Except to the extent asserted in an adversary proceeding or contested matter filed during the Investigation Period, upon the expiration of such applicable Investigation Period: (i) any and all Challenges or potential challenges shall be deemed to be forever waived and barred; (ii) all of the agreements, waivers, releases, affirmations, acknowledgements and stipulations contained in the DIP Order shall be irrevocably and forever binding on the Debtor, the Committee and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, including any Chapter 7 Trustee, without further action by any party or the Bankruptcy Court; (iii) the Prepetition Obligations shall be deemed to be finally allowed and the prepetition liens related thereto or arising therefrom shall be deemed to constitute valid, binding and enforceable |

| | encumbrances, and not subject to avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtor shall be deemed to have released, waived and discharged 10 Mountainview from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Obligations. Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced, the stipulations contained in the DIP Order shall nonetheless remain binding on all other parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (y) the Released Parties reserve all of their rights to contest on any grounds any Challenge. For the avoidance of doubt, the DIP Order shall include language that the investigation rights afforded to the Committee or any other party in interest will not constitute the Debtor's or DIP Lender's recognition, consent, or agreement not to object to, the Committee's or any other party in interest's standing to assert any claim or cause of action. |
|---|---|
| | The Investigation Period set forth above shall not apply to any claim in connection with that certain Judgment dated March 8, 2021 in favor of Viewstar LLC and Yoel Abraham against 10 Mountainview LLC and Moshe Gold (the "<u>Judgment</u>") and no party is released hereunder with respect to the Judgment; provided, however, the Debtor shall be deemed to have released, waived and discharged 10 Mountainview from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Obligations or the Prepetition Loan Documents upon the entry of the DIP Order with the exception of the Judgment. |
| Good Faith Finding | The DIP Order shall contain a 'good faith finding' under Bankruptcy Code § 364(e). |
| Governing Law | New York |
| Counsel to DIP Lender | Herrick Feinstein |

[*Signature Pages to Follow*]

**10 MOUNTAINVIEW, LLC**


By: _____ */s/ Steven B. Smith* _____

       Steven B . Smith

Herrick, Feinstein LLP

Two Park Avenue

New York, NY 10016

212-592-1474

ssmith@herrick.com


*Counsel for 10 Mountainview, LLC*


**VIEWSTAR, LLC**


By: _____ */s/ Paul Rubin* _____

       Paul Rubin

Rubin LLC

11 Broadway, Suite 715

New York, New York 10004

212-390-8054

prubin@rubinlawllc.com


*Counsel for Viewstar, LLC*

# PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                          :
                                                                :    Chapter 11
VIEWSTAR LLC,                                                    :
                                                                :    Case No.: 24-22716 (SHL)
                        Debtor.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER AUTHORIZING DEBTOR'S POST-PETITION
## FINANCING AND GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>") [ECF No. ] of (Viewstar LLC, the debtor and debtor in

possession herein (the "<u>Debtor</u>"), pursuant to sections 105 and 364 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of

New York (the "<u>Local Rules</u>"), for entry of an order authorizing the Debtor to obtain post-petition

debtor-in-possession financing pursuant to a super-priority multiple draw term loan in the amount

of up to $125,000.00 (the "<u>DIP Loan</u>") from 10 Mountainview LLC ("<u>10 Mountainview</u>," or the

"<u>DIP Lender</u>") pursuant to the terms of that certain *DIP Loan Term Sheet* executed by the Debtor

and the DIP Lender and annexed as <u>Exhibit A</u> to the Motion (the "<u>DIP Term Sheet</u>"); and a hearing

having been held by the Court on [ ], 2025 (the "<u>Hearing</u>"); and upon the record of the Hearing

and all of the other proceedings had before the Court, and after due deliberation and sufficient

cause appearing therefor, the Court hereby makes the following findings of fact and conclusions

of law:

A.      On August 15, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in this Court, commencing the above-captioned

chapter 11 case (the "<u>Chapter 11 Case</u>").

B.      The Debtor is the owner of real property located at 10 Mountainview Road, Upper

Saddle River, New Jersey 07458 (the "Property").  The Property does not have any tenants and is currently vacant.

