Hearing Date & Time:  April 10, 2025 at 2:00 p.m.
Objection Deadline:  April 3, 2025

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com


*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                      :

                                                            :    Chapter 11

VIEWSTAR LLC,                                               :

                                                            :    Case No.:  24-22716 (SHL)

                      Debtor.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF DEBTOR'S MOTION FOR: (I) AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF REAL PROPERTY LOCATED AT 10 MOUNTAINVIEW ROAD, UPPER SADDLE RIVER, NEW JERSEY 07458 SUBJECT TO HIGHER OR BETTER OFFERS, AND (B) SCHEDULING  A SALE HEARING DATE; AND (II) AN ORDER APPROVING THE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (III) RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the annexed motion (the "Motion") of Viewstar LLC (the "Debtor"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the Court's Amended Guidelines for the Conduct of Asset Sales (the "Sale Guidelines"), for entry of: (I) an order (the "Bid Procedures Order") (a) approving bid procedures in connection with the auction sale of the Debtor's real property located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property"), subject to higher

or better offers, and (b) scheduling a hearing to approve the sale of the Property; and (II) an order (the "Sale Order") approving the sale of the Property free and clear of all liens, claims encumbrances, equities and interests will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, on **April 10, 2025 at 2:00 p.m.**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing and filed with the Bankruptcy Court in accordance with the Local Rules, and served upon undersigned counsel for the Debtor so as to be received no later than **April 3, 2025** (the "Objection Deadline"). If no objections are timely filed and served by the Objection Deadline, the Motion may be signed by the Bankruptcy Court without a hearing.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to participate in the Hearing, whether making a "live," or "listen only" appearance before the Court, must make an electronic appearance utilizing the Electronic Appearance portal located at the Court's website at: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be entered no later than 24 hours in advance of the Hearing. Requests to receive a Zoom link should not be emailed to the Court, and the Court will not respond to late requests that are submitted on the day of the hearing. Further information can be found at the Court's website at https://www.nysb.uscourts.gov/zoom-videohearing-guide.

**PLEASE TAKE FURTHER NOTICE** that the moving and objecting parties are required to attend the Hearing, and failure to attend may result in relief being granted or denied upon default.

Dated: New York, New York
        March 14, 2025

                    RUBIN LLC

                    By:    */s/ Paul A. Rubin*
                          Paul A. Rubin
                          Hanh V. Huynh
                    11 Broadway, Suite 715
                    New York, New York 10004
                    Tel: 212.390.8054
                    prubin@rubinlawllc.com
                    hhuynh@rubinlawllc.com
                    *Counsel for the Debtor*

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                              :

                                                                   :   Chapter 11

VIEWSTAR LLC,                                          :

                                                                   :   Case No.:  24-22716 (SHL)

                        Debtor.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTOR'S MOTION FOR: (I) AN ORDER (A) APPROVING BID
PROCEDURES FOR THE SALE OF REAL PROPERTY LOCATED AT
10 MOUNTAINVIEW ROAD, UPPER SADDLE RIVER, NEW JERSEY 07458
SUBJECT TO HIGHER OR BETTER OFFERS, AND (B) SCHEDULING  A SALE
HEARING DATE; AND (II) AN ORDER APPROVING THE SALE FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (III) RELATED RELIEF**

Viewstar LLC (the "Debtor"), by its counsel, Rubin LLC, submits this motion (the

"Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"),

and the Court's Amended Guidelines for the Conduct of Asset Sales (the "Sale Guidelines"), for

entry of: (I) an order (the "Bid Procedures Order") (a) approving bid procedures in connection

with the auction sale of the Debtor's real property located at 10 Mountainview Road, Upper Saddle

River, New Jersey 07458 (the "Property"), subject to higher or better offers, and (b) scheduling a

hearing to approve the sale of the Property; and (II) an order (the "Sale Order") approving the sale of the Property free and clear of all liens, claims encumbrances, equities and interests under a chapter 11 plan for the Debtor.  In support of this Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 6004, 6006 and 9024, Local Rule 6004-1, and the Sale Guidelines.

## RELIEF REQUESTED

3.      By this Motion, the Debtor requests the following:

a.      Entry of the Bid Procedures Order, in substantially the form annexed hereto as Exhibit A, among other things, (i) establishing bidding procedures (the "Bid Procedures") for the auction sale of the Property in substantially the form annexed as Exhibit 1 to the Bid Procedures Order; (ii) setting the date, time and place for an auction sale of the Property (the "Auction"); (iii) scheduling a hearing (the "Sale Hearing") to consider the sale of the Property to the successful bidder at the Auction (the "Successful Bidder"); and (iv) approving the form of notice of the Auction and the Sale Hearing (the "Notice of Auction and Sale Hearing") in substantially the form annexed as Exhibit 2 to the Bid Procedures Order; and

b.      Entry of the Sale Order, in substantially the form annexed hereto as Exhibit B, among other things, approving the sale of the Property to the Successful Bidder free and clear of all liens, claims encumbrances, equities and interests, except for permitted encumbrances.  The provisions of the Sale Order may also be incorporated into an order confirming the Debtor's contemplated joint chapter 11 plan, rather than be entered as a separate order.

## BACKGROUND

**The Mortgage Loans**

4.      The Debtor is the owner of the Property, which does not have any tenants and is currently vacant.

5.      The Property is encumbered by a senior mortgage lien dated April 1, 2020 (the "Senior Mortgage") securing a loan (the "Senior Mortgage Loan") from Sterling National Bank ("Sterling") to the Debtor in the restated original principal amount of $12,600,000.00.  By virtue of certain allonges and assignments executed by Sterling, RREF IV-D SN Portfolio, LLC (the "Senior Mortgagee") is the holder of the Senior Mortgage.

6.      The Property is also encumbered by a junior mortgage lien dated April 1, 2020 (the "Junior Mortgage") securing a loan (the "Junior Mortgage Loan") from 10 Mountainview to the Debtor in the original principal amount of $4,200,000.00.

**The Foreclosure Action**

7.      In July 2022, the Debtor failed to make certain required payments under the Senior Mortgage Loan, and the Senior Mortgagee delivered default notices to the Debtor in connection with the Debtor's default.

8.      As a result of the Debtor's defaults, on September 28, 2022, the Senior Mortgagee commenced a foreclosure action (the "Foreclosure Action") in the Superior Court of New Jersey, Bergen County (the "State Court") to foreclose on the Senior Mortgage.  In the Foreclosure Action, the State Court appointed a receiver (the "Receiver") for the Property.  On March 7, 2024, the State Court awarded the Senior Mortgagee a Final Judgment in Foreclosure and Sale (the "Foreclosure Judgment").

9.      On or about June 19, 2024, the Sherriff of Bergen County noticed a foreclosure sale of the Property scheduled for July 26, 2024 at 12:00 p.m.

**The Involuntary Chapter 7 Case**

10.     On the morning of July 26, 2024, just hours before the scheduled foreclosure sale of the Property, an individual named Deahn Meir (the 'Petitioning Creditor"), purporting to be a creditor of the Debtor with a claim in the amount of $100,000.00 based on a loan, filed an involuntary petition (the "Involuntary Petition") under chapter 7 of the Bankruptcy Code against the Debtor in the United Staes Bankruptcy Court for the District of New Jersey (the "NJ Bankruptcy Court"), commencing the Debtor's involuntary chapter 7 case, which was assigned case number 24-17410 (RG) (Gambardella, J.) (the "Involuntary Chapter 7 Case").

