**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                      :

                                                            :   Chapter 11

VIEWSTAR LLC,                                               :

                                                            :   Case No.:  24-22716 (SHL)

                          Debtor.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


<u>**JOINT PLAN OF REORGANIZATION FOR VIEWSTAR LLC**</u>


New York, New York
July 3, 2025


RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel:  (212) 390-8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

-and-

HOLLAND & KNIGHT LLP
Bruce J. Zabarauskas
Keith M. Brandofino
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 513-3200
bruce.zabarauskas@hklaw.com

*Counsel for RREF IV-D SN Portfolio LLC*

Viewstar LLC (the "**Debtor**") and RREF IV-D SN Portfolio LLC (the "**Senior Mortgagee**," and together with the Debtor, the "**Plan Proponents**") hereby propose the following Joint Plan of Reorganization (the "**Plan**") for the Debtor's chapter 11 case pursuant to sections 1121, 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires, (i) the terms set forth in this Article 1 shall have the following meanings when used in the Plan; (ii) any capitalized term that is used in the Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan without reference to a particular document are to the respective section of, article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and  other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and

effective on the Petition Date, except to the extent, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1    **"Administrative Bar Date"** means the first Business Day that is 10 days after Confirmation.

1.2    **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (including, but not limited to, the amounts advanced to the Debtor under the DIP Loan ) (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim.

1.3    **"Administrative Claims Objection Deadline"** means the first Business Day that is 30 days after the Effective Date; provided that the Administrative Claims Objection Deadline may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by a Plan Proponent.

1.4    **"Administrative Expense"** means any actual and necessary cost or expense of administration of this Case, other than U.S. Trustee Fees, allowable under sections 503(b), 507(a)(2), 507(b), 330 or 331 of the Bankruptcy Code, including, but not limited to, the amounts advanced to the Debtor under the DIP Loan.

1.5    **"Allowed Claim"** means a Claim against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim with respect to which (i) a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.6     **"Allowed Interest"** means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.7     **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.8     **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.9     **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

1.10    **"Bar Date"** means January 20, 2025 with respect to Creditors other than Governmental Units, and February 11, 2025 with respect to Governmental Units, the date fixed by Order of the Bankruptcy Court entered on December 5, 2024 [ECF No. 58], subsequent to which date a Proof of Claim may not be timely filed.

1.11    **"Bid Procedures"** means the bidding procedures to govern the sale of the Property approved by the Court pursuant to the Order Approving (I) Bid Procedures in Connection with the Sale of Real Property Located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458, Subject to Higher or Better Offers, (II) the Form and Manner of Notice of Sale Hearing, and (III) Scheduling a Sale Hearing Date entered on April 30, 2025 [ECF No. 95].

1.12    **"Borough"** means the borough of Upper River Saddle, Bergen County, New Jersey.

1.13    **"Business Day"** means any day other than a Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.14    **"Case"** means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled *In re Viewstar LLC*, Case No. 24-22716 (SHL).

1.15    **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

1.16    **"Claim"** means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.17    **"Claims Objection Deadline"** means (a) the 30th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by a Plan Proponent.

1.18    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

1.19    **"Closing Date"** means the date of the closing of the sale of the Property under the Plan.

1.20    **"Confirmation"** means the entry of the Confirmation Order.

1.21    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.22    **"Confirmation Order"** means an Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.23    **"Creditor"** means a holder of an Allowed Claim.

1.24    **"Cure Amount"** means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an Executory Contract for any actual pecuniary loss resulting from a default in respect of an Executory Contract.

1.25    **"Debtor"** means Viewstar LLC.

1.26    **"DIP Lender"** means 10 Mountainview LLC in its capacity as lender in connection with the DIP Loan.

1.27    **"DIP Loan"** means that certain debtor-in-possession financing provided by the DIP Lender as authorized by order of the Bankruptcy Court entered on March 20, 2025 [ECF No. 85].

1.28    **"Disbursing Agent"** means Buchwald Capital Advisors LLC.

1.29    **"Disclosure Statement"** means the Disclosure Statement for the Plan, including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.30    **"Disputed Claim"** means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) any

Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if; (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules. To the extent that a Claim is held by an Insider, the Claim will be a Disputed Claim unless and until that Claim has been settled, withdrawn, or has been determined by a Final Order.

1.31    **"Disputed Claims Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to [Section 7.5] of the Plan. All references to a banking institution and/or a domestic bank, for the purposes of (i) addressing a Disputed Claims Reserve, (ii) a domestic bank, refer only to a banking institution that is an authorized depository in the Southern District of New York.

1.32    **"Effective Date"** means the Closing Date of the sale of the Property, or such other date as may be designated in writing by both of the Plan Proponents.

1.33    **"Estate"** means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.34    **"Estimated Professional Fee Reserve"** means the reserve, in an amount not more than $250,000.00, established pursuant to [Section 2.3] of the Plan to pay Professional Fee Claims

in full, subject to their allowance by the Bankruptcy Court upon the later of (i) the Effective Date, (ii) the date upon which the order relating to any such Allowed Professional Fee Claim become a Final Order, or (iii) upon such other terms and conditions as may be agreed to between the holder of such an Allowed Professional Fee Claim and the Senior Mortgagee.