C.     Based on the record presented to the Court in support of the Motion, the Court finds that: (i) there is an immediate need for the Debtor to obtain post-Petition Date financing to continue to fund the costs of administrative expenses incurred by the Debtor and its professionals in the Chapter 11 Case; (ii) without approval of the DIP Loan, the Debtor would be unable to pay the costs of the administration of the Chapter 11 Case to enable the Debtor to maximize value through a sale of the Property; (iii) the Debtor has sought out financing from all of its known sources, and the DIP Loan offered by the DIP Lender was the only financing available to the Debtor on the terms of the DIP Term Sheet; and (iv) approval of the DIP Loan will benefit the Debtor, its estate, and creditors.

D.     The DIP Lender has agreed to extend credit to the Debtor up to a maximum principal amount of $125,000.00 upon the terms and conditions set forth in the DIP Term Sheet.

E.     The terms of the DIP Loan have been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, are fair and reasonable under the circumstances, and are enforceable in accordance with the terms of the DIP Term Sheet.  Accordingly, any credit extended to the Debtor by the DIP Lender under this Order shall be deemed to have been extended in good faith as that term is used in section 364(e) of the Bankruptcy Code.

F.     Entry of this Order will provide the Debtor the necessary funds to pay the expenses of administration of the Chapter 11 Case, and is in the best interest of the Debtor, its estate, and creditors.

G.     Subject to the limitations contained in paragraph 16 hereof, and after consultation with its attorneys, the Debtor and its estate admit, stipulate and agree (collectively, the

"Stipulations") that:

(i)     Junior Mortgage Loan.  On or about April 1, 2020, 10 Mountainview made a loan to the Debtor in the original principal amount of $4,200,000.00 (the "Junior Mortgage Loan").  On or about April 1, 2020 in order to evidence the indebtedness under the Junior Mortgage Loan, the Debtor executed and delivered to 10 Mountainview a certain Mortgage Note (the "Junior Mortgage Note"), dated as of April 1, 2020, in which the Debtor promised to pay 10 Mountainview the principal sum of $4,200,000.00, plus interest at the rate set forth in the Junior Mortgage Note . The terms of the Loan are set forth in the Junior Mortgage Note.  To secure repayment of all amounts due to 10 Mountainview under the terms of the Junior Mortgage Note, the Debtor executed and delivered to 10 Mountainview (a) a Junior Mortgage and Security Agreement (the "Junior Mortgage"), in the original principal amount of $4,200,000.00, dated as of April 1, 2020 and (b) a Collateral Assignment of Leases and Rents (the "Assignment") dated as of April 1, 2020  The Junior Mortgage was duly recorded on May 5, 2020, in the Register's Office in Bergen County, New Jersey, and the recording tac thereon was duly paid.  The Junior Mortgage Note, and the Junior Mortgage, and all other documents executed in connection with the Junior Mortgage Loan, collectively constitute the "Junior Mortgage Loan Documents."

(ii)    Junior Secured Obligations. As of the Petition Date, the Debtor was justly and lawfully indebted and liable to 10 Mountainview, without defense, counterclaim or offset of any kind, in the aggregate outstanding amount of not less than $9,204,450.00, which amount includes, as of the Petition Date, outstanding principal balance and accrued interest of  $462,000.00 (all of the foregoing collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraiser's fees, and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of the Debtor's obligations pursuant to, or secured by, the Junior Mortgage Loan Documents, including all interest, fees, prepayment premiums, early termination fees, costs and other charges (the "Junior Mortgage Debt").

(iii)   Junior Mortgage Liens.  As more fully set forth in the Junior Mortgage Loan Documents, (a) prior to the Petition Date, the Debtor granted to 10 Mountainview a security interest in and continuing lien (the "Junior Mortgage Liens") on all of the assets and property of the Debtor that existed as of the Petition Date (the "Prepetition Collateral").

(iv)    Validity, Perfection and Priority of Junior Mortgage Liens and Junior

Mortgage Debt. The Debtor acknowledges and agrees that as of the Petition Date; (a) the Junior Mortgage Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, 10 Mountainview for fair consideration and reasonable equivalent value; (b) other than the Senior Mortgagee's prepetition liens on the Prepetition Collateral, the Junior Mortgage Liens were senior in priority over any and all other liens on the Prepetition Collateral; (c) the Junior Mortgage Debt constitutes legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the applicable Junior Mortgage Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Junior Mortgage Liens or Junior Mortgage Debt exist, and no portion of the Junior Mortgage Liens or Junior Mortgage Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate have no claim, objection, challenge, causes of action, and/;or chose in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against 10 Mountainview or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Junior Mortgage Loan Documents; and (f) the Debtor waives, discharges, and releases any right to challenge any of the Junior Mortgage Debt, the priority of the Debtor's obligations thereunder, and the validity, extent, and priority of the Junior Mortgage Liens securing the Junior Mortgage Debt.