**The Chapter 11 Case**

11.     Following the filing of the Debtor's Involuntary Chapter 7 Case, the Debtor retained bankruptcy counsel to address the involuntary filing.  The Debtor determined, in consultation with its professionals, that the voluntary filing of a chapter 11 case in order to conduct an orderly marketing and sale process for the Property would maximize value and prevent potential future involuntary cases filed against the Debtor, even if the Debtor were successful in dismissing the Involuntary Chapter 7 Case.

12.     Before filing its own voluntary chapter 11 case, the Debtor conferred with counsel for the Senior Mortgagee and the Junior Mortgagee, both of whom expressed support for a chapter 11 case with venue in this Court, rather than through the Involuntary Chapter 7 Case in the NJ Bankruptcy Court.  The Debtor also retained Lee E. Buchwald as the Debtor's restructuring officer (the "Restructuring Officer").

13.     On August 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, commencing the above-captioned chapter 11 case (this "Chapter 11 Case").

4

14.     On August 15, 2024, shortly after filing the Chapter 11 Case, the Debtor filed in the Involuntary Chapter 7 Case a motion, pursuant Bankruptcy Rule 1014(b), to determine that the Chapter 11 Case should proceed and to dismiss the Involuntary Chapter 7 Case.  Following a hearing on Bankruptcy Rule 1014(b) motion, the NJ Bankruptcy Court ordered that the Chapter 11 Case should proceed in this Court and dismissed the Involuntary Chapter 7 Case.  The Involuntary Chapter 7 Case was closed on September 11, 2024.

**Status Of The Chapter 11 Case**

15.     Consistent with the Rule 1014(b) Order, the Debtor has proceeded to diligently prosecute its Chapter 11 Case in this Court.  On September 17, 2024, the Debtor filed its schedules of assets and liabilities and statement of financial affairs [ECF No. 18].  On September 23, 2024, the Debtor attended the section 341 meeting of creditors conducted by the UST.  The Debtor filed an application for authorization to retain Rubin LLC as its bankruptcy counsel [ECF No. 19], which application was approved by the Court on November 7, 2024 [ECF No. 41].  On January 29, 2025, the Debtor filed a motion [ECF No. 77] for authorization to obtain post-petition debtor-in-possession financing from the Junior Mortgagee, as DIP lender.  The Court approved the DIP financing motion after a hearing held on March 6, 2025.

16.     The Debtor has also been negotiating with the Senior Mortgagee to formulate a joint chapter 11 plan, for which the Debtor and the Senior Mortgagee will be plan co-proponents (the Debtor and the Senior Mortgagee, as plan co-proponents, collectively, the "Plan Proponents").  The proposed plan will provide for a sale of the Property and a distribution to general unsecured creditors regardless of whether proceeds from the sale of the Property are sufficient to satisfy all secured claims.

17.     In furtherance of the contemplated sale of the Property, the Debtor filed an application for authorization to retain Northgate Real Estate Group ("Northgate") as its real estate

advisor with respect to the sale of the Property [ECF No. 59], which application was approved by the Court on February 5, 2025 [ECF No. 79]. The Debtor now files this Motion to approve Bid Procedures to govern the sale of the Property.

**The Proposed Bid Procedures**

18.     The Debtor proposes to implement bid procedures, subject to Court approval, with the goal of maximizing the value for the Property in an auction sale. The Bid Procedures annexed as Exhibit 1 to the Bid Procedures Order were developed with the objective of promoting active bidding resulting in the highest or best offer for the Property.

19.     The following chart summarizes the salient provisions of the proposed Bid Procedures:

| | |
|---|---|
| ***Bid Deadline*** | Two business days before the Auction at 4:00 p.m. (prevailing Eastern Time) |
| ***Qualifying Deposit*** | 10%; *provided, however,* each of the Senior Mortgagee and the Junior Mortgagee is a "Qualified Bidder" and is not required to provide a good faith deposit in order to participate in the Auction. |
| ***Auction*** | The Auction will occur approximately 90 days after entry of the Bid Procedures Order at 11:00 a.m. at the offices of [TBD], or remotely in accordance with procedures to be implemented in the sole discretion of the Plan Proponents in consultation with their professionals, with notice of such procedures given to all interested parties prior to the Auction. |
| ***Good Faith Deposit (Post Auction)*** | If necessary, the Successful Bidder following the Auction will increase its initial deposit to provide for a deposit of 10% of the purchase price of the winning bid (the "<u>Purchase Price</u>"), which amount shall serve as a good faith deposit against payment of the Purchase Price, **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT**. |

| | |
|---|---|
| ***Broker's Commission*** | 3.25% of the gross proceeds realized from the sale of the Property, to be paid as a buyer's premium. |
| ***Credit Bid*** | The Senior Mortgagee may, but is not required to, submit a credit bid up to $[TBD], or such other amount as may be determined by the Court for the Property and pay all other senior liens and encumbrances at closing. The Senior Mortgagee's initial credit bid amount does not constitute an admission by the Senior Mortgagee of the amount of its allowed secured claim. The Junior Mortgagee may, but is not required to, submit a bid up to $[TBD], or such other amount as may be determined by the Court for the Property; provided, however, that the Junior Mortgagee's bid must include cash in an amount sufficient to satisfy the Senior Mortgagee's Secured Claim (as defined in the Plan) and all other senior liens, and encumbrances at closing. In addition to the foregoing, if the Senior Mortgagee or Junior Mortgagee is the successful bidder, it must also pay such other amounts which they are required to pay under the Plan. |

## **EXTRAORDINARY PROVISIONS OF THE PROPOSED SALE**

20.     Pursuant to Section I(D) of the Sale Guidelines, the Debtor is required to disclose conspicuously in a separate section of this Motion any "extraordinary provisions" in connection with the sale transaction for the Property. Accordingly, the Debtor discloses the following extraordinary provisions:

      i.    <u>No Good Faith Deposit</u>. The Bid Procedures provide that the Senior Mortgagee is not required to provide a post-auction good faith deposit if it is the Successful Bidder.

      ii.    <u>Use of Proceeds</u>. The Motion requests, and the proposed Sale Order provides, that the Senior Mortgagee's allowed secured claim and other customary real estate closing costs shall be paid at closing from the proceeds from the sale of the Property.

      iii.    <u>Tax Exemption</u>. The Motion requests, and the proposed Sale Order provides, that the sale of the Property be exempt from taxes under section 1146(a) of the Bankruptcy Code. The Debtor specifically requests that the sale be exempt from the following taxes: stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property.

7

iv.     <u>Requested Findings as to Successor Liability</u>.  The Motion requests, and the proposed Sale Order provides, that the Successful Bidder shall not be liable for any claim against or interest in the Debtor under a theory of successor liability or similar theories.

v.      <u>Requested Findings as to Fraudulent Conveyance</u>.  The Motion requests, and the proposed Sale Order provides, that the purchase price for the Property constitutes reasonably equivalent value and fair consideration for the Property.

vi.     <u>Relief from Bankruptcy Rule 6004(h)</u>.  The Motion requests, and the proposed Sale Order provides, that the automatic 14-day stay imposed by Bankruptcy Rule 6004(h) is waived and the Sale Order will be effective immediately upon entry.