1.35    **"Executory Contracts"** shall mean "executory contracts" and "unexpired leases" of the Debtor as such terms are used within section 365 of the Bankruptcy Code.

1.36    **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed, reversed, or vacated, and that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing.  The possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to an order will not cause it not to be a Final Order.

1.37    **"Foreclosure Action"** means that certain foreclosure action commenced by the Senior Mortgagee against the Debtor and certain other defendants in the Superior Court of New Jersey, Bergen County.

1.38    **"Governmental Unit"** means the United States; State; Commonwealth, District; Territory; municipality; foreign state; department; agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory a municipality, or a foreign state; or other foreign or domestic government.

1.39    **"GUC Contribution"** means Cash in the amount of $10,000.00 to facilitate a Pro Rata distribution therefrom to holders of Allowed Class 6 General Unsecured Claims should there

be insufficient available Cash from other sources under the Plan, to be funded by either: (i) the Sale Proceeds; (ii) the Senior Mortgagee to the extent that it is the Purchaser of the Property pursuant to a credit bid; or (iii) the Junior Mortgagee to the extent that it is the Purchaser of the Property pursuant to a credit bid.

1.40    **"Insider"** means an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

1.41    **"Insider Claim"** means an Allowed Claim held by or on behalf of an Insider or any successor in interest or assignee thereof.

1.42    **"Interest"** means an equity interest in the Debtor.

1.43    **"Interest Holder"** means the holder of an Allowed Interest in the Debtor.

1.44    **"Junior Mortgage"** means the junior mortgage lien dated April 1, 2020 encumbering the Property given by the Debtor to secure a loan from the Junior Mortgagee to the Debtor in the original principal amount of $4,200,000.00.

1.45    **"Junior Mortgagee"** means 10 Mountainview LLC.

1.46    **"Junior Mortgagee's Secured Claim"** means the Secured Claim of the Junior Mortgagee on account of the Junior Note and Junior Mortgage, and all other loan documents executed by the Debtor in connection therewith, allowed in the amount of $9,204,450.00 pursuant to the *Order Authorizing Debtor's Post-Petition Financing and Granting Related Relief* entered on March 20, 2025 [ECF No. 85].

1.47    **"Junior Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by the Junior Mortgagee in the original principal amount of $4,200,000.00.

1.48    **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.49    **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code, and any legally cognizable security device of any kind, and also includes Claims, any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, rights, liens, charges, judgments, rights, liabilities, interests, lis pendens, rights asserted in litigation matters, competing rights of possession, rights of any tenants, occupants or holdovers, encumbrances or claims of any kind or nature whatsoever (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated and whether due or to become due), whether arising by agreement, any statute or otherwise and whether arising before, on or after the Petition Date.

1.50    **"Litigation Claims"** means those claims that the Debtor holds against third parties which are being preserved under Article VI of this Plan.

1.51    **"Broker"** means Northgate Real Estate Group.

1.52    **"Other Priority Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.53    **"Order"** means an order of the Bankruptcy Court.

1.54    **"Petition Date"** means August 15, 2024, the date on which the Debtor commenced its Case by the filing of its voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

1.55    **"Personal Property"** means all personal property owned by the Debtor, except for (i) cash, and (ii) all Litigation Claims.

1.56    **"Plan"** means this Joint Plan of Reorganization for Viewstar LLC, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.57    **"Plan Proponents"** means, collectively, the Senior Mortgagee and the Debtor.

1.58    **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.59    **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.60    **"Professional"** means all professionals employed by the Debtor under section 327 of the Bankruptcy Code, except for the Broker.

1.61    **"Professional Fee Claim"** means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with sections 330 and 331 of the Bankruptcy Code.

1.62    **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (excluding Professional Fee Claims) filed pursuant to section 503 of the Bankruptcy Code.

1.63    **"Proof of Claim"** means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.64    **"Proof of Interest"** means a proof of Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.65    **"Property"** means singularly and/or collectively the real property of the Debtor and the improvements thereon, located at and commonly known as 10 Mountainview Road, Upper Saddle River, New Jersey 07458, and all Personal Property owned by the Debtor.

1.66    **"Pro Rata"** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

1.67    **"Purchaser"** means the entity to whom the Property is sold pursuant to the Sale Transaction.

1.68    **"Receiver"** means Colliers International of NJ, LLC, as the receiver of the Property pursuant to an order dated November 17, 2022 entered by the Superior Court of New Jersey, Bergen County in the Foreclosure Action, appointing it as the receiver in the Foreclosure Action.

1.69    **"Receivership Claims"** means Claims that have been incurred by the Receiver in its administration and operation of the Property.

1.70    **"Released Entities"** shall have the meaning defined in [Section 8.2] of the Plan.

1.71    **"Reorganized Debtor"** means the Debtor after the Effective Date.

1.72    **"Rockland County Judgment"** means the Judgment entered on March 8, 2021 against 10 Mountain View LLC and Moshe Gold in favor of the Debtor and Yoel Abraham, in the action *Viewstar LLC and Yoel Abraham v. 10 Mountainview LLC and Moshe Gold* filed in the Supreme Court of the State of New York, Rockland County.

1.73    **"Rockland County Judgment Settlement"** shall have the meaning defined in [Section 6.3] of the Plan.