(v)     No Claims or Causes of Action. No claims or causes of action held by the Debtor or its estate exist against, or with respect to, 10 Mountainview, the DIP Lender and each of their respective representatives (in each case in their capacity as such) under or relating to any agreements by and among the Debtor and 10 Mountainview in existence as of the Petition Date, other than that certain Judgment dated March 8, 2021 in favor of Viewstar LLC and Yoel Abraham against 10 Mountainview LLC and Moshe Gold (the "Judgment").

(vi)    Debtor's Release. Effective as of the date of entry of this Order, the Debtor and its estate, on its own behalf (but not on behalf of any creditors or committee appointed in the Chapter 11 Case), and on behalf of its past, present and future predecessors, successors, subsidiaries, and assigns, hereby, to the extent permitted by applicable law, absolutely, unconditionally and irrevocably release and forever discharge and acquit 10 Mountainview, the DIP Lender and each of their respective representatives (collectively, the "Released Parties"), from any and all obligations and liabilities to the Debtor (and its successors and assigns) and from any and

all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise (collectively, the "Released Claims") in each case arising out of or related to (as applicable) the Junior Mortgage Loan Documents with the Debtor or its subsidiaries, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions and agreements reflected thereby, in each case that the Debtor at any time had, now has, or may have, or that its predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Order. Notwithstanding the foregoing, and for the avoidance of doubt, nothing in this release shall (i) release the DIP Lender with respect to any post-petition conduct or agreements nor relieve the DIP Lender or the Debtor of their obligations under the DIP Term Sheet and this Order from and after the date of this Order, or (ii) release the Judgment or 10 Mountainview's obligation to pay any allowed claim which may arise therefrom.

H.     The DIP Lender has acted in good faith regarding the DIP Loan and the Debtor's use thereof to fund the administration of the Debtor's estate and the DIP Lender (and the successors and assigns thereof) shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.     This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).

2.     The Motion is hereby granted to the extent set forth herein.

3.     The terms and conditions of the DIP Term Sheet are hereby approved.

4.　　　　The record in this Chapter 11 Case and the findings of fact set forth above are incorporated herein by reference.

5.　　　　The Debtor is immediately authorized and empowered to borrow up to the maximum principal amount of the DIP Loan pursuant to the terms of the DIP Term Sheet, and limited to the purposes permitted under the DIP Term Sheet and this Order. The DIP Lender is authorized to provide funds to the Debtor under the DIP Loan pursuant to the terms of the DIP Term Sheet. All funding under the DIP Loan shall accrue interest as provided in the DIP Term Sheet.

6.　　　　Upon execution of the DIP Term Sheet, the DIP Term Sheet shall constitute legal, valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor and its estate in accordance with and subject to the terms of the DIP Term Sheet and this Order, and any successors thereto, including any trustee appointed in the Chapter 11 Case, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Except as permitted hereby, no obligation, payment, or transfer hereunder or under the DIP Term Sheet shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law, or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination, disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable4 law or regulation by any person or entity.

7.　　　　The Debtor shall account for all monies borrowed under the DIP Loan in its monthly operating reports.

8.　　　　The Debtor and the DIP Lender may amend, extend, modify, supplement or waive

any provision of the DIP Term Sheet if such amendment, modification, supplement or waiver is not material (in the good faith judgment of the Debtor and the DIP Lender) without any need to apply to, or receive further approval from, the Court. Any material amendment, modification, supplement or waiver shall be subject to approval by the Court on notice to parties in interest, except that the Debtor and the DIP Lender may agree to any extension of the DIP Loan term in writing without further order of the Court.

9. The Debtor is authorized and directed to perform all of its obligations under this Order and the DIP Term Sheet without further order of the Court in connection with the DIP Loan.

10. The Debtor is authorized and directed to pay principal, interest and other obligations as provided in the DIP Term Sheet in accordance therewith.