**THE BID PROCEDURES ORDER AND
<u>BID PROCEDURES SHOULD BE APPROVED</u>**

21.     The purpose of bidding procedures is to solicit the highest and best bid, which inures to the benefit of all creditors.  *See In re Fin. News Network Inc.*, 980 F.2d 165 (2d Cir. 1992).  Thus, courts deem appropriate those bidding procedures intended to maximize the value of the debtor's estate.  *See id.* at 170-71.

22.     The Bid Procedures Order and the Bid Procedures should be approved by the Court as necessary and appropriate for the facilitation of an orderly sale process.  The Bid Procedures are reasonable, appropriate, tailored to generate the highest and best offers at the Auction for the Property, and consistent with other bidding procedures routinely approved by courts in this District.  The Bid Procedures are designed to facilitate organized, competitive bidding so as to maximize the value of the Property.  The Bid Procedures contemplate an open auction process with minimum barriers to entry, and they provide potential bidders with sufficient time to craft their bids and perform due diligence.  Further, the Bid Procedures comply with section 363(k) of the Bankruptcy Code.

23.     The Bid Procedures Order will ensure that the Debtor's estate receives the greatest benefit available from the sale of the Property.  The Bid Procedures are fair and open, and do not

8

unfairly favor any party or potential purchaser.  The Debtor submits that the Bid Procedures are reasonably designed to ensure that the value of the Property is maximized for the Debtor's estate, and the Court should approve the Bid Procedures.

**THE SALE OF THE PROPERTY AND
THE SALE ORDER SHOULD BE APPROVED**

24.     The proposed auction sale of the Property satisfies all of the requirements of section 363 of the Bankruptcy Code and related case law, and the sale and the Sale Order should be approved by the Court.

**A.     There Is A Sound Business Reason For The Sale**

25.     Ample authority exists for approval of the sale of the Property to the successful bidder.  Section 363(b)(1) of the Bankruptcy Code provides for the sale of property of the estate outside of the ordinary course of business.  11 U.S.C. § 363(b)(1).  "The overriding consideration for approval of a section 363 sale is whether a good business reason has been articulated."  *In re GSC Group, Inc.*, 453 B.R. 132, 173 (Bankr. S.D.N.Y. 2011).  In determining whether the debtor has articulated a good business reason for the sale, the Second Circuit has set forth a nonexclusive list of factors to consider, including (i) the proportionate value of the asset to the estate as a whole, (ii) the amount of elapsed time since the filing, (iii) the likelihood that a plan of reorganization will be proposed and confirmed in the near future, (iv) the effect of the proposed disposition on future plans of reorganization, (v) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, (vi) which of the alternatives of use, sale or lease the proposal envisions, and (vii) whether the asset is increasing or decreasing in value.  *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

26.     Here, the Debtor has articulated a good business reason for the sale of the Property at the Auction.  Based on the carrying costs associated with the Property (including adequate

9

protection payments owed to the Senior Mortgagee and accruing taxes), and the lack of any operations or revenues to pay these accruing costs, the Property should be sold to the Successful Bidder. The Debtor's only source of funds from which distributions to creditors can be made is from the sale of the Property. Additionally, the contemplated joint chapter 11 plan that the Debtor is formulating with the Senior Mortgagee as a plan co-proponent provides for the sale of the Property to fund the plan.

27.     Moreover, the price that the Debtor receives for the Property will be fair and reasonable because the sale process was fair and reasonable. "[T]he true test of value is the sale process itself." *In re Chrysler LLC*, 405 B.R. 84, 95 (Bankr. S.D.N.Y. 2009), *aff'd*, 576 F.3d 108 (2d Cir. 2009). The purchase price will be fair because of the process that preceded it.

**B.     Sale Of The Property Free And Clear Of All Liens, Claims Encumbrances, Equities And Interests And Related Relief Other Than Permitted Encumbrances**

28.     Pursuant to section 363(f) of the Bankruptcy Code, the property of the estate may be sold free and clear of any interests in that property if one of the following conditions is met: "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

29.     The sale of the Property pursuant to the Bid Procedures will satisfy section 363(f) because, as described below, any entities holding liens on the Property will have received notice of this Motion and the Notice of Auction and Sale Hearing. Section 363(f)(2) is satisfied as to those parties that consent or do not object to the Sale. All parties in interest will be given sufficient opportunity to object to the relief requested in the Motion, and any such entity that does not object

to the Sale should be deemed to have consented. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted).

30.     Additionally, the Property may be sold free and clear of all liens, because either (i) the Property will be sold at a purchase price greater than the aggregate value of all liens on the Property, or (ii) the entity holding such interest could be compelled to accept a money satisfaction of such interest. *See, e.g., In re Boston Generating, LLC*, 440 B.R. 302, (Bankr. S.D.N.Y. 2010) ("[T]he existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5).").

31.     Finally, the interests of lien holders are protected by the sale because any valid liens on the Property will attach to the proceeds of the sale in the same order of priority as currently exist on the Property.

## C.     Payment Of The Senior Mortgagee's Mortgage Debt At Closing

32.     As set forth above, the Motion seeks authorization to pay off the Senior Mortgagee's mortgage debt at closing without further order of the Court. The Senior Mortgagee's claim will continue to accrue interest and fees until it is paid, to the extent that it is over-secured. The passage of time and accrual of additional interests and fees would only serve to diminish the proceeds available to distribute to other creditors. No creditor is prejudiced by the payment of the Senior Mortgagee's claim at closing; rather, the payment of its claim at closing will inure to the benefit of the Debtor's estate and its creditors. It is respectfully submitted that, payoff of the Senior

Mortgagee's claim at closing of the sale is in the best interest of the Debtor, its estate and its creditors.

**D.      Waiver of Stay Under Bankruptcy Rule 6004(h)**

33.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." FED. R. BANK. P. 6004(h).  In light of carrying costs associated with the Property, and thus the need for a prompt closing, the Debtor requests that the Bid Procedures Order and the Sale Order be effective immediately upon their entry and that the fourteen day stay under Bankruptcy Rule 6004(h) be waived so that the parties may choose to close more promptly than they otherwise could.

WHEREFORE, the Debtor respectfully requests that this Court enter the Bid Procedures Order, substantially in the form annexed hereto as Exhibit A, and, following the Sale Hearing, enter a Sale Order approving the sale of the Property to the Successful Bidder, and grant such other relief as may be just and proper.