1.74    **"Sale Proceeds"** means the proceeds from the Sale Transaction net of closing costs including, but not limited to, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.

1.75    **"Sale Transaction"** means the sale of the Property pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code to be conducted by public auction in accordance with the Bid Procedures, at which auction any party holding an Allowed Secured Claim arising from a Lien on the Property shall be entitled to credit bid to the extent permitted by the Bid Procedures.

1.76    **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the bankruptcy Rules and any amendments thereto.

1.77    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of either: (i) the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (ii) the amount permissible under applicable law in the event that a secured creditor makes a valid election under section 1111(b) of the Bankruptcy Code.

1.78    **"Senior Mortgage"** means the senior mortgage lien dated April 1, 2020 encumbering the Property given by the Debtor to secure a loan from the Sterling National Bank to the Debtor in the original principal amount of $12,600,000.00.  By virtue of certain allonges and assignments executed by Sterling National Bank, the Senior Mortgagee is the holder of the Senior Mortgage.

1.79    **"Senior Mortgagee"** means RREF IV-D SN Portfolio LLC.

1.80    **"Senior Mortgagee's Secured Claim"** means the Secured Claim of the Senior Mortgagee on account of the Senior Note and Senior Mortgage, and all other loan documents executed by the Debtor in connection therewith.

1.81    **"Senior Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by the Senior Mortgagee in the original principal amount of $12,600,000.00.

1.82    **"Transfer Taxes"** means any and all stamp taxes or similar taxes, which, but for the applicability of section 1146(a) of the Bankruptcy Code, would be applicable to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

1.83    **"Unimpaired"** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.84    **"U.S. Trustee Fees"** mean all fees and charges against the Estate under section 1930 of title 28 of the United States Code.

1.85    **"Unsecured Claim"** means an Allowed Claim which is not an Administrative Claim, a U.S. Trustee Fee, an Insider Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1    Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent they are Allowed Claims, shall receive the treatment provided in this Article 2 in full satisfaction thereof.

2.2     **Administrative Bar Date.**  Except as otherwise provided in [Section 2.3] of the Plan, requests for payment of and/or Proof of Administrative Claims must be filed no later than the Administrative Bar Date.  Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or its Property.

2.3     **Professional Fee Claims.**  All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications, on or before twenty-eight (28) days after the Confirmation Date, for allowance of compensation for services rendered and reimbursement of expenses incurred.  No later than five (5) days prior to the Confirmation Hearing, all entities holding claims for Professional Fee Claims (other than the Broker) shall serve via email upon counsels for the Plan Proponents a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals.  Professional Fee Claims, subject to allowance by the Bankruptcy Court shall be paid in full from the proceeds of the Sale Transaction upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Allowed Professional Fee Claim becomes a Final Order; provided, however that, if the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then the Allowed Professional Fee Claims shall be paid by the Senior Mortgagee.  Any compensation to be paid to the Broker shall be paid pursuant to the terms of an order of the Bankruptcy Court.

2.4     **Post-Petition Tax Claims.**  All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) the Administrative Bar Date, and (ii) 60 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit.  Any

holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor, the Property or the Purchaser, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

2.5     **Administrative Tax Claims Held by Governmental Units.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) on such later date and upon such other terms as may be agreed to, in writing, between the Debtor or Reorganized Debtor, as applicable, and such Governmental Units on or before the Confirmation Date.

2.6     **Administrative Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three Business Days after such Claim becomes an Allowed Administrative Claim or (ii) on such later date and upon such other terms as may be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim.

2.7     **Priority Tax Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the applicable Governmental Unit, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in full on the Effective Date.

2.8     **U.S. Trustee Fees.**   The Disbursing Agent shall pay all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon until conversion, dismissal or closing of this Case by means of a final decree, whichever happens earlier.   Within ten (10) days after the Effective Date, the Debtor shall file a closing report detailing all disbursements made at the closing of the Property.   All fees and charges assessed against the Debtor under § 1930 of title 28 of the United States Code, and any applicable interest thereon, through dismissal, conversion or entry of a final decree, shall be paid by the Disbursing Agent, in Cash in full as required by statute from proceeds of the Sale Transaction, except that: (i) if the Senior Mortgagee is the Purchaser of the Property pursuant to a credit bid, then the U.S. Trustee Fees shall be paid by the Senior Mortgagee; (ii) if the Junior Mortgagee is the Purchaser of the Property, then the U.S. Trustee Fees shall be paid by the Junior Mortgagee.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims are classified as set forth in this Article 3.   A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class (and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes), and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1     **Class 1 – Other Priority Claims.**   Class 1 consists of all Allowed Other Priority Claims.

3.2     **Class 2 – Borough's Secured Claims.**   Class 2 consists of the Allowed Secured Claims of the Borough.

3.3     **Class 3 – Receivership Claims.**   Class 3 consists of the Allowed Receivership Claims.

3.4    **Class 4 – Senior Mortgagee's Secured Claim.**  Class 4 consists of the Allowed the Senior Mortgagee's Secured Claim.

3.5    **Class 5 – Junior Mortgagee's Secured Claim.**  Class 5 consists of the Allowed the Junior Mortgagee's Secured Claim.