11. Pursuant to section 364(c)(1) of the Bankruptcy Code, the Debtor's obligations respecting the DIP Loan shall be secured by a super-priority claim in favor of the DIP Lender against the Debtor (without the need to file any proof of claim) with priority over any and all administrative expenses of the kind specified in the Bankruptcy Code, including in sections 503(b) or 507(b) of the Bankruptcy Code, now existing or hereafter arising, subject to the Carve-Out defined below, which allowed claims shall for purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b), and which claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof including any proceeds or property recovered, unencumbered or otherwise, from any avoidance actions, whether by judgment, settlement or otherwise in accordance with the DIP Term Sheet and this Order, subject only to the Carve-Out as set forth in this Order.

12. No other claim or expense, having a priority senior or *pari passu* to that granted to

the DIP Lender in this Order, shall be granted in this Chapter 11 Case, or any superseding chapter 7 case for the Debtor, while any portion of any DIP Loan obligations remains outstanding.

13.     Notwithstanding the foregoing, the super-priority claim granted to the DIP Lender herein shall be subject to: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee for Region 2 under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. §3717; (ii) all reasonable and documented fees and expenses, in an aggregate not to exceed $25,000, incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed by the Court at any time, whether by interim or final compensation or other order, all accrued and unpaid claims for fees, costs and expenses incurred by persons or firms retained by the Debtor appointed pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code; and (iv) the fees of the Debtor's Restructuring Officer (collectively, the "Carve-Out").

14.     Events of default under the DIP Loan are set forth in the DIP Term Sheet.  Notice of any event of default shall be provided to the Debtor, counsel for the Debtor, and the Office of the United States Trustee.

15.     The Debtor's stipulations, admissions, agreements and releases contained in this Order, including, without limitation, the Stipulations, shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor) in all circumstances and for all purposes.  Any committee appointed in the Chapter 11 Case (the "Committee") shall have a maximum of sixty (60) calendar days from entry of the this Order, or, if no such Committee has been appointed, any party in interest (other than the Debtor) shall have a maximum of seventy-five (75) calendar days (as applicable, the "Investigation Period") to investigate and commence an adversary proceeding or contested

matter, as required by the applicable Bankruptcy Rules, and challenge (each, a "<u>Challenge</u>") the findings, the Debtor's stipulations, or any other stipulations contained in this Order, including, without limitation, any challenge to the validity, priority or enforceability of the liens securing the obligations under the Junior Mortgage Loan Documents, or to assert any claim or cause of action against the DIP Lender arising under or in connection with the Junior Mortgage Loan Documents or the Junior Mortgage Debt, as the case may be, whether in the nature of a setoff, counterclaim or defense of the Junior Mortgage Debt, or otherwise. Except to the extent asserted in an adversary proceeding or contested matter filed during the Investigation Period, upon the expiration of such applicable Investigation Period: (i) any and all Challenges or potential challenges shall be deemed to be forever waived and barred; (ii) all of the agreements, waivers, releases, affirmations, acknowledgements and stipulations contained in this Order shall be irrevocably and forever binding on the Committee and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, including any chapter 7 trustee, without further action by any party or the Court; and (iii) the Junior Mortgage Debt shall be deemed to be finally allowed and the Junior Mortgage Liens related thereto or arising therefrom shall be deemed to constitute valid, binding and enforceable encumbrances, and not subject to avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced, the stipulations contained in the Order shall nonetheless remain binding on all other parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (y) the Released Parties reserve all of their rights to contest on any grounds any Challenge. The investigation rights afforded to the Committee or any other party in interest will not constitute the Debtor's or the DIP Lender's recognition, consent, or agreement not to object to, the Committee's or any other party in interest's

standing to assert any claim or cause of action.

16.     The Investigation Period set forth above shall not apply to any claim in connection with that certain Judgment dated March 8, 2021 in favor of Viewstar LLC and Yoel Abraham against 10 Mountainview LLC and Moshe Gold (the "Judgment") and no party is released hereunder with respect to the Judgment.

17.     This Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor and their respective successors and assigns, including without limitation, any chapter 11 or chapter 7 trustee hereinafter appointed as a representative of the Debtor's estate.

18.     Other than as expressly set forth above, no rights are created hereunder for the benefit of any third party, any creditor (other than the DIP Lender) or any direct, indirect or incidental beneficiary.

19.     In the event of any inconsistency between this Order and the DIP Term Sheet or the Motion, the terms of this Order shall govern.

20.     This Order shall be effective upon entry of this Order.

21.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  New York, New York
      [   ], 2025


                                      _____
                                        Honorable Sean H. Lane
                                        United States Bankruptcy Judge