Dated: New York, New York
        March 14, 2025

RUBIN LLC

By:     */s/ Paul A. Rubin*
        Paul A. Rubin
        Hanh V. Huynh
        11 Broadway, Suite 715
        New York, New York 10004
        Tel: 212.390.8054
        prubin@rubinlawllc.com
        hhuynh@rubinlawllc.com
        *Counsel for the Debtor*

# EXHIBIT A

## (Proposed Bid Procedures Order)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                    :
                                                          :   Chapter 11
VIEWSTAR LLC,                                             :
                                                          :   Case No.:  24-22716 (SHL)
                    Debtor.                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**[PROPOSED]**
**ORDER APPROVING (I) BID PROCEDURES IN CONNECTION WITH THE
SALE OF REAL PROPERTY LOCATED AT 10 MOUNTAINVIEW ROAD,
UPPER SADDLE RIVER, NEW JERSEY 07458, SUBJECT TO HIGHER OR
BETTER OFFERS, (II) THE FORM AND MANNER OF NOTICE OF SALE
HEARING, AND (III) SCHEDULING A SALE HEARING DATE**

Upon the portion of the motion (the "Motion")[1] of Viewstar LLC (the "Debtor"), pursuant

to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule

6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the Southern District of New York (the "Local Rules"), and the Court's Amended

Guidelines for the Conduct of Asset Sales (the "Sale Guidelines"), for entry of an order (the "Bid

Procedures Order") (a) approving bid procedures in connection with the auction sale of the

Debtor's real property located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458

(the "Property"), subject to higher or better offers, and (b) scheduling a hearing to approve the sale

of the Property; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334;

and this Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. §§ 1408

and 1409; and a hearing having been held on [  ], 2025 (the "Hearing"); and this Court having

reviewed the Motion and exhibits thereto and the arguments of counsel made and the evidence

proffered or adduced, as applicable, at the Hearing; and this Court having determined that the legal

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, creditors, and other parties-in-interest; and this Court having found that the form and manner of notice of the Hearing was good, sufficient, and appropriate under the circumstances and that no other or further notice need be provided or is necessary; and after due deliberation and sufficient cause appearing therefor, this Court FINDS AND DETERMINES THAT:

A.    Bid Procedures.    The Debtor has articulated good and sufficient reasons for authorizing and approving the bid procedures annexed hereto as **Exhibit 1** (the "Bid Procedures"), which are fair, reasonable and appropriate under the circumstances and designed to maximize recovery on, and realize the value of, the Property.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is granted to the extent set forth herein, and the Bid Procedures are approved.

2.    The Sale Hearing will be held on [    ], 2025, at [  ] (EST), before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, at which time this Court shall (i) consider approval of the Sale to the Successful Bidder; (ii) consider the entry of the proposed sale order, substantially in the form attached to the Motion as Exhibit B (the "Sale Order"); (iii) consider any issues or objections that are timely interposed by any parties; and (iv) grant such other or further relief as this Court may deem just or proper.

3.    The Notice of Auction and Sale Hearing substantially in the form annexed hereto as **Exhibit 2** is hereby approved.

4.      Within five (5) business days after the entry of this Bid Procedures Order, the Debtor shall cause a copy of the Bid Procedures, the Notice of Auction and Sale Hearing, and this Bid Procedures Order to be served by first- class mail upon: (i) the Office of the United States Trustee for the Southern District of New York; (ii) all secured creditors or counsel if known; (iii) all other entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Property; (iv) all equity holders; (v) all federal, state and local regulatory or taxing authorities or recording offices that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (vi) all parties known by the Debtor to have expressed a bona fide interest in acquiring the Property; (vii) the Internal Revenue Service; (viii) the United States Attorney's office; and (ix) all entities who have filed a notice of appearance and request for service of papers in the Debtor's case and all creditors in the case.

5.      The notice set forth in the preceding paragraph shall constitute good and sufficient notice of the Motion, the Auction, the Sale Hearing and the proposed Sale Order, and no other or further notice of the Motion, the Auction, the Sale Hearing, and/or the proposed Sale Order shall be necessary or required.

6.      Except for objections regarding the conduct of the Auction, which may be raised orally at the Sale Hearing, the deadline to object to the Sale shall be [  ], 2025 at 4:00 p.m. (EST) (the "Sale Objection Deadline").  Objections, if any, must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be actually received by counsel for the Debtor, Rubin LLC, Attn: Paul Rubin, Esq., 11 Broadway, Suite 715, New York, New York 10004, no later than the Sale Objection Deadline.

3

7.      The failure of any person or entity to timely file their objection to the Motion shall forever bar any objection to the Motion or the relief requested therein, or to the consummation of the Sale.

8.      The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

9.      This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from, based upon, or related to this Bid Procedures Order.

Dated: New York, New York
       [   ], 2025

_____
Honorable Sean H. Lane
United States Bankruptcy Judge

4

# Exhibit 1
# (Bid Procedures)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                    :

                                                          :     Chapter 11

VIEWSTAR LLC,                                             :

                                                          :     Case No.:  24-22716 (SHL)

                              Debtor.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### BID PROCEDURES

These Bid Procedures are promulgated in connection with the sale (the "Sale") of the real property and the improvements thereon, located at and commonly known as 10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property").  The seller of the Property is Viewstar LLC (the "Debtor').  [The sale of the Property shall be conducted pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and the *Joint Plan of Reorganization for Viewstar LLC* (the "Plan") proposed by the Debtor and RREF IV-D SN Portfolio LLC (the "Senior Mortgagee," and together with the Debtor, the "Plan Proponents").[1]]

A.  Time and Place of Auction.  The sale of the Property shall be pursuant to an auction (the "Auction") held approximately **90 DAYS AFTER ENTRY OF THE ORDER APPROVING THE BID PROCEDURES FOR THE SALE OF THE PROPERTY, 2025, at 11:00 a.m.** at the offices of [TBD], or remotely in accordance with procedures to be implemented in the sole discretion of the Plan Proponents in consultation with their professionals, with notice of such procedures given to all interested parties prior to the Auction.  Northgate Real Estate Group will serve as real estate broker (the "Broker") to market the Property.

B.  Sale Free and Clear of Liens.  The sale of the Property shall be free and clear of all liens, claims, encumbrances, equities and interests, of any nature or kind, other than permitted encumbrances consented to by the Senior Mortgagee.  All liens and encumbrances upon the Property shall remain in effect until the closing of the sale, and at closing shall be transferred to and attach to the net proceeds of the sale in the same priority that existed immediately before the closing and disbursed pursuant to the provisions of the Plan.