3.6    **Class 6 – General Unsecured Claims.**  Class 6 consists of Allowed General Unsecured Claims, including any deficiency claims of the Senior Mortgagee and the Junior Mortgagee.

3.7    **Class 7 – Equity Interests.**  Class 7 consists of all Allowed Interests in the Debtor.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

4.1    **Class 1 – Other Priority Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 1 Other Priority Claims, the holders of Other Priority Claims shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of an Allowed Claim in Class 1 shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction (i) in Cash, in the full amount of its Allowed Other Priority Claim, or (ii) on such later date and upon such other terms as may otherwise be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim; provided, however, (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that the Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgagee.  Class 1 is unimpaired, and the holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.2    **Class 2 – Borough's Secured Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 2 Borough's Secured Claims, the holder of such Claims shall receive the following treatment:  on the Closing Date, the Disbursing Agent shall pay, in Cash, the full amount of the Allowed Class 2 Claim.  Class 2 is unimpaired, and the holder of Allowed Secured Claims in Class 2 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holder of Allowed Secured Claims in Class 2 is not entitled to vote to accept or reject the Plan.

4.3    **Class 3 – Receivership Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 3 Receivership Claims, the Receiver shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, the Receiver shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction (i) in Cash, in the full amount of its Allowed Receivership Claim that has not been paid, or (ii) as may be otherwise agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the Receiver; provided, however: (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that if the Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgagee.  Class 3 is unimpaired, and the Receiver is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Receiver is not entitled to vote to accept or reject the Plan.

4.4     **Class 4 –Senior Mortgagee's Secured Claim.**   In full satisfaction of the Class 4

Senior Mortgagee's Secured Claim, the Senior Mortgagee shall receive the following treatment:

(i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims,

Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims,

on the Effective Date, or as soon as possible after the Senior Mortgagee's Secured Claim becomes

an Allowed Claim, the Senior Mortgagee shall receive from the Disbursing Agent remaining Cash,

plus any Deposit forfeited by a bidder pursuant to the Bid Procedures if any, up to the full amount

of its Allowed Secured Claim, or (ii) if the Property is sold to the Senior Mortgagee by credit bid,

then on the Effective Date, the Senior Mortgagee, or its designee, shall take title to the Property

free and clear of all Liens, except permitted encumbrances as determined by the Senior Mortgagee

(which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's

sole discretion).   To the extent that Cash and Sale Proceeds are insufficient to pay the Class 4

Claim in full, the deficiency amount shall be treated as a Class 6 Claim.   In the event that the holder

of the Class 4 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 4

Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the

holder of the Class 4 Claim shall be treated as a Class 6 Claim.   The Class 4 Claim shall include

post-petition interest in accordance with applicable law to the extent that the value of the Property

exceeds the amount of the Class 4 Claim.

Until the Closing Date, the Senior Mortgagee shall retain its duly perfected and first priority

mortgage and security interests and liens in all of the Debtor's assets, including without limitation

the Property.   Effective as of the Closing Date, the mortgage, security interests and liens of the

Class 4 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same

extent, validity, and priority without any need for the holder of the Class 4 Allowed Claim to take

any act of perfection.  The Class 4 Senior Mortgagee's Secured Claim is Impaired, and the Senior Mortgagee is entitled to vote to accept or reject the Plan.

     4.5    **Class 5 –Junior Mortgagee's Secured Claim.**  In full satisfaction of the Class 5 Junior Mortgagee's Secured Claim, the Junior Mortgagee shall receive the following treatment: (i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims, on the Effective Date, or as soon as possible after the Junior Mortgagee's Secured Claim becomes an Allowed Claim, the Junior Mortgagee shall receive from the Disbursing Agent remaining Cash, if any, up to the full amount of its Allowed Secured Claim, or (ii) if the Property is sold to the Junior Mortgagee by credit bid, then on the Effective Date, the Junior Mortgagee, or its designee, shall take title to the Property free and clear of all Liens, except permitted encumbrances as determined by the Junior Mortgagee (which may include the existing mortgage lien of the Junior Mortgagee, in the Junior Mortgagee's sole discretion).  In the event that the holder of the Class 5 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 5 Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the holder of the Class 5 Claim shall be treated as a Class 6 Claim.

     Until the Closing Date, the Junior Mortgagee shall retain its duly perfected and second priority mortgage and security interests and liens in all of the Debtor's assets, including the Property.  Effective as of the Closing Date, the mortgage, security interests and liens of the Class 5 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same extent, validity, and priority without any need for the holder of the Allowed Class 5 Claim to take any act of perfection.  The Class 5 Junior Mortgagee's Secured Claim is Impaired, and the Junior Mortgagee is entitled to vote to accept or reject the Plan.