C.  Bid Qualifications.  Any potential bidder, other than the Senior Mortgagee and 10 Mountainview LLC (the "Junior Mortgagee"), who wishes to submit a bid with respect to the Property must demonstrate to the satisfaction of the Plan Proponents that such potential bidder is a "Qualified Bidder."  The Senior Mortgagee and the Junior Mortgagee are Qualified Bidders without the need to satisfy the requirements to be a Qualified Bidder otherwise set forth herein.  A Qualified Bidder is a potential

---

[1] The terms Senior Mortgagee and Junior Mortgagee, as defined herein, shall include their respective assigns or designees,

bidder who delivers to counsel for the Plan Proponents and the Broker a written and signed, binding offer **on or before the Bid Deadline** (as defined below) that:

(i)     states that the bidder has entered or will enter into a legally binding purchase and sale agreement ("PSA") for the acquisition of the Property, substantially in the form annexed hereto as Exhibit A;

(ii)    states the bidder's offer is irrevocable, and not contingent until the closing of the purchase of the Property if such bidder is the Successful Bidder (as hereinafter defined);

(iii)   does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

(iv)    does not contain any financing contingencies or any other contingencies;

(v)     fully discloses the identity of each entity, and each entity's beneficial owner and principals, that will be bidding for the Property (the "Potential Bidder") or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including, if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Potential Bidder's address, telephone number and email address where the bidder may be contacted;

(vi)    is accompanied by evidence that a good faith deposit in the amount of 10% of the Potential Bidder's bid (the "Bid Deposit"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to the Disbursing Agent under the Plan (the "Disbursing Agent"), pursuant to wire instructions to be provided by the Debtor, and acknowledges that the Bid Deposit shall be held by the Disbursing Agent in a non-interest bearing, segregated, account of the Disbursing Agent for the Debtor's estate in accordance with the terms hereof;

(vii)   states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(viii)  is accompanied by financial information satisfactory to the Plan Proponents, in their discretion, which fairly and reasonably demonstrates the Potential Bidder's ability (and the sources of the Potential Bidder's ability) to close on its purchase of the Property if the Potential Bidder should be the Successful Bidder, in an amount at least as much as its bid as necessary to consummate the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix)    includes an executed original of these Terms and Conditions of Sale acknowledging and agreeing to these Terms and Conditions of Sale, including the following:

(a)    the Potential Bidder must disclose whether it is a partner, officer, director, stockholder, agent, employee or insider of the Debtor, the Debtor's principals, the Broker, the Senior Mortgagee, the Senior Mortgagee's principals, the Junior Mortgagee, the Junior Mortgagee's principals or any relative of any of the foregoing;

(b)    the Potential Bidder relied solely on its own independent investigation, analysis, appraisal and evaluation of the Property and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Property and waives any and all claims against the Plan Proponents and Broker;

(c)    the Potential Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected;

(d)    the Potential Bidder is financially able to acquire the Property in cash, without contingencies as to financing and/or additional due diligence;

(e)    the Potential Bidder, if it is the Successful Bidder, will complete the Sale in accordance with the timing set forth in these Terms and Conditions of Sale;

(f)    the Potential Bidder's offer shall not be binding on the Debtor prior to the time that the Auction is conducted and the Sale of the Property approved by the Bankruptcy Court;

(g)    includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) to purchase the property pursuant to its bid at the Auction; and

(h)    contains other information reasonably requested by the Plan Proponents and/or the Broker.

A competing bid meeting the above requirements shall constitute a "Qualified Bid." The Plan Proponents, in consultation with the Broker, shall make a determination regarding whether a bid is a Qualified Bid and the Broker shall notify bidders whether their bids have been determined to be qualified by no later than **two business days before the Auction at 4:00 p.m.** (prevailing Eastern Time) (the "Bid Deadline").

D.  <u>Bidding</u>.  The opening bid at the Auction shall be the amount of the highest and best Qualified Bid received by the Bid Deadline, as determined by the Plan Proponents, in consultation with the Broker, with subsequent bids to be made in $25,000.00 increments, or in such increments as consented to by the Plan Proponents.  Each bid made by a Qualified Bidder at the Auction must continue to meet, satisfy or comply with the requirements of a Qualified Bid, other than those applicable to the submission of an initial Qualified Bid.

E.  <u>Credit Bid</u>.  The Senior Mortgagee or its assignee may, but is not required to, submit a credit bid up to $[TBD], or such other amount as may be determined by the Bankruptcy Court for the Property and pay all other senior liens and encumbrances at closing.  The Senior Mortgagee's initial credit bid amount does not constitute an admission by the Senior Mortgagee of the amount of its allowed secured claim.  The Junior Mortgagee may, but is not required to, submit a bid up to $[TBD], or such other amount as may be determined by the Bankruptcy Court for the Property; provided, however, that the Junior Mortgagee's bid must include cash in an amount sufficient to satisfy the Senior Mortgagee's Secured Claim (as defined in the Plan) and all other senior liens, and encumbrances at closing.  In addition to the foregoing, if the Senior Mortgagee or Junior Mortgagee is the successful bidder, it must also pay such other amounts which they are required to pay under the Plan.

F.  <u>Adjournment Auction</u>.  The Plan Proponents reserve the right, in their business judgment, to make one or more adjournments to the Auction to, among other things (i) facilitate discussions between the Plan Proponents, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Plan Proponents and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Plan Proponents with such additional documentation or information as the Plan Proponents in their business judgment may require to determine such Qualified Bidder's ability to close the Sale, or (iv) facilitate higher or better bids; provided, however, that any adjournment must be pursuant to a writing signed by both the Senior Mortgagee and the Debtor.

G.  <u>Successful Bidder and Backup Bidder</u>.  At the Auction, once a bidder is determined by the Plan Proponents, in consultation with the Broker, to have made the highest or best offer for the Property (the "<u>Successful Bidder</u>"), bidding shall be deemed closed and no additional bids will be considered.  The bidder with the next highest or best bid submitted at the Auction, as determined by the Plan Proponents, in consultation with the Broker, shall be the "<u>Backup Bidder</u>."  In determining the Successful Bidder and the Backup Bidder, the Plan Proponents may consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction, and the timing thereof, (iv) indicia of good faith on the part of the Qualified Bidder, (v) the terms and conditions of the Qualified Bidder PSA, and (vi) the net benefit to the Debtor's estate.

H.   <u>Successful Bidder Additional Deposit</u>.  Within one business day after the Successful Bidder is determined, the Successful Bidder (except only for the Senior Mortgagee or its assignee or designee) shall be required to increase the Bid Deposit to an amount equal to ten percent (10%) of the purchase price of the winning bid (the "<u>Purchase Price</u>"), which amount shall serve as a good faith deposit against payment of the Purchase Price, **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT**. Within two (2) business days after the conclusion of the Auction, the Debtor's counsel will return the Bid Deposits to all other bidders, other than the Backup Bidder (as defined below).

I.   <u>Sale Hearing</u>.  The auction sale of the Property is subject to entry of an order of the Bankruptcy Court approving the results of the auction and the sale to the Successful Bidder.  A hearing to consider approval of the Sale of the Property to the successful bidder (the "<u>Sale Hearing</u>") is scheduled to take place on **[  ], 2025 at [   ]**, prevailing Eastern Time, or as soon thereafter as counsel may be heard, before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, or as otherwise ordered by the Bankruptcy Court.  The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket of the Debtor's case, provided any such adjournment or re-scheduling must be approved by both of the Plan Proponents.  At the Sale Hearing, the Plan Proponents shall present the Successful Bid to the Bankruptcy Court for approval.

J.   <u>Sale Order</u>.  The sale approval order (the "<u>Sale Order</u>") shall approve the Sale free and clear of all liens, claims, encumbrances and adverse interests as described in the Plan, and in connection therewith, the Sale Order shall contain the following findings of fact and conclusions of law: (i) that the terms of the Sale are fair and reasonable, (ii) that the Sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (iii) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, and (vi) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code section 363(n).