4.6    **Class 6 – General Unsecured Claims.**    Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 6 General Unsecured Claims, the holders of such Claims shall receive the following treatment:  each holder of an Allowed Class 6 General Unsecured Claim shall receive from the Disbursing Agent its Pro Rata payment of the remaining Cash and Sale Proceeds as soon as practicable after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, the Class 3 Claim, Class 4 Claims, and Class 5 Claims; *provided, however,* if the amount of such remaining Cash and Sale Proceeds available to pay Allowed Class 6 Claims is less than $10,000.00, the Disbursing Agent shall pay each holder of a Allowed Class 6 Claim a pro rata share of the GUC Contribution in an amount sufficient to pay all holders of Allowed Class 6 Claims the total amount of $10,000.00, because the Senior Mortgagee and Junior Mortgagee have agreed to waive any distribution from the GUC Contribution. In addition to the foregoing, the proceeds of any Litigation Claims following the payment of the legal fees and expenses associated with such Litigation Claims shall be paid to the holders of Class 6 Allowed Claims on a pro-rata basis.  Class 6 Claims are Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.7    **Class 7 – Equity Interests.**    On the Effective Date, all Interest Holders shall retain their Interests and their rights as to any remaining balance of Cash, if any, that may exist after payment in full of all Allowed Claims and Classes of Claims against the Debtor.  Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for winding down its own affairs.  Class 7 Equity Interests are Impaired, and the holders of Equity Interests are entitled to vote to accept or reject the Plan.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1     **Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and unexpired leases to which the Debtor is a party shall be deemed rejected unless assumed by order of the Bankruptcy Court.

5.2     **Rejection Claims.**  Allowed Claims arising from the rejection of Executory Contracts and unexpired leases of the Debtor pursuant to Section 5.1 of the Plan shall be treated as General Unsecured Claims.

5.3     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Plan Proponents within thirty (30) days after the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in a manner provided in such Final Order).  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or their successors or their respective Property.

**ARTICLE VI**

**IMPLEMENTATION OF THE PLAN**

6.1     **The Sale Transaction and Plan Funding**.  Payments under the Plan will be paid from either the Sale Proceeds, Cash held by or on behalf of the Debtor as of the Effective Date, and/or any Cash to be contributed by the Senior Mortgagee or Junior Mortgagee under the Plan. The Sale Transaction will be implemented pursuant to sections 363 and 1123(a)(5)(D) of the

Bankruptcy Code and the Bid Procedures.  Prior to or on the Effective Date, the Property shall be sold to the Purchaser, pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code free and clear of all Liens (except permitted encumbrances as determined by the Purchaser), with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan.  Except as set forth elsewhere in the Plan, all distributions to be made on the Effective Date shall be transferred to the escrow account of the Disbursing Agent promptly following the closing of the Sale Transaction.  Only in the event that the Senior Mortgagee or its assignee or designee is the Purchaser of the Property by credit bid or if the Property is sold to a third party and the Cash and Sale Proceeds are insufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims in accordance with the terms of the Plan, then the Senior Mortgagee shall deliver to the Disbursing Agent no later than the Closing Date for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims in accordance with the terms of the Plan, and (ii) the GUC Contribution.  Only in the event that the Junior Mortgagee or its assignee or designee is the Purchaser of the Property by credit bid, then the Junior Mortgagee shall deliver to the Disbursing Agent no later than the Closing Date for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 4 Claims in accordance with the terms of the Plan, and (ii) the GUC Contribution.  Within two (2) Business Days after entry of the Confirmation Order, the Debtor will deliver to the Disbursing Agent all

Cash of the Debtor wherever located which amounts may be utilized by the Plan Proponents to pay any and all Allowed Claim(s) in their sole discretion.

The Property will be sold free and clear of all Liens (except permitted encumbrances as determined by the Purchaser (which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's sole discretion) and the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan). The Property will be sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property. The Purchaser will be required to pay at closing, in cash, all pre-petition and post-petition claims secured by a lien that is senior in priority to the Senior Mortgagee's lien.

6.2    **Sale Approval.** As a part of the Sale Transaction under the Plan, and in order to ensure consummation of the Plan, the order approving the Sale Transaction to be entered after the auction shall, subject to Bankruptcy Court approval, contain the following findings of fact and conclusions of law: (i) that the terms and conditions of the Sale Transaction and the purchase agreement are fair and reasonable, (ii) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, without any fraud, (iii) that the transfer of the Property to the Purchaser represents

an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) that the Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code, with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan; except that in the event that the Senior Mortgagee is the Purchaser, then the Property may be sold subject to its mortgage lien in the sole discretion of the Senior Mortgagee, (vi) that the Sale Transaction was not controlled by an agreement among potential purchasers for purposes of section 363(n) of the Bankruptcy Code, and (vii) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser.  All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

6.3    **General Settlement of Claims.**  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies against the Debtor resolved pursuant to the Plan, including the Rockland County Judgment Settlement.  Pursuant to the Rockland County Judgment Settlement, on the Effective Date, 10 Mountainview LLC and/or Moshe Gold, as judgment debtors under the Rockland County Judgment, will be responsible to the Debtor, in full and final satisfaction, settlement and discharge of the Debtor's 50% interest in the Rockland County Judgment, the sum of $83,812.98 ("Rockland County Judgment Settlement Payment"), which amount constitutes the Debtor's 50% interest in the Rockland County Judgment.  The Rockland County Judgment Settlement Payment will be

offset against the total amount that the Junior Mortgagee will be entitled to receive under the Plan.

Except for claims under and pursuant to the Rockland County Judgment, nothing herein shall

release any claim against a non-debtor person or entity.