K.   <u>Closing</u>.  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Bid Deposit as increased by the supplemental deposit in Paragraph H above) to the holder of any mortgage, lien or encumbrance on account of the undisputed portion of the amount of any such mortgage, lien or encumbrance, with any balance to be paid to the Disbursing Agent for distribution pursuant to the Plan in full in cash at the closing of title to the Property (the "<u>Closing</u>").  The Successful Bidder must

close title to the Property at a date mutually acceptable to the Successful Bidder and the Plan Proponents (the "Closing Date") that is no more than twenty-one (21) days after the Sale Order is entered, **TIME BEING OF THE ESSENCE** as to the Successful Bidder, although such date may be extended solely by mutual agreement of the Plan Proponents. The Successful Bidder will pay all costs and expenses in connection with the Closing related to obtaining fee title insurance, title company endorsement, and search and escrow charges. The Successful Bidder will also be responsible for the completion and the preparation of all Closing documents required. All title exceptions customarily omitted from a title policy on account of a title affidavit of seller will be deemed to be "permitted encumbrances" for the purpose of the Closing.

L.     Exemption from Transfer Tax. Under the Plan, to the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan (including an instrument of transfer executed in furtherance of the Sale), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of the Plan.

M.     Damages for Buyer's Failure to Close. **TIME IS OF THE ESSENCE AS AGAINST THE SUCCESSFUL BIDDER AND THE FAILURE OF THE SUCCESSFUL BIDDER TO EITHER TIMELY PAY THE ADDITIONAL BID DEPOSIT OR TIMELY CLOSE FOR ANY REASON WHATSOEVER (EXCEPT AS OTHERWISE PROVIDED BELOW), INCLUDING ITS FAILURE TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE, WILL RESULT IN THE FORFEITURE OF THE DEPOSIT BY THE PURCHASER TO THE DEBTOR, SUBJECT TO THE SENIOR MORTGAGEE'S LIEN, AND THE LOSS OF THE DEPOSIT AS LIQUIDATED DAMAGES AND THE TERMINATION OF THE SUCCESSFUL BIDDER'S RIGHT TO ACQUIRE THE PROPERTY.** The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the inability to deliver a bargain and sale deed without covenants against grantor's acts to the Property. Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Plan Proponents or the Plan Proponents' professionals be responsible for, or pay, such expenses.

N.     Backup Bidder. In the event that the Successful Bidder fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Plan Proponents, at their sole option, shall be authorized to sell the Property to the Backup Bidder without any further notice, and without giving credit for the deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Plan Proponents

deem appropriate.  Should the Backup Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Plan Proponents to the Backup Bidder, the Plan Proponents shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Backup Bidder must close within thirty (30) days of notification that its bid is accepted, **TIME BEING OF THE ESSENCE** as to the Backup Bidder.

O.      <u>As Is Sale</u>.  The Property is being sold free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.  By delivering its respective Bid Deposit, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid.  Neither the Plan Proponents nor any of their representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, the Senior Mortgagee, or their professionals.

P.      <u>Deed</u>.  The Debtor shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

Q.      <u>Auctioneer</u>.  [  ] will serve as auctioneer to conduct the Auction, if held.

R.      <u>Seller's Failure to Close</u>.  If the Debtor is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to approve the sale of the Property pursuant, the Disbursing Agent's only obligation will be to refund the Bid Deposit to the Successful Bidder.  The Successful Bidder will have no claim or recourse against the Plan Proponents or their respective professionals.

S.      <u>Bankruptcy Court Jurisdiction</u>.  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent

to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending chapter 11 case.

T.  <u>Reservation of Rights</u>.  The Plan Proponents are authorized to, in a writing signed by both Plan Proponents, amend and modify these Terms and Conditions of Sale to impose additional terms and conditions on the proposed Auction and Sale of the Property, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Plan Proponents' reasonable judgment, such modifications would be in the best interest of maximizing value from the Sale and promote an open and fair Auction and Sale process, and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of these Terms and Conditions of Sale.

I have read these Terms and Conditions and agree to be bound by them. **(Please  print clearly)**

Date: _____

Bidder: _____

Signature: _____

Title: _____

Address: _____

E-Mail: _____

Phone No.: _____

Attorney Info: _____

8

**Exhibit 2**
**(Auction and Sale Hearing Notice)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                    :
                                                          :    Chapter 11
VIEWSTAR LLC,                                             :
                                                          :    Case No.:  24-22716 (SHL)
                          Debtor.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that Viewstar LLC (the "Debtor") has been authorized to sell the Debtor's real property located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property") free and clear of liens, claims, encumbrances, equities and interests to the Successful Bidder (the "Sale") at the auction to be held on [   ], 2025, at [   ] (EST) at [   ] (the "Auction"), or such later time or other place as the Debtor shall timely notify all Qualified Bidders.[1]

**PLEASE TAKE FURTHER NOTICE** that, on [  ], 2025, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Bid Procedures Order") approving the Bid Procedures in connection with the Auction, which sets forth dates and times related to the Sale. All interested bidders should carefully read the Bid Procedures. To the extent that there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions in this Notice, the terms of the Bid Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bid Procedures and Bid Procedures Order, as well as all related exhibits, have been electronically filed with the Bankruptcy Court and may be examined and inspected by interested parties by accessing the Bankruptcy Court's website at www.nysb.uscourts.gov. Note that a PACER password is needed to access documents on the Bankruptcy Court's website. You may also request these documents by contacting Hanh Huynh, 212-390-8272, hhuynh@rubinlawllc.com. Documents requested will only be delivered by electronic mail.

**PLEASE TAKE FURTHER NOTICE** that if the Debtor receives Qualified Bids within the requirements and timeframe specified in the Bid Procedures, then the Debtor will conduct the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601on [ ], 2025 at [ ] (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that, except for objections regarding the conduct of the Auction, which may be raised orally at the Sale Hearing, the deadline to object to the Sale

---

[1] To the extent not otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Bidding Procedures, which are annexed as Exhibit 1 to the Bidding Procedures Order.

shall be [  ], 2025 at 4:00 p.m. (EST) (the "<u>Sale Objection Deadline</u>").  Objections, if any, must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be actually received by counsel for the Debtor, Rubin LLC, Attn: Paul Rubin, Esq., 11 Broadway, Suite 715, New York, New York 100004, no later than the Sale Objection Deadline.

<u>**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**</u>

Any party or entity who fails to timely file and serve an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bid Procedures Order shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the Property free and clear of liens, claims, encumbrances, equities and interests.