6.4    **The Disbursing Agent.**    The Disbursing Agent shall be appointed on the

Confirmation Date on behalf of the Debtor and its estate in order to take such actions as may be

necessary or appropriate to implement the Plan, including the Sale Transaction, the claims

administration process, and distributions to creditors.  The Disbursing Agent is authorized to

employ and compensate professionals to represent it with respect to its responsibilities under the

Plan.  Except as set forth elsewhere in the Plan, all payments required to be made under the Plan

shall be made by the Disbursing Agent in accordance with the terms of the Plan.  The Disbursing

Agent shall take all necessary steps, and perform all necessary acts, to consummate the terms and

conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent

with section 1142 of the Bankruptcy Code, authorizing and directing the Debtor and any other

necessary party to execute or deliver, or to join in the execution or delivery, on the Effective Date,

of any instrument required to effect a transfer of property required by the Plan, in form and

substance satisfactory to Purchaser, and to perform any act, including the satisfaction of any Lien,

that is necessary for the consummation of the Plan.  Each of the Plan Proponents is designated a

party in fact to execute all documents in the name of the Debtor as may be required to consummate

the Sale Transaction, including, without limitation, execute any and all documents necessary to

effectuate the transfer of title of the Property to the Purchaser at the closing of the Sale Transaction,

including without limitation a deed, a bill of sale and all required transfer tax returns and any other

documents in the name of the Debtor as may be required to consummate the Sale Transaction.

Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, should the Property be sold to the

Senior Mortgagee, or its designee, free and clear of any and all Liens, the Senior Mortgagee shall have the option, in its sole and absolute discretion, to take title to the Property subject to its existing mortgage lien of record, or to extend that option to any third party purchaser.  The Confirmation Order will also authorize the Disbursing Agent to hold all Sale Proceeds from the closing of the Sale Transaction until Disbursing Agent makes distributions or disbursements under the Plan.  The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.

6.5    **Vesting of Assets.**  Except as otherwise provided in the Plan, upon the closing of the sale of the Property, the Property shall vest in the Purchaser, free and clear of all Liens.  From and after the Effective Date, the Purchaser may operate the Property and use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as otherwise provided herein.  After the Plan has been fully administered, including payment of all Allowed Claims, fees and expenses, any remaining property of the Estate that the Debtor was not required to turnover to the Disbursing Agent under the Plan shall vest in the Reorganized Debtor free and clear of all Liens, unless otherwise provided pursuant to the Plan and the Confirmation Order.

6.6    **Exemption from Certain Taxes.**  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of

the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.7    **Execution of Documents.**

(a)    On the Effective Date, the Debtor and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)    Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, claim or encumbrance that is to be released and satisfied under compliance with the provisions of the Plan) not expressly in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.8    **Filing of Documents.**  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.9     **Preservation of Insurance.**   The Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor or any other person or entity.  Likewise, the Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or any insurance carrier.

6.10     **Preservation of Rights of Action.**   Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor or its designee, who may, in accordance with its determination of the best interest of the estate, enforce any claims, rights and causes of action arising under section 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory. The proceeds of any Litigation Claims following the payment of the legal fees and expenses associated with such Litigation Claims shall be paid to the holders of Class 6 Allowed Claims on a pro-rata basis.

6.11     **Funding.**   Except as set forth otherwise in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan.  Except as set forth elsewhere in the Plan, the Plan will be funded from the Sale Proceeds, any Cash turned over by the Debtor, and, if necessary, the GUC Contribution.  At Closing, the Disbursing Agent shall segregate sufficient Cash to pay or reserve for all payments that are to be made pursuant to the terms of the Plan.  In the event that the proceeds of the Sale Transaction are insufficient to fund the GUC Contribution, then, on the Closing Date, the GUC Contribution shall be paid by: (i) the Senior Mortgagee to the Disbursing Agent if the Senior Mortgagee is the Purchaser pursuant to a credit bid; and (ii) the Junior Mortgagee to the Disbursing Agent if the

Junior Mortgagee is the Purchaser pursuant to a credit bid.  The Disbursing Agent shall retain

sufficient funds in a segregated account to make distributions as provided in the Plan on account

of Allowed Claims, including Allowed Professional Fee Claims and U.S. Trustee Fees.  Any fees

due to the Broker will be paid in accordance with the order authorizing the Broker's retention.

### ARTICLE VII

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1     **Disbursing Agent.**  The Disbursing Agent has posted a bond in the amount of

$2,500,000.00 as security for the performance of its duties.  The Disbursing Agent shall have no

obligation to file tax returns or similar reports with the appropriate taxing authorities.  The

Disbursing Agent shall not have, or incur any liability to any entity for any action take or omitted

to be taken in connection with or related to the formulation, preparation, dissemination,

Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument,

release or other agreement or document created or entered into, or any other action taken or omitted

to be taken in connection with the Plan, except in the case of gross negligence, willful misconduct,

criminal conduct, or for any liability pursuant to 28 U.S.C. § 959 solely in connection with carrying

out of its duties under the Plan, which liability shall be expressly limited to the period commencing

from the Effective Date of the Plan and ending on the date that all disbursements in accordance

with the Plan have been distributed.