Dated: New York, New York
     [  ], 2025

RUBIN LLC

By:  <u>*/s/ Paul A. Rubin*</u>
     Paul A. Rubin
     Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com
*Counsel for the Debtor*

2

# EXHIBIT B

## (Proposed Sale Order)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              :

                                                    :    Chapter 11

VIEWSTAR LLC,                                       :

                                                    :    Case No.:  24-22716 (SHL)

                      Debtor.                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**[PROPOSED]**
**ORDER APPROVING THE SALE OF THE DEBTOR'S REAL LOCATED**
**AT 10 MOUNTAINVIEW ROAD, UPPER SADDLE RIVER, NEW JERSEY 07458**

Upon the portion of the motion (the "Motion")[1] of Viewstar LLC (the "Debtor"), pursuant

to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule

6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the Southern District of New York (the "Local Rules"), and the Court's Amended

Guidelines for the Conduct of Asset Sales (the "Sale Guidelines"), for entry of an order (the "Sale

Order") approving the sale (the "Sale") of the Debtor's real property located at 10 Mountainview

Road, Upper Saddle River, New Jersey 07458 (the "Property") free and clear of liens, claims

encumbrances, equities and interests; and this Court having jurisdiction over this matter pursuant

to 28 U.S.C. § 1334; and this Court having found that the Motion is a core proceeding pursuant to

28 U.S.C. §§ 1408 and 1409; and a hearing to consider approval of the Sale to [ ] (the "Purchaser")

pursuant to the terms of the [   ] (the "Purchase Agreement") having been held before the Court on

[  ], 2025 (the "Hearing"); and upon the record of the Hearing; and upon the record of this case;

and after due deliberation thereon, for the reasons stated by the Court on the record of the Hearing,

and good and sufficient cause appearing therefor, it is hereby:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**FOUND, CONCLUDED AND DETERMINED THAT**:[2]

A.      **Jurisdiction and Venue**.  This Court has jurisdiction to consider approval of the

Sale under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for

the relief requested are Bankruptcy Code sections 105, 363, 365, 1123(a)(5), 1141(c), 1142, and

1146(a), Bankruptcy Rules 2002 and 6004, and Rule 6004-1 of the Local Rules for the United

States Bankruptcy Court for the Southern District of New York (the "Local Rules").

B.      **Notice**.  As evidenced by affidavits of service previously filed with the Court, and

based on representations of counsel at the Hearing, (i) due, proper, timely, adequate and sufficient

notice of the Sale has been provided to all parties entitled thereto; (ii) such notice was and is good,

sufficient and appropriate under the circumstances of the Chapter 11 Case; and (iii) no other or

further notice of the Sale or the Hearing, or the relief sought with respect to them, is or shall be

required.  A reasonable opportunity to object or to be heard has been afforded to all interested

persons and entities.

C.      **Arm's-Length Sale**.  The sale of the Property was negotiated by the Debtor and

the Purchaser at arm's-length, without collusion or fraud, and in good faith within the meaning

section 363(m) of the Bankruptcy Code.  No evidence was presented suggesting that the Debtor,

the Purchaser, their respective affiliates, or their representatives has engaged in any conduct that

would cause or permit sale of the Property, or the Purchase Agreement to be avoided under section

363(n) of the Bankruptcy Code.  The Purchaser has proceeded in good faith in connection with

---

[2]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

this proceeding.  The terms and conditions of the sale transaction and the Purchase Agreement, including without limitation, the consideration provided therein, are fair and reasonable.  The Purchase Agreement is a valid and binding contract and shall be enforceable according to its terms.

D.      **Sale in Best Interests**.  The sale of the Property and the is in the best interests of the Debtor, its estate, its creditors and all other parties in interest.  Immediate approval by this Court of the sale of the Property and the to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate.  There is risk of deterioration of the value of the Property if the sale transaction is not promptly consummated.

E.      **Business Justification**.  The Debtor has demonstrated good, sufficient and sound business reasons and compelling circumstances for the Court to approve the Purchase Agreement and authorize the sale of the Property.  Entry of this Order approving the sale of the Property is a necessary condition precedent to the Purchaser's consummation of the sale transaction.

F.      **Consideration**.  The Property has been adequately marketed, and the purchase price to be provided by the Purchaser pursuant to the Purchase Agreement (i) represents the highest or otherwise best offer received by the Debtor for the Property, and (ii) constitutes reasonably equivalent value and fair consideration for the Property.

G.      **Free and Clear**.  The sale of the Property to the Purchaser in accordance with the Purchase Agreement will be a legal, valid, and effective transfer of the Property, and, except as otherwise provided in the Purchase Agreement, vests or shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Property free and clear of all Liens and Claims of any kind or nature to the fullest extent permitted by sections 363(f), 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code.  The holders of any Liens or Claims who did not object to the Sale are barred from objecting to the sale pursuant to section 363(f)(2) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      **Sale is Approved**.  The Sale is approved, and the Debtor is authorized to sell, transfer and convey the Property to the Purchaser pursuant to the terms of the Plan, the Purchase Agreement, and this Order.

2.      **Objections Overruled**.  Any objections to the entry of this Order or the relief granted herein that have not been withdrawn, waived, settled, or otherwise resolved as set forth on the record at the Hearing and/or memorialized pursuant to the terms hereof (if any), and any reservations of rights asserted in connection with entry of this Order, hereby are denied and overruled on the merits with prejudice.

3.      **Approval and Authorization**.  The Purchase Agreement and all of the terms and conditions therein are approved.  The Debtor and its officers, members, employees and agents, (including Lee Buchwald in his capacity as Restructuring Officer of the Debtor), as applicable, are each hereby authorized and directed to (i) perform the obligations under and comply with the terms of the Purchase Agreement and execute, deliver and perform any additional agreements, instruments or documents that may be reasonably necessary or appropriate to implement the Sale; (ii) consummate the sale, transfer and conveyance of the Property in accordance with the terms and conditions of the Purchase Agreement and this Order; and (iii) take all other and further actions as may be reasonably necessary or appropriate to implement the Sale, and perform its obligations under the Purchase Agreement and this Order.  The provisions of this Order authorizing the sale of the Property free and clear of all Liens and Claims, except as otherwise set forth in the Purchase Agreement or this Order, shall be self-executing, and neither the Debtor or the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

4

However, the Debtor, the Purchaser, and each of their respective officers, directors, employees, agents, and representatives are hereby authorized and empowered to take all actions and execute, file, register or otherwise record, and deliver any and all agreements, instruments and documents (including without limitation, deeds and accompanying transfer documents as may be required by recording officers and/or a title insurance company) that the Debtor or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Purchase Agreement and this Order. The Purchaser and/or the Debtor are hereby authorized to file, register, or otherwise record a copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims and/or interests in, against or with respect to the Debtor and/or the Property. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each federal, state, or local government agency, department or office.

4.    **<u>Valid Transfer</u>**.  Upon the Closing, (i) the sale transaction effects a legal, valid, enforceable and effective sale and transfer of all of the Debtor's rights, title, and interests in the Property to the Purchaser, and shall vest the Purchaser with all of the Debtor's rights, title, and interests in the Property free and clear of all Liens and Claims of any kind to the fullest extent permitted by sections 363(f), 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code, except as expressly provided in this Order and the Purchase Agreement, and (ii) the Purchase Agreement, the sale of the Property, and any agreements, instruments and documents contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtor or any successor trustee appointed with respect thereto.

5.    **<u>Good Faith Purchaser</u>**.  The sale of the Property under the Purchase Agreement is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the sale, transfer and conveyance of the Property shall not affect

the validity of the sale, transfer and conveyance of the Property to the Purchaser, unless such

authorization is duly stayed pending such appeal.  The Purchaser is a purchaser in good faith of

the Property, and is entitled to all of the protections and immunities afforded by section 363(m) of

the Bankruptcy Code.  No evidence was presented to the Court suggesting that  the Debtor or the

Purchaser engaged in conduct that would cause or permit the Purchase Agreement or the sale of

the Property to the Purchaser thereunder to be avoided under section 363(n) of the Bankruptcy

Code.