7.2     **Timing of Distributions Under the Plan.**  Subject to Section 7.4 of the Plan, any

payments, distributions or other performance to be made pursuant to the Plan on account of any

Allowed Claim shall be deemed to be timely made if made on or within five (5) Business Days

following the later of (i) the Effective Date, or (ii) the expiration of any applicable objection

deadline with respect to such Claim, or (iii) such other times provided in the Plan.  Notwithstanding

anything to the contrary contained in the Plan, distributions on account of Class 6 General

31

Unsecured Claims will not be made until after the total amount of Allowed Claims in such Class has been determined, and distributions have been made to holders of Allowed Claims in Classes 1 through 5.

7.3    **Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

7.4    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any disputed portion of a Disputed Claim.

7.5    **Escrow of Cash Distributions.**

(a)    Unless otherwise agreed to in writing by the Disbursing Agent and the holder of any Claim to which this Section 7.5(a) applies, on the Effective Date the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property (whether received from the Debtor, the Senior Mortgagee, or the Purchaser) equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) such Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Claims of Governmental Units for any tax, (iii) any disputed cure amount and (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code.  Notwithstanding the foregoing, the undisputed portion of any Disputed Claim will be distributed in accordance with the Plan.

(b)     In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c)     The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be deposited.

7.6     **Distribution After Allowance.**  Within ten (10) days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the funds placed in escrow in accordance with Section 7.5 of the Plan all Cash or other property to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

7.7     **Investment of Segregated Cash and Property.**  To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for an investment made or any omission to invest such Cash, other property or proceeds.

7.8     **Distribution After Disallowance.**  Subject to Section 7.5(c) of the Plan, the remaining Cash, if any, and other property segregated on account of Disputed Claims, including

all allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be paid to the Allowed Interests, if any.

7.9    **Delivery of Distributions.**    Except as provided in Sections 7.11 and 7.12 of the Plan, distributions to holders of Allowed Claims shall be made:  (i) at the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) at the addresses set forth in any written notices of address change delivered to the Disbursing Agent; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of change of address.

7.10    **Undeliverable Distributions.**

(a)    If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution become deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 7.12 of the Plan.

(b)    Nothing contained in the Plan shall require the Senior Mortgagee, the Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

7.11    **Unclaimed Distributions.**  Any Cash or other property to be distributed under the Plan shall be retained by the Disbursing Agent if it is not claimed by the entity entitled thereto before the later of (i) six months after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

7.12    **Set-offs.**  The Disbursing Agent may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.  Parties affected by set-offs will receive a three (3) day notice of such a set-off.

7.13    **Interest on Claims.**  Except as otherwise expressly provided for in the Plan or the Bankruptcy Code, the Confirmation Order, other order of the Bankruptcy Court, or required by applicable bankruptcy law, interest accruing after the Petition Date shall not be paid on any unsecured or under-secured Claims, and no unsecured or under-secured Claimant shall be entitled to be paid interest accruing on or after the Petition Date on any Claim.

## ARTICLE VIII

### INJUNCTION AND RELEASES

8.1    **Injunction.**  Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date:  (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.  Except as otherwise provided in the Confirmation Order, entry of the Confirmation Order shall constitute an injunction

against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from the Senior Mortgagee, from the Junior Mortgagee, from the Disbursing Agent, or from the Property, any claim, obligation or debt against the Debtor that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan. Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor herein shall not receive a discharge in connection with this liquidating Plan.

8.2     **Limitation of Liability.** Neither the Debtor, the Senior Mortgagee, the Junior Mortgagee, the Disbursing Agent nor any of their respective officers, attorneys, directors, or employees (acting in such capacity) nor any professional person employed by any of them (collectively, the **"Released Entities"**), shall have or incur any liability between the Petition Date and the Effective Date to any holder of a Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any action taken or omitted to be taken in connection with, related to, or arising out of, the Chapter 11 Case, or the formulation, preparation, dissemination, Confirmation or consummation of the Plan, in each case other than claims or causes of action for fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in the Plan shall exculpate or release any Released Entities from any obligations under the Plan or a prior order of the Court. Nothing in the Plan shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or

any criminal laws of the United States or any state and local authority against the Debtor, the Senior Mortgagee, the Disbursing Agent or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Entities referred to herein. Nothing in the Plan shall limit the liability of any professionals involved herein for malpractice.

8.3    **Plan and Confirmation Order as Release.**  Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 8 of the Plan.

8.4    **Injunction Against Interference with Plan.**  Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, will be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided,* that nothing herein or in the Confirmation Order shall preclude, limit, restrict or prohibit any party in interest from seeking to enforce the terms of the

Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

8.5 **No Effect On Guarantees**. Nothing in this Plan shall have the effect of releasing or modifying any guaranty executed by any Person concerning any indebtedness of the Debtor. Nothing in this Plan shall enjoin or stay any creditor or party in interest from pursuing its rights against any Person who guaranteed any indebtedness of the Debtor.

## ARTICLE IX

## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1 **Condition to Confirmation.** The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee.

9.2 **Conditions to Effective Date.** Unless waived in a writing signed by both the Debtor and the Senior Mortgagee, the Plan will not become effective and the Effective Date will not occur, and the Senior Mortgagee will not be required to fund any obligations under the Plan, unless and until the Debtor and the Senior Mortgagee are reasonably satisfied that:

(a) The Confirmation Order has been entered and is not stayed;

(b) The Bankruptcy Court shall have entered the order approving the Sale Transaction in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee;

(c) All Documents and agreements necessary to effectuate the Sale Transaction have been executed and delivered in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee, and the Sale Transaction shall have closed; and

(d) Only in the case in which the Senior Mortgagee is the purchaser of the Property pursuant to credit bid, Allowed Administrative Claims, Professional Claims (not including the fees of the Broker) and Allowed Priority Claims do not exceed $400,000.00.