       6.     **Injunction**.  Except as expressly provided in the Purchase Agreement or by this

Order, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers,

employees, trade creditors, litigation claimants, and other persons or entities, holding Liens or

Claims of any kind or nature whatsoever in the Debtor or against the Debtor, or the Debtor's rights,

title, and interests in the Property (whether known or unknown, legal or equitable, matured or

unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted,

whether arising prior to or subsequent to the commencement of the Chapter 11 Case, whether

imposed by agreement, understanding, law, equity or otherwise), including, without limitation,

those arising under, out of, in connection with, or in any way relating to the Debtor, the Property,

the operation of the Debtor's business, or the transfer of the Debtor's rights, title, and interests in

the Property to the Purchaser, shall be and hereby are forever barred, estopped and permanently

enjoined from: (i) commencing or continuing in any manner any action or other proceeding,

whether in law or in equity, in any judicial, administrative, arbitral or other proceedings, against

the Purchaser, its successors or assigns, or asserting or pursuing such Liens or Claims against the Property, or the rights, title, and interests of the Purchaser in such Property; (ii) creating, perfecting or enforcing any Liens or Claims against the Purchaser, it successors or assigns, or the Property; (iii) asserting any set-off, right of subrogation, or recoupment of any kind against the Purchaser, it successors or assigns, or the Property; and (iv) commencing or continuing any action in any manner or place, that is inconsistent with the terms of this Order.  All persons and entities are hereby prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Purchaser to acquire the Debtor's right, title, and interest in and to the Property as contemplated by this Order.  Following the Closing, no holder of an Interest in or against the Debtor or the Property may interfere with any of the relief afforded by this Order or with the Purchaser's title to or use and enjoyment of the Property based on or related to such Liens or Claims, or based on any action taken by the Debtor since commencement of the Chapter 11 Case, including without limitation Purchaser's right, ability, and effort to derive rental income and other revenue from the Property and to maximize the value of the Property.  For the avoidance of doubt, the foregoing shall not prevent the the Debtor from enforcing the terms of the Purchase Agreement against the Purchaser and/or its successors and assigns.

7.     **Successor Liability**.  Upon the Closing, and to the fullest extent permitted by section 363(f) of the Bankruptcy Code, the Purchaser, its affiliates, successors and assigns shall not and shall not be deemed to: (i) be a successor or successor employer to the Debtor or its estate under any theory of law or equity; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtor or the Debtor's estate; (iii) be a mere continuation or substantial continuation of the Debtor or any enterprise of the Debtor; or (iv) be liable for any acts or omissions of the Debtor in the conduct of the Debtor's business or arising under or related to the Property other than as set

forth in the Purchase Agreement.  There is no substantial continuity between the Debtor and the

Purchaser, there is no common identity between the Debtor and the Purchaser, and there is no

continuity of enterprise between the Debtor and the Purchaser.  To the fullest extent permitted by

section 363(f) of the Bankruptcy Code, none of the Purchaser or the Property shall have (i) any

liability or responsibility for or be required to satisfy in any manner (whether at law or in equity,

by payment, setoff or otherwise, directly or indirectly) any claim or any Interest against the Debtor,

or (ii) any successor or vicarious liabilities.

8.    **Binding Effect of Order**.  The terms and provisions of the Purchase Agreement

and this Order shall be binding in all respects upon the Debtor, the Debtor's officers and managers,

the Debtor's estate, the Purchaser, all creditors of the Debtor, all holders of equity interests in the

Debtor, and all other parties in interest, and their successors and assigns, including all parties

asserting any lien, claim or interest in or against the Property.

9.    **Sale Free and Clear of Interests**.  This Order (i) shall vest the Purchaser with all

right, title and interest in the Property free and clear of any and all Liens and Claims of any kind

or nature whatsoever to the fullest extent permitted by sections 363(f), 1123(a)(5)(D) and 1141(c)

of the Bankruptcy Code, except as otherwise provided in the Purchase Agreement or this Order,

with such Liens and Claims that are not paid at Closing to attach to the net proceeds of the Sale

with the same force, validity, effect, priority and enforceability as such Liens and Claims had prior

to the Sale; and (ii) shall be binding upon and shall govern the acts of all persons, parties in interest,

and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Property.  Upon

the occurrence of the Closing, the Debtor and all persons holding an Interest in the Property

immediately prior to the Closing are hereby authorized to execute such documents and take all

other actions as may be reasonably necessary to release their Liens or Claims in the Property (if

any) as such Liens or Claims may have been recorded or may otherwise exist.  All recorded Liens

or Claims against the Property shall be deemed stricken from their records, official and otherwise,

except that, at the option of the Secured Creditor may be transferred subject to the Secured

Creditor's mortgage and mortgage lien.

       10.    **Exemption from Stamp or Similar Taxes**.  To the maximum extent provided by

section 1146(a) of the Bankruptcy Code, the Sale shall not be subject to any stamp tax or similar

tax and the appropriate state or local government officials or agents shall forego collection of any

such tax and accept for filing and recordation any of the foregoing instruments or other documents

without the payment of any such tax.

       11.    **Purchaser Is a Party in Interest**.  The Purchaser is a party in interest and shall

have the ability to appear and be heard on all issues related to or otherwise connected to this Order,

the Sale, and any issues related to or otherwise connected to the Sale and the Purchase Agreement.

       12.    **Failure to Specify Provisions**.  The failure to reference or specifically include any

particular provisions of the Purchase Agreement in this Order shall not diminish or impair the

effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and

the sale of the Property be authorized and approved in its entirety.

       13.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004 or

any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days

after the entry hereof, but shall be effective and enforceable immediately upon entry. The Debtor and the Purchaser may close the sale of the Property as soon as practicable.

14. **Modifications**. The Purchase Agreement and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court provided that any such modification, amendment, or supplement does not materially change the terms of the Purchase Agreement or any related agreements, documents, or other instruments.

15. **Inconsistencies with Prior Orders, Pleadings or Agreement**. To the extent this Order is inconsistent with any prior order or pleading with respect to the sale of the Property, the terms of this Order shall govern. To the extent this Order is inconsistent with the terms of the Purchase Agreement, the terms of the Order shall govern.

16. **Retention of Jurisdiction**. This Court retains exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of, and to resolve any and all disputes that may arise under or in connection with, this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder, including, but not limited to, the authority to (i) compel transfer, conveyance and delivery of the Property to the Purchaser, including the execution of any documents, instruments, or agreements related thereto, or the performance of any act necessary or desirable to carry out the Sale and effectuate the transfer, conveyance and delivery of the Property to the Purchaser; (ii) interpret, implement and enforce the provisions of this Order and any related order; and (iii) protect the Purchaser and the Property against any Liens and Claims of any kind or nature whatsoever from which the Property has been sold free and clear.

17.    **<u>Automatic Stay</u>**. The automatic stay provisions of section 362 of the Bankruptcy

Code are lifted and modified to the extent necessary to implement the terms and conditions of the

Sale Agreement and the provisions of this Order.

Dated: New York, New York
       [   ], 2025

 

_____
Honorable Sean H. Lane
United States Bankruptcy Judge