9.3     Each of the conditions to confirmation, the Plan becoming effective, or the occurrence of the Effective Date may be waived in whole or in part only by both the Debtor and the Senior Mortgagee in their sole discretion without the need for notice or a hearing.

9.4     **Binding Effect.**  Subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of the Plan will bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

10.2     **Compliance with Tax Requirements.**   In connection with the Plan, the Debtor, and where applicable, the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.3     **Due Authorization by Creditors.**   Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or

39

implied, that may or can in any way defeat or modify the right released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

10.4    **Amendments.**   The Plan may be altered, amended or modified by the Plan Proponents at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 provided such alteration, amendment or modification is evidenced by a writing signed by both the Debtor and  Senior Mortgagee, and filed with the Bankruptcy Court.

10.5    **Revocation.**  The Plan Proponents may revoke or withdraw the Plan at any time prior to the Confirmation Date pursuant to a writing signed by both the Debtor and Senior Mortgagee and filed with the Bankruptcy Court.  If the Plan is revoked or withdrawn, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

10.6    **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Plan Proponents may request confirmation under section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponents and the Disbursing Agent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor (and not the Disbursing Agent), shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting

requirements; provided, however, that the that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

10.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.11    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein.

<u>If to the Debtor</u>:

Viewstar LLC
c/o Buchwald Capital Advisors LLC
420 Lexington Avenue, Suite 1402
New York, NY 10170-0057
Lbuchwald@buchwaldcapital.com

with a copy to Counsel to the Debtor:

Rubin LLC
Paul Rubin
11 Broadway, Suite 715
New York, NY 10004
prubin@rubinlawllc.com

<u>If to the Senior Mortgagee</u>:

Rialto Capital Advisors, LLC
Attn: Jonathan Horowitz

200 S. Biscayne Blvd., Suite 3550
Miami, Florida 33131

with a copy to Counsel to the Senior Mortgagee:

Holland & Knight LLP
Attn: Bruce Zabarauskas
Keith Brandofino
787 Seventh Avenue
New York, NY 10019
bruce.zabarauskas@hklaw.com
keith.brandofino@hklaw.com

<u>If to any Creditor</u>:

At (i) the addresses set forth on the applicable Proofs of Claim filed by such holder, (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, or (iii) the address reflected in the Schedules if no Proof of Claim is filed and then Disbursing Agent has not received a written notice of a change of address

<u>If to any Entity that has filed a notice of appearance</u>:

At the address set forth on such notice of appearance

10.12   **Governing Law.**   Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principle of conflict of laws thereof.

10.13   **Other Actions.**   Nothing contained herein shall prevent the Senior Mortgagee, the Debtor, the Disbursing Agent or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

10.14   **No Discharge.**  Notwithstanding anything to the contrary contained in the Plan or any exhibit or supplement thereto, pursuant to 11 U.S.C. § 1141(d)(3), the Debtor shall not receive a discharge in connection with this liquidating Plan.

10.15   **Severability.**   In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

10.16   **Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1   **Retention of Jurisdiction.**   Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

a.      Ensure that the Plan is consummated, and to enter an Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

b.      Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

c.      Grant or deny any and all applications for the allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

d.      Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

e.      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

f.      Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

g.      Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

h.      Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

i.      Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, and modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

j.      Cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

k.       Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

l.       Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

m.      Determine any disputed arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

n.       Enter and implement such orders as are necessary or appropriate to implement or consummate the proposed sale of the Property.

o.       Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

p.       Enter an Order or Final Decree concluding the Case.

11.2    **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XII

## CLOSING THE CASE

12.1    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.  The Plan may be altered, amended, modified or withdrawn by the Plan Proponents at any time before substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy

Code and Bankruptcy Rule 3019. 11 U.S.C. § 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if the Plan is modified consistent with the terms hereof, pursuant to section 1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of section 1127(a); however, the proponent of a modification to a plan must comply with section 1125 of the Bankruptcy Code with respect to the plan as modified. If the Plan Proponents revoke or withdraw the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

12.2    **Closing the Case.** Within fourteen (14) days following the full administration of the Debtor's Estate, the Disbursing Agent or the Debtor shall file on notice to the United States Trustee's Office, an application and proposed order seeking a final decree, closing this case pursuant to Bankruptcy Rule 3022.

12.3    **Post-Confirmation Status Reports.** The Debtor shall file quarterly post-confirmation status reports and disbursement reports and schedule post-confirmation status conferences until the closing of the Debtor's case by means of a final decree, dismissal or conversion of this case, whichever is earlier.

Dated: July 3, 2025
      New York, New York

Viewstar LLC

By:   */s/ Lee E. Buchwald*
      Lee E. Buchwald
      Restructuring Officer

RREF IV-D SN Portfolio LLC

By:   */s/ Jonathan Horowitz*
      Jonathan Horowitz
      Managing Director