**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| VIEWSTAR LLC, | : |
| | : Case No.: 24-22716 (SHL) |
| Debtor. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DISCLOSURE STATEMENT FOR JOINT PLAN
## OF REORGANIZATION FOR VIEWSTAR LLC

New York, New York
July 3, 2025

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: (212) 390-8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com
*Counsel for the Debtor*

-and-

HOLLAND & KNIGHT LLP
Bruce J. Zabarauskas
Keith M. Brandofino
787 Seventh Avenue
New York, New York 10019
Tel: (212) 513-3200
bruce.zabarauskas@hklaw.com
*Counsel for RREF IV-D SN Portfolio LLC*

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

## DISCLAIMER

**ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT, INCLUDING THE FOLLOWING SUMMARY, ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, ANY AND ALL SUPPLEMENTS TO THE PLAN AND ANY EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW. THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.**

**CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PERSON OR ENTITY FOR ANY OTHER PURPOSE. THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE DESCRIPTION OF THE DEBTOR, ITS BUSINESS AND EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASE, HAS BEEN OBTAINED FROM VARIOUS DOCUMENTS, AGREEMENTS AND OTHER WRITINGS RELATING TO THE DEBTOR. NEITHER THE PLAN PROPONENTS NOR ANY OTHER PARTY MAKES ANY REPRESENTATION OR WARRANTY REGARDING SUCH INFORMATION.**

**THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING THE DEBTOR, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER.  AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE PLAN PROPONENTS, THE DEBTOR, OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE REORGANIZATION AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, EACH HOLDER IS HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREBY BY THE PLAN PROPONENTS IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY THE PLAN PROPONENTS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS.................................3

III.    OVERVIEW OF CHAPTER 11 .........................................................................................8

IV.     DESCRIPTION OF THE DEBTOR AND EVENTS LEADING TO
        THE CHAPTER 11 CASE ...........................................................................................9

V.      THE CHAPTER 11 CASE .........................................................................................11

VI.     SUMMARY OF THE PLAN OF REORGANIZATION .................................................13

VII.    CONFIRMATION PROCEDURE ...................................................................................26

VIII.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION
        OF THE PLAN .............................................................................................................29

IX.     CERTAIN RISK FACTORS TO BE CONSIDERED ......................................................30

X.      SECURITIES LAWS MATTERS ...................................................................................31

XI.     CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES
        OF THE PLAN .............................................................................................................31

XII.    RECOMMENDATIONS AND CONCLUSION ............................................................33

**EXHIBIT A – PLAN**

**EXHIBIT B – LIQUIDATION ANALYSIS**

# I.
# INTRODUCTION

On August 15, 2024 (the "Petition Date"), Viewstar LLC (the "Debtor") filed a petition for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Contemporaneously herewith, the Debtor and RREF IV-D SN Portfolio, LLC (the "Senior Mortgagee," and together with the Debtor, the "Plan Proponents"), the Debtor's senior mortgagee, filed the *Joint Plan of Reorganization for Viewstar LLC* (as may be further amended, modified or supplemented, the "Plan"), a copy of which is annexed hereto as Exhibit A, which sets forth the manner in which claims against and interests in the Debtor will be treated. This Disclosure Statement (the "Disclosure Statement") describes certain aspects of the Plan (including the treatment of creditor claims under the Plan), the Debtor's business and related matters. Unless otherwise defined, all capitalized terms have the meaning ascribed to them in the Plan.

This Disclosure Statement is submitted to holders of Claims and Interests against the Debtor in connection with (i) the solicitation of acceptances of the Plan and (ii) the hearing to consider confirmation of the Plan (the "Confirmation Hearing") presently scheduled for [ ], 2025, at [ ] (Eastern Standard Time).

Attached as Exhibits to this Disclosure Statement are copies of the following:

• the Plan (Exhibit A); and

• a liquidation analysis (Exhibit B).

In addition, a ballot for the acceptance or rejection of the Plan (a "Ballot") is being transmitted with this Disclosure Statement to the holders of Claims in impaired Classes that are entitled to accept or reject the Plan.

The Plan Proponents have moved the Bankruptcy Court for an order approving this Disclosure Statement as containing "adequate information" to enable a hypothetical, reasonable investor typical of the holders of Claims in Classes eligible to vote on the Plan to make an informed judgment as to whether to accept or reject the Plan.

Detailed voting instructions accompany each Ballot. Each holder of a Claim entitled to vote on the Plan should read this Disclosure Statement, the Plan, the other Exhibits hereto and the instructions accompanying the Ballot(s) in their entirety before voting. These documents contain, among other things, important information concerning the classification of Claims for voting purposes and the tabulation of votes. No solicitation of a vote to accept the Plan may be made without giving the voter a Disclosure Statement approved by the Bankruptcy Court.

## A.    Holders of Claims and Interests Entitled to Vote

Only impaired holders of Allowed Claims or Interests are entitled to vote to accept or reject a proposed chapter 11 plan. Unimpaired Classes are deemed to have accepted the Plan and are not entitled to vote. Classes of Claims or Interests that will not receive any distribution under a reorganization plan are deemed to have rejected such plan and are not entitled to vote.

Under the Plan, Class 4 (Senor Mortgagee's Secured Claim), Class 5 (Junior Mortgagee's Secured Claim), Class 6 (General Unsecured Claims), and Class 7 (Equity Interests) are impaired and entitled to vote on the Plan. Class 1 (Other Priority Claims) and Class 2 (Borough's Secured Claims), and Class 3 (Receivership Claims) are unimpaired and conclusively deemed to have accepted the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that vote for acceptance or rejection of the plan. For a more detailed description of the requirements for confirmation of the Plan, see Section VII, "Confirmation Procedures."

**B.    Voting Procedures**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for that purpose. If you hold a Claim or an Interest in more than one Class and you are entitled to vote in more than one Class, you will receive separate Ballots that must be used for each separate Class.

Please vote and return your Ballot(s) directly to the following address:

> Rubin LLC
> 11 Broadway, Suite 715
> New York, New York 10004
> Attn:  Hanh V. Huynh
> hhuynh@rubinlawllc.com

**DO NOT RETURN ANY OTHER INSTRUMENTS OR AGREEMENTS WITH YOUR BALLOT.  TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN 5:00 P.M., (EASTERN TIME) ON [  ], 2025.**

Each holder of an Allowed Claim in an impaired Class which receives or retains property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other controlling order or orders of the Bankruptcy Court.

If you are a holder of a Claim entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please contact the Debtor's bankruptcy counsel at 212-390-8272 or hhuynh@rubinlawllc.com.

**C.    Confirmation Hearing**

The Confirmation Hearing will be held on [  ], 2025 at [  ] (EST), before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601. The Confirmation Hearing may be conducted via videoconference, and may be adjourned from time to time by the

Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.    The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed so that they are received on or before [  ].    Service of any objection to confirmation must be served upon (i) counsel for the Debtor, Rubin LLC, 11 Broadway, Suite 715, New York, NY 10004 (Attn: Paul Rubin and Hanh Huynh); (ii) counsel for the Senior Mortgagee, Holland & Knight LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Bruce J. Zabarauskas and Keith M. Brandofino); (iii) the Office of the United States Trustee, Alexander Hamilton Custom House One Bowling Green, Room 534, New York, NY 10004 (Attn.: Mark Bruh); and (iv) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules.

THE PLAN PROPONENTS BELIEVE THAT THE PLAN WILL ENABLE CREDITORS TO MAXIMIZE RECOVERIES AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11.   THE PLAN PROPONENTS BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS.    THE PLAN PROPONENTS URGE CREDITORS TO VOTE TO ACCEPT THE PLAN.

## II.
## SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS

The table below briefly summarizes the specific classification and treatment of Claims and Interests under the Plan.  As provided in the Plan, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code:

| Class | Type of Claim or Interest | Treatment | Estimated Claim Amount (By Class) | Estimated Recovery |
|---|---|---|---|---|
| N/A | U.S. Trustee Fees | The Disbursing Agent shall pay all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon until conversion, dismissal or closing of this Case by means of a final decree, whichever happens earlier.  Within ten (10) days after the Effective Date, the Debtor shall file a closing report detailing all disbursements made at the closing of the Property.  All fees and charges assessed against the Debtor under § 1930 of title 28 of the United States Code, and any applicable interest thereon, through dismissal, conversion or entry of a final decree, shall be paid by the Disbursing Agent, in Cash in full as required by statute from proceeds of the Sale Transaction, except that: (i) if the Senior Mortgagee is the Purchaser of the Property pursuant to a credit bid, then the U.S. Trustee Fees shall be paid by the Senior Mortgagee; (ii) if the Junior Mortgagee is the Purchaser of the Property, then the U.S. Trustee Fees shall be paid by the Junior Mortgagee. | $[  ] | 100% |

| N/A | Administrative Claims | Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three Business Days after such Claim becomes an Allowed Administrative Claim or (ii) on such later date and upon such other terms as may be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim. | | $[ ] | 100% |
|---|---|---|---|---|---|
| N/A | Professional Fee Claims | All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications, on or before twenty-eight (28) days after the Confirmation Date, for allowance of compensation for services rendered and reimbursement of expenses incurred. No later than five (5) days prior to the Confirmation Hearing, all entities holding claims for Professional Fee Claims (other than the Broker) shall serve via email upon counsels for the Plan Proponents a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals. Professional Fee Claims, subject to allowance by the Bankruptcy Court shall be paid in full from the proceeds of the Sale Transaction upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Allowed Professional Fee Claim becomes a Final Order; provided, however, that, if the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then the Allowed Professional Fee Claims shall be paid by the Senior Mortgagee. Any compensation to be paid to the Broker shall be paid pursuant to the terms of an order of the Bankruptcy Court. | | $[ ] | 100% |
| N/A | Administrative Tax Claims | Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) on such later date and upon such other terms as may be agreed to, in writing, between the Debtor or Reorganized Debtor, as applicable, and such Governmental Units on or before the Confirmation Date. | | $[ ] | 100% |
| N/A | Priority Tax Claims | Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Priority Tax Claims, and except | | $[ ] | 100% |

|   |   |   |   |   |
|---|---|---|---|---|
|   |   | as may be otherwise mutually agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the applicable Governmental Unit, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in full on the Effective Date. |   |   |
| 1 | Other Priority Claims | Unimpaired.  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 1 Other Priority Claims, the holders of Other Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of an Allowed Claim in Class 1 shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction (i) in Cash, in the full amount of its Allowed Other Priority Claim, or (ii) on such later date and upon such other terms as may otherwise be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim; provided, however, (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that the Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgagee.  Class 1 is unimpaired, and the holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. | $[ ] | 100% |
| 2 | Borough's Secured Claims | Unimpaired.  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 2 Borough's Secured Claims, the holder of such Claims shall receive the following treatment: on the Closing Date, the Disbursing Agent shall pay, in Cash, the full amount of the Allowed Class 2 Claim. Class 2 is unimpaired, and the holder of Allowed Secured Claims in Class 2 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. | $[ ] | 100% |
| 3 | Receivership Claims | Unimpaired.  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 3 Receivership Claims, the Receiver shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, the Receiver shall receive payment from the Disbursing Agent from the proceeds of the Sale | $0 | 100% |

| | | | | |
|---|---|---|---|---|
| | | Transaction (i) in Cash, in the full amount of its Allowed Receivership Claim that has not been paid, or (ii) as may be otherwise agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the Receiver; provided, however: (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that if the Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgagee. Class 3 is unimpaired, and the Receiver is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Receiver is not entitled to vote to accept or reject the Plan. | | |
| 4 | Senior Mortgagee's Secured Claim | Impaired. In full satisfaction of the Class 4 Senior Mortgagee's Secured Claim, the Senior Mortgagee shall receive the following treatment: (i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims, on the Effective Date, or as soon as possible after the Senior Mortgagee's Secured Claim becomes an Allowed Claim, the Senior Mortgagee shall receive from the Disbursing Agent remaining Cash, plus any Deposit forfeited by a bidder pursuant to the Bid Procedures if any, up to the full amount of its Allowed Secured Claim, or (ii) if the Property is sold to the Senior Mortgagee by credit bid, then on the Effective Date, the Senior Mortgagee, or its designee, shall take title to the Property free and clear of all Liens, except permitted encumbrances as determined by the Senior Mortgagee (which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's sole discretion). To the extent that Cash and Sale Proceeds are insufficient to pay the Class 4 Claim in full, the deficiency amount shall be treated as a Class 6 Claim. In the event that the holder of the Class 4 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 4 Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the holder of the Class 4 Claim shall be treated as a Class 6 Claim. The Class 4 Claim shall include post-petition interest in accordance with applicable law to the extent that the value of the Property exceeds the amount of the Class 4 Claim. | $17,413,335.80 (as of Petition Date) | 100% |

| | | | | |
|---|---|---|---|---|
| | | Until the Closing Date, the Senior Mortgagee shall retain its duly perfected and first priority mortgage and security interests and liens in all of the Debtor's assets, including without limitation the Property. Effective as of the Closing Date, the mortgage, security interests and liens of the Class 4 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same extent, validity, and priority without any need for the holder of the Class 4 Allowed Claim to take any act of perfection. | | |
| 5 | Junior Mortgagee's Secured Claim | Impaired. In full satisfaction of the Class 5 Junior Mortgagee's Secured Claim, the Junior Mortgagee shall receive the following treatment: (i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims, on the Effective Date, or as soon as possible after the Junior Mortgagee's Secured Claim becomes an Allowed Claim, the Junior Mortgagee shall receive from the Disbursing Agent remaining Cash, if any, up to the full amount of its Allowed Secured Claim, or (ii) if the Property is sold to the Junior Mortgagee by credit bid, then on the Effective Date, the Junior Mortgagee, or its designee, shall take title to the Property free and clear of all Liens, except permitted encumbrances as determined by the Junior Mortgagee (which may include the existing mortgage lien of the Junior Mortgagee, in the Junior Mortgagee's sole discretion). In the event that the holder of the Class 5 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 5 Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the holder of the Class 5 Claim shall be treated as a Class 6 Claim.

Until the Closing Date, the Junior Mortgagee shall retain its duly perfected and second priority mortgage and security interests and liens in all of the Debtor's assets, including the Property. Effective as of the Closing Date, the mortgage, security interests and liens of the Class 5 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same extent, validity, and priority without any need for the holder of the Allowed Class 5 Claim to take any act of perfection. | $9,204,450.00 | [  ]% |
| 6 | General Unsecured Claims | Impaired. S Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 6 General | $[  ] | [  ]% |

| | | Unsecured Claims, the holders of such Claims shall receive the following treatment: each holder of an Allowed Class 6 General Unsecured Claim shall receive from the Disbursing Agent its Pro Rata payment of the remaining Cash and Sale Proceeds as soon as practicable after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, the Class 3 Claim, Class 4 Claims, and Class 5 Claims; *provided, however,* if the amount of such remaining Cash and Sale Proceeds available to pay Allowed Class 6 Claims is less than $10,000.00, the Disbursing Agent shall pay each holder of a Allowed Class 6 Claim a pro rata share of the GUC Contribution in an amount sufficient to pay all holders of Allowed Class 6 Claims the total amount of $10,000.00, because the Senior Mortgagee and Junior Mortgagee have agreed to waive any distribution from the GUC Contribution. In addition to the foregoing, the proceeds of any Litigation Claims following the payment of the legal fees and expenses associated with such Litigation Claims shall be paid to the holders of Class 6 Allowed Claims on a pro-rata basis. | | |
| 7 | Equity Interests | Impaired. On the Effective Date, all Interest Holders shall retain their Interests and their rights as to any remaining balance of Cash, if any, that may exist after payment in full of all Allowed Claims and Classes of Claims against the Debtor. Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for winding down its own affairs. | N/A | N/A |

## III.
## OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of interested parties, including its creditors and equity interest holders. In addition to permitting rehabilitation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly-situated creditors and equity interest holders with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides, generally, that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." The consummation of a plan of reorganization is the principal objective of a chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor.

After a plan has been filed, the holders of claims against or interests in a debtor are generally permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. The Plan Proponents are submitting this Disclosure Statement to holders of Claims against or Interests in the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

## IV.
## DESCRIPTION OF THE DEBTOR AND
## EVENTS LEADING TO THE CHAPTER 11 CASE

The Debtor is the owner of real property located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property"). The Property does not have any tenants and is currently vacant. The Property is the Debtor's sole significant asset.

### The Mortgage Loans

The Property is encumbered by a senior mortgage lien dated April 1, 2020 (the "Senior Mortgage") securing a loan (the "Senior Mortgage Loan") from Sterling National Bank ("Sterling") to the Debtor in the restated original principal amount of $12,600,000.00. By virtue of certain alonges and assignments executed by Sterling, RREF IV-D SN Portfolio, LLC the Senior Mortgagee is the holder of the Senior Mortgage.

The Property is also encumbered by a junior mortgage lien dated April 1, 2020 (the "Junior Mortgage") securing a loan (the "Junior Mortgage Loan") from 10 Mountainview LLC (the "Junior Mortgagee") to the Debtor in the original principal amount of $4,200,000.00.

### The Operating Agreement and the Springing Member

In connection with the Junior Mortgage Loan, the Junior Mortgagee and Yoel Abraham ("Abraham"), the 100% owner of the Debtor at the time of the origination of the Junior Mortgage Loan, entered into an Operating Agreement for Viewstar LLC dated April 1, 2020 (the "Operating Agreement") pursuant to which Abraham was appointed the Managing Member and the Junior Mortgagee was the "Springing Member."

Article 4.1(j) of the Operating Agreement provides that, "upon and after a Springing Member Event, the Springing Member shall have the right to remove and appoint a new Manager and/or remove and replace [Abraham] as the Managing Member of [the Debtor]." Operating Agreement Art. 4.1(j). Under the Operating Agreement, a "Springing Member Event" includes (i) the default of any mortgage, note, or loan agreement affecting the Property, and (ii) the transfer of membership interests in the Debtor that causes Abraham to no longer remain in control of the Debtor, without the Junior Mortgagee's consent.

### The Foreclosure Action

In July 2022, the Debtor failed to make certain required payments under the Senior Mortgage Loan, and the Senior Mortgagee delivered default notices to the Debtor in connection

with the Debtor's default.  Thereafter, Abraham, without the Junior Mortgagee's consent, executed an Assignment and Agreement dated August 2, 2022, purporting to assign Abraham's membership interests in the Debtor to 10 Mountainview Holdings, LLC, an entity owned by Hershel Blumenberg and which is not affiliated with the Junior Mortgagee.

On September 12, 2022, the Junior Mortgagee sent the Debtor a "Notice of Springing Event/Notice of Default," notifying the Debtor that a Springing Member Event had occurred and the Junior Mortgagee must therefore be admitted a managing member and manager of the Debtor.

As a result of the Debtor's defaults, on September 28, 2022, the Senior Mortgagee commenced a foreclosure action (the "Foreclosure Action") in the Superior Court of New Jersey, Bergen County (the "State Court") to foreclose on the Senior Mortgage.  In the Foreclosure Action, the State Court appointed a receiver (the "Receiver") for the Property.  On March 7, 2024, the State Court awarded the Senior Mortgagee a Final Judgment in Foreclosure and Sale (the "Foreclosure Judgment").

On or about June 19, 2024, the Sherriff of Bergen County noticed a foreclosure sale of the Property scheduled for July 26, 2024 at 12:00 p.m.

### The Springing Member Action

On January 27, 2023, the Junior Mortgagee commenced its own action (the "Springing Member Action") against the Debtor, Abraham, 10 Mountainview Holdings, LLC and Blumenberg to, among other things, enforce the Junior Mortgagee's right under the Operating Agreement to exercise the Springing Member provision to replace Abraham as the Managing Member and remove Abraham as Manager.

By decision and order entered in the Springing Member Action on November 29, 2023, the State Court granted in part the Junior Mortgagee's motion for summary judgment to the extent that the Junior Mortgagee was entitled to become the Springing Member of the Debtor.  By Written Consent in Lieu of a Meeting of the Managing Member of Viewstar LLC dated November 29, 2023 (the "Written Consent"): (i) the Junior Mortgagee replaced Abraham as the Managing Member, and (ii) Abraham was removed as the Manager.

### The Involuntary Chapter 7 Case

On the morning of July 26, 2024, just hours before the scheduled foreclosure sale of the Property, an individual named Deahn Meir (the "Petitioning Creditor"), purporting to be a creditor of the Debtor with a claim in the amount of $100,000.00 based on an alleged loan, filed an involuntary petition (the "Involuntary Petition") under chapter 7 of the Bankruptcy Code against the Debtor in the NJ Bankruptcy Court, commencing the Debtor's involuntary chapter 7 case, which was assigned case number 24-17410 (RG) (Gambardella, J.) (the "Involuntary Chapter 7 Case").

Following the filing of the Debtor's Involuntary Chapter 7 Case, the Debtor retained bankruptcy counsel to address the involuntary filing.  The Debtor determined, in consultation with its professionals, that the voluntary filing of a chapter 11 case in order to conduct an orderly marketing and sale process for the Property would maximize value and prevent potential future

involuntary cases filed against the Debtor, even if the Debtor were successful in dismissing the Involuntary Chapter 7 Case.  On August 12, 2024, the Debtor retained Lee E. Buchwald as Restructuring Officer for the Debtor.  Before filing its own voluntary chapter 11 case, the Debtor conferred with counsel for the Senior Mortgagee and the Junior Mortgagee, both of whom expressed support for a chapter 11 case with venue in this Court, rather than through the Involuntary Chapter 7 Case in the NJ Bankruptcy Court.

## V.
## THE CHAPTER 11 CASE

On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, commencing the above-captioned chapter 11 case (this "Chapter 11 Case").

On August 15, 2024, shortly after filing the Chapter 11 Case, the Debtor filed in the Involuntary Chapter 7 Case a motion (the "Rule 1014(b) Motion"), pursuant to Bankruptcy Rule 1014(b), for entry of an order (i) determining that the Chapter 11 Case should proceed in the Bankruptcy Court, and (ii) dismissing the Involuntary Chapter 7 Case filed in the NJ Bankruptcy Court.

On September 10, 2024, the NJ Bankruptcy Court held a hearing to consider the Rule 1014(b) Motion.  Following the hearing, the NJ Bankruptcy Court entered an order granting the relief requested in the motion (the "Rule 1014(b) Order") and ordered that "[t]he voluntary chapter 11 case filed by Viewstar in the United States Bankruptcy Court for the Southern District of New York, pending under case number 24-22716 shall proceed."  The Involuntary Chapter 7 Case was dismissed and the case was closed on September 11, 2024.

Consistent with the Rule 1014(b) Order, the Debtor proceeded to diligently prosecute its Chapter 11 Case in the Bankruptcy Court.  On September 17, 2024, the Debtor filed its schedules of assets and liabilities and statement of financial affairs [ECF No. 18].  On September 23, 2024, the Debtor attended the section 341 meeting of creditors conducted by the UST.  The Debtor filed an application for authorization to retain Rubin LLC as its bankruptcy counsel [ECF No. 19], which application was approved by the Bankruptcy Court on November 7, 2024[ECF No. 41].  The Debtor filed an application for authorization to retain Northgate Real Estate Group as its real estate advisor with respect to the sale of the Property [ECF No. 59], which application was approved by the Bankruptcy Court on February 5, 2025 [ECF No. 79].

On December 5, 2024, the Bankruptcy Court entered an order [ECF No. 58] establishing bar date of January 20, 2025 for creditors (other than governmental units) to file proofs of claim against the Debtor, and February 11, 2025 for government units to file proofs of claim against the Debtor.  On January 15, 2025, the Senior Mortgagee filed its proof of claim, designated as claim no. 4 on the Debtor's claims register, and thereafter amended to assert a secured claim in the total amount of $17,413,335.80 as of the Petition Date.  On January 19, 2025, the Junior Mortgagee filed its proof of claim, designated as claim no. 5 on the Debtor's claims register, asserting a secured claim in the total amount of $9,204,450.00 as of the Petition Date.

The Debtor also successfully opposed the UST's motion [ECF No. 25] to (i) transfer the Debtor's Chapter 11 Case to the NJ Bankruptcy Court, or (ii) convert the Debtor's Chapter 11 Case to a case under chapter 7 or dismiss the case pursuant to section 1112(b) of the Bankruptcy Code, or in the alternative, (iii) direct the UST to appoint a chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code.

On December 12, 2024, the Debtor filed the *Application to Employ Northgate Real Estate Group as the Debtor's Real Estate Advisor* [ECF No. 59], seeking authorization to employ Northgate Real Estate Group (the "Broker") as the Debtor's real estate advisor in connection the marketing and auction sale of the Property.  On February 5, 2025, the Court entered an order [ECF No. 79] authorizing the Debtor to retain the Broker.

On December 27, 2024, the Court so-ordered the *Stipulation and Order Excusing Receiver's Compliance with the Requirements of Bankruptcy Code § 543(a) and (b)* [ECF No. 64], authorizing the Receiver to continue to manage and operate the Property.

On January 29, 2025, the Debtor filed the *Debtor's Motion to Approve Debtor-in-Possession Financing* [ECF No. 77], seeking authorization for the Debtor to obtain post-petition debtor-in-possession financing in the amount of up to $125,000 (the "DIP Loan") from the Junior Mortgagee, as DIP lender.  On March 20, 2025, the Court entered an order [ECF No. 85] approving the DIP Loan.

On March 14, 2025, the Debtor filed the *Debtor's Motion for: (I) an Order (A) Approving Bid Procedures for the Sale of Real Property Located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458 Subject to Higher or Better Offers, and (B) Scheduling a Sale Hearing Date; and (II) an Order Approving the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (III) Related Relief* (the "Sale Motion") [ECF No. 82].  In furtherance of the Sale Motion, on March 21, 2025, the Debtor filed a motion [ECF No. 86] to retain E Glanz Associates as the Debtor's special real estate counsel.  On April 30, 2025, the Court entered an order [ECF no. 94] authorizing the Debtor to retain E Glanz Associates, and an order [ECF No. 95] approving certain bidding procedures (the "Bid Procedures") to govern the auction sale of the Property.

On June 27, 2025, in accordance with Paragraph D of the Bid Procedures, the Debtor filed a *Notice of Stalking Horse Bidder* [ECF No. ], to provide notice to all interested parties that the Debtor selected K&K Developers, Inc. (the "Stalking Horse Bidder") to act as the stalking horse bidder for the auction sale of the Property pursuant to the terms of Stalking Horse Real Estate Purchase Agreement between the Debtor and the Stalking Horse Bidder (the "Stalking Horse PSA").  The Stalking Horse PSA provides for the sale of the Property at a purchase price of $21.5 million, and allows the Stalking Horse Bidder a 1% break-up fee, subject to Bankruptcy Court approval.

On July 3, 2025, the Plan Proponents filed this Disclosure Statement and Plan and moved the Bankruptcy Court for an order conditionally approving this Disclosure Statement as containing "adequate information" to enable a hypothetical, reasonable investor typical of the Holders of Claims in classes eligible to vote on the Plan to make an informed judgment as to whether to accept

or reject the Plan, and scheduling a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan.

## VI.
## SUMMARY OF THE PLAN OF REORGANIZATION

### A.    Introduction

The Plan Proponents believe that confirmation of the Plan provides the best opportunity for maximizing recoveries for the Debtor's creditors.  The Plan provides that creditors will be paid from Cash turned over by the Debtor to the Disbursing Agent and Sale Proceeds, and, if necessary, the GUC Contribution (which will guaranty that general unsecured creditors will receive a distribution under the Plan), and other Cash contributed either by the Senior Mortgagee or the Junior Mortgagee, as described in the Plan, to the extent necessary to fund the payments and distributions called for under the Plan, in the priority established under the Bankruptcy Code. Under the Plan, Lee E. Buchwald, as disbursing agent (the "Disbursing Agent"), will make distributions to creditors.

The Plan Proponents believe they will demonstrate to the Bankruptcy Court that the Debtor's creditors will receive less in a hypothetical liquidation under chapter 7 of the Bankruptcy Code than they would under the Plan.  The following is a summary of the Plan.  The Plan is attached as Exhibit A to this Disclosure Statement.  The terms of the Plan govern in the event of any discrepancies with the following discussion.

### B.    Classification and Treatment of Administrative Claims,
### Claims and Interests Under the Plan

Only administrative expenses, claims and equity interests that are "allowed" may receive distributions under a chapter 11 plan.  Generally speaking, an "allowed" administrative expense, claim or equity interest means that a debtor agrees, or in the event of a dispute, that the court determines, that the administrative expense, claim or equity interest, including the amount, is in fact a valid obligation of, or interest in, a debtor.  Section 502(a) of the Bankruptcy Code provides that a timely-filed administrative expense, claim or equity interest is automatically "allowed" unless a debtor or another party in interest objects.

The Bankruptcy Code also requires that, for purposes of treatment and voting, a chapter 11 plan divides the different claims against, and equity interests in a debtor, into separate classes based upon the legal rights and obligations attached to the claim or interest.  Substantially similar claims are usually but not necessarily, classified together, as are equity interests of a substantially similar legal nature.  Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the holders of such claims and/or equity interests may find themselves members of multiple classes of claims and/or equity interests.  As a result, under the Plan, for example, if a creditor were to hold a Claim based on an unsecured Claim as well as equity in the Debtor, it would have its Claim classified in Class 6 and its Interest classified in Class 7.  To the extent of this holder's Claim, the holder would be entitled to the voting and treatment rights that the Plan provides with respect to Class 6 and, to the extent of the holder's Interest, the voting and treatment rights that the Plan provides with respect to Class 7.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (altered by the plan in any way) or "unimpaired" (unaltered by the plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan (unless the plan provides for no distribution to the holder, in which case, the holder is deemed to reject the plan), and the right to receive an amount under the chapter 11 plan that is not less than the value that the holder would receive if the debtor were liquidated under chapter 7.

Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless, with respect to each claim or interest of such class, the plan (i) does not alter the legal, equitable and contractual rights of the holders of such claims or interests or; (ii) irrespective of the holder's right to receive accelerated payment of such claims or interests after the occurrence of a default, cures all defaults (other than those arising from, among other things, the debtor's insolvency or the commencement of a bankruptcy case), reinstates the maturity of the claims or interests in the class, compensates the holders of such claims or interests for any damages incurred as a result of their reasonable reliance upon any acceleration rights and does not otherwise alter their legal, equitable or contractual rights. Typically, this means that the holder of an unimpaired claim will receive on the later of the effective date of the plan of reorganization or the date on which amounts owing are due and payable, payment in full, in cash, with post-petition interest to the extent permitted and provided under the governing agreement between the parties (or, if there is no agreement, under applicable non-bankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms. Thus, other than its right to accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the position it would have been in had the debtor's case not been commenced.

Consistent with these requirements, the Plan divides the Claims against, and Interests in, the Debtor into the following Classes:

| Unclassified | U.S. Trustee Fees | Unimpaired |
|---|---|---|
| Unclassified | Administrative Claims | Unimpaired |
| Unclassified | Professional Fee Claims | Unimpaired |
| Unclassified | Administrative Tax Claims | Unimpaired |
| Unclassified | Priority Tax Claims | Unimpaired |
| Class 1 | Other Priority Claims | Unimpaired |
| Class 2 | Borough's Secured Claims | Unimpaired |
| Class 3 | Receivership Claims | Unimpaired |
| Class 4 | Senior Mortgagee's Secured Claim | Impaired |

| Class 5 | Junior Mortgagee's Secured Claim | Impaired |
| Class 6 | General Unsecured Claims | Impaired |
| Class 7 | Equity Interests | Impaired |

For purposes of computing Distributions under the Plan, Allowed Claims do not include post-petition interest unless otherwise specified in the Plan.

### 1.    Unclassified—U.S. Trustee Fees

Statutory Fees are all fees and charges assessed against the Debtor or its estate under 28 U.S.C. § 1930 and any interest thereon pursuant to 31 U.S.C. § 3717.  The Disbursing Agent shall pay all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon until conversion, dismissal or closing of this Case by means of a final decree, whichever happens earlier.  Within ten (10) days after the Effective Date, the Debtor shall file a closing report detailing all disbursements made at the closing of the Property.  All fees and charges assessed against the Debtor under § 1930 of title 28 of the United States Code, and any applicable interest thereon, through dismissal, conversion or entry of a final decree, shall be paid by the Disbursing Agent, in Cash in full as required by statute from proceeds of the Sale Transaction, except that: (i) if the Senior Mortgagee is the Purchaser of the Property pursuant to a credit bid, then the U.S. Trustee Fees shall be paid by the Senior Mortgagee; (ii) if the Junior Mortgagee is the Purchaser of the Property, then the U.S. Trustee Fees shall be paid by the Junior Mortgagee.

### 2.    Unclassified—Administrative Claims

Administrative Claims are Claims constituting costs or expenses of administration of the Chapter 11 Case.  Such Claims include any actual and necessary costs and expenses of preserving the Debtor's estate, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business.  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three Business Days after such Claim becomes an Allowed Administrative Claim or (ii) on such later date and upon such other terms as may be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim.

### 3.    Unclassified—Professional Fee Claims

Professionals are persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code or otherwise and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503 or 1103 of the Bankruptcy Code.  All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications, on or before twenty-eight (28) days after the Confirmation Date, for allowance of compensation for services rendered and reimbursement of expenses incurred.  No later than five (5) days prior to the

Confirmation Hearing, all entities holding claims for Professional Fee Claims (other than any brokers retained by the Debtor) shall serve via email upon counsels for the Plan Proponents a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals. Professional Fee Claims, subject to allowance by the Bankruptcy Court shall be paid in full from the proceeds of the Sale Transaction upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Allowed Professional Fee Claim becomes a Final Order; provided, however that, if the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then the Allowed Professional Fee Claims shall be paid by the Senior Mortgagee. Any compensation to be paid to a broker retained by the Debtor by order of the Bankruptcy Court shall be paid pursuant to the terms of an order of the Bankruptcy Court.

### 4.     Unclassified—Administrative Tax Claims

Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) on such later date and upon such other terms as may be agreed to, in writing, between the Debtor or Reorganized Debtor, as applicable, and such Governmental Units on or before the Confirmation Date.

### 5.     Unclassified—Priority Tax Claims

Priority Tax Claims are Claims for taxes against the Debtor entitled to priority in payment pursuant to sections 502(i) or 507(a)(8) of the Bankruptcy Code. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the applicable Governmental Unit, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in full on the Effective Date.

### 6.     Class 1—Other Priority Claims

Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 1 Other Priority Claims, the holders of Other Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of an Allowed Claim in Class 1 shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction (i) in Cash, in the full amount of its Allowed Other Priority Claim, or (ii) on such later date and upon such other terms as may otherwise be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim; provided, however, (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that the Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgagee. Class 1 is unimpaired, and the holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 7.    Class 2—Borough's Secured Claims

Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 2 Borough's Secured Claims, the holder of such Claims shall receive the following treatment:  on the Closing Date, the Disbursing Agent shall pay, in Cash, the full amount of the Allowed Class 2 Claim.

### 8.    Class 3—Receivership Claims

Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 3 Receivership Claims, the Receiver shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, the Receiver shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction (i) in Cash, in the full amount of its Allowed Receivership Claim that has not been paid, or (ii) as may be otherwise agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the Receiver; provided, however: (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that if Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgage.  Class 3 is unimpaired, and the Receiver is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Receiver is not entitled to vote to accept or reject the Plan.

### 9.    Class 4—Senior Mortgagee's Secured Claim

In full satisfaction of the Class 4 Senior Mortgagee's Secured Claim, the Senior Mortgagee shall receive the following treatment:  (i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims, on the Effective Date, or as soon as possible after the Senior Mortgagee's Secured Claim becomes an Allowed Claim, the Senior Mortgagee shall receive from the Disbursing Agent remaining Cash, if any, up to the full amount of its Allowed Secured Claim, or (ii) if the Property is sold to the Senior Mortgagee by credit bid, then on the Effective Date, the Senior Mortgagee, or its designee, shall take title to the Property free and clear of all Liens, except permitted encumbrances as determined by the Senior Mortgagee (which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's sole discretion).  To the extent that Cash and Sale Proceeds are insufficient to pay the Class 4 Claim in full, the deficiency amount shall be treated as a Class 6 Claim.  In the event that the holder of the Class 4 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 4 Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the holder of the Class 4 Claim shall be treated as a Class 6 Claim.  The Class 4 Claim shall include post-petition interest in accordance with applicable law to the extent that the value of the Property exceeds the amount of the Class 4 Claim.

Until the Closing Date, the Senior Mortgagee shall retain its duly perfected and first priority mortgage and security interests and liens in all of the Debtor's assets, including without limitation the Property.  Effective as of the Closing Date, the mortgage, security interests and liens of the Class 4 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same

extent, validity, and priority without any need for the holder of the Class 4 Allowed Claim to take any act of perfection.

### 10.    Class 5— Junior Mortgagee's Secured Claim

In full satisfaction of the Class 5 Junior Mortgagee's Secured Claim, the Junior Mortgagee shall receive the following treatment:  (i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims, on the Effective Date, or as soon as possible after the Junior Mortgagee's Secured Claim becomes an Allowed Claim, the Junior Mortgagee shall receive from the Disbursing Agent remaining Cash, if any, up to the full amount of its Allowed Secured Claim, or (ii) if the Property is sold to the Junior Mortgagee by credit bid, then on the Effective Date, the Junior Mortgagee, or its designee, shall take title to the Property free and clear of all Liens, except permitted encumbrances as determined by the Junior Mortgagee (which may include the existing mortgage lien of the Junior Mortgagee, in the Junior Mortgagee's sole discretion).  In the event that the holder of the Class 4 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 4 Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the holder of the Class 4 Claim shall be treated as a Class 6 Claim.

Until the Closing Date, the Junior Mortgagee shall retain its duly perfected and second priority mortgage and security interests and liens in all of the Debtor's assets, including the Property.  Effective as of the Closing Date, the mortgage, security interests and liens of the Class 5 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same extent, validity, and priority without any need for the holder of the Allowed Class 5 Claim to take any act of perfection.

### 11.    Class 6—General Unsecured Claims

Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 6 General Unsecured Claims, the holders of such Claims shall receive the following treatment:  each holder of an Allowed Class 6 General Unsecured Claim shall receive from the Disbursing Agent its Pro Rata payment of the remaining Cash and Sale Proceeds as soon as practicable after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, the Class 3 Claim, Class 4 Claims, and Class 5 Claims; *provided, however,* if the amount of such remaining Cash and Sale Proceeds available to pay Allowed Class 6 Claims is less than $10,000, the Disbursing Agent shall pay each holder of a Allowed Class 6 Claim a pro rata share of the GUC Contribution, because the Senior Mortgage and Junior Mortgagee have agreed to waive any distribution from the GUC Contribution. In addition to the foregoing, the proceeds of any Litigation Claims following the payment of the legal fees and expenses associated with such Litigation Claims shall be paid to the holders of Class 6 Allowed Claims on a pro-rata basis.

### 12.    Class 6—Equity Interests

On the Effective Date, all Interest Holders shall retain their Interests and their rights as to any remaining balance of Cash, if any, that may exist after payment in full of all Allowed Claims

and Classes of Claims against the Debtor.  Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for winding down its own affairs.

### C.       Treatment of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and unexpired leases to which the Debtor is a party shall be deemed rejected unless assumed by order of the Bankruptcy Court.

Allowed Claims arising from the rejection of Executory Contracts and unexpired leases of the Debtor pursuant to Section 5.1 of the Plan shall be treated as General Unsecured Claims.

A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Plan Proponents within thirty (30) days after the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in a manner provided in such Final Order).  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or their successors or their respective Property.

### D.       Provisions for Implementation of the Plan

### 1.       The Sale Transaction and Plan Funding

Payments under the Plan will be paid from either the Sale Proceeds, Cash held by or on behalf of the Debtor as of the Effective Date, and/or any Cash to be contributed by the Senior Mortgagee or Junior Mortgagee under the Plan.  The Sale Transaction will be implemented pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code and the Bid Procedures.  Prior to or on the Effective Date, the Property shall be sold to the Purchaser, pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code free and clear of all Liens (except permitted encumbrances as determined by the Purchaser), with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan.  Except as set forth elsewhere in the Plan, all distributions to be made on the Effective Date shall be transferred to the escrow account of the Disbursing Agent promptly following the closing of the Sale Transaction.  Only in the event that the Senior Mortgagee or its assignee or designee is the Purchaser of the Property by credit bid or if the Property is sold to a third party and the Cash and Sale Proceeds are insufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims in accordance with the terms of the Plan, then the Senior Mortgagee shall deliver to the Disbursing Agent no later than the Closing Date for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims in accordance with the terms of the Plan, and (ii) Cash in the amount of $10,000 to facilitate a Pro Rata distribution therefrom to holders of Allowed Class 6 General Unsecured Claims (the "GUC Contribution").  Only in the event that the Junior Mortgagee or its assignee or designee is the Purchaser of the Property by credit bid, then the Junior Mortgagee shall deliver to the Disbursing Agent no later than the Closing

19

Date for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 4 Claims in accordance with the terms of the Plan, and (ii) the GUC Contribution.  Within two (2) Business Days after entry of the Confirmation Order, the Debtor will deliver to the Disbursing Agent all Cash of the Debtor wherever located which amounts may be utilized by the Plan Proponents to pay any and all Allowed Claim(s) in their sole discretion.

The Property will be sold free and clear of all Liens (except permitted encumbrances as determined by the Purchaser (which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's sole discretion) and the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan).  The Property will be sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.  The Purchaser will be required to pay at closing, in cash, all pre-petition and post-petition claims secured by a lien that is senior in priority to the Senior Mortgagee's lien.

## 2. Sale Approval

As a part of the Sale Transaction under the Plan, and in order to ensure consummation of the Plan, the order approving the Sale Transaction to be entered after the auction shall, subject to Bankruptcy Court approval, contain the following findings of fact and conclusions of law: (i) that the terms and conditions of the Sale Transaction and the purchase agreement are fair and reasonable, (ii) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, without any fraud, (iii) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) that the Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code, with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan; except that in the event that the Senior Mortgagee is the Purchaser, then the Property may be sold subject to its mortgage lien in the sole discretion of the Senior Mortgagee, (vi) that the Sale Transaction was not controlled by an agreement among potential purchasers for purposes of section 363(n) of the Bankruptcy Code, and (vii) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser.  All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

### 3. General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies against the Debtor resolved pursuant to the Plan, including the Rockland County Judgment Settlement. Pursuant to the Rockland County Judgment Settlement, on the Effective Date, 10 Mountainview LLC and/or Moshe Gold, as judgment debtors under the Rockland County Judgment, will be responsible to the Debtor, in full and final satisfaction, settlement and discharge of the Debtor's 50% interest in the Rockland County Judgment, the sum of $83,812.98 ("Rockland County Judgment Settlement Payment"), which amount constitutes the Debtor's 50% interest in the Rockland County Judgment. The Rockland County Judgment Settlement Payment will be offset against the total amount that the Junior Mortgagee will be entitled to receive under the Plan. Except for claims under and pursuant to the Rockland County Judgment, nothing herein shall release any claim against a non-debtor person or entity.

### 4. The Disbursing Agent

The Disbursing Agent shall be appointed on the Confirmation Date on behalf of the Debtor and its estate in order to take such actions as may be necessary or appropriate to implement the Plan, including the Sale Transaction, the claims administration process, and distributions to creditors. The Disbursing Agent is authorized to employ and compensate professionals to represent it with respect to its responsibilities under the Plan. Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan. The Disbursing Agent shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, authorizing and directing the Debtor and any other necessary party to execute or deliver, or to join in the execution or delivery, on the Effective Date, of any instrument required to effect a transfer of property required by the Plan, in form and substance satisfactory to Purchaser, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. Each of the Plan Proponents is designated a party in fact to execute all documents in the name of the Debtor as may be required to consummate the Sale Transaction, including, without limitation, execute any and all documents necessary to effectuate the transfer of title of the Property to the Purchaser at the closing of the Sale Transaction, including without limitation a deed, a bill of sale and all required transfer tax returns and any other documents in the name of the Debtor as may be required to consummate the Sale Transaction. Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, should the Property be sold to the Senior Mortgagee, or its designee, free and clear of any and all Liens, the Senior Mortgagee shall have the option, in its sole and absolute discretion, to take title to the Property subject to its existing mortgage lien of record, or to extend that option to any third party purchaser. The Confirmation Order will also authorize the Disbursing Agent to hold all Sale Proceeds from the closing of the Sale Transaction until the Disbursing Agent makes distributions or disbursements under the Plan. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.

### 5.       Vesting of Assets

Except as otherwise provided in the Plan, upon the closing of the sale of the Property, the Property shall vest in the Purchaser, free and clear of all Liens.  From and after the Effective Date, the Purchaser may operate the Property and use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as otherwise provided herein.  After the Plan has been fully administered, including payment of all Allowed Claims, fees and expenses, any remaining property of the Estate that the Debtor was not required to turnover to the Disbursing Agent under the Plan shall vest in the Reorganized Debtor free and clear of all Liens, unless otherwise provided pursuant to the Plan and the Confirmation Order.

### 6.       Exemption from Certain Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### E.       Provisions for Distributions Under the Plan

### 1.       The Disbursing Agent

The Disbursing Agent has posted a bond in the amount of $2,500,000.00 as security for the performance of its duties.  The Disbursing Agent shall have no obligation to file tax returns or similar reports with the appropriate taxing authorities.  The Disbursing Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of gross negligence, willful misconduct, criminal conduct, or for any liability pursuant to 28 U.S.C. § 959 solely in connection with carrying out of its duties under the Plan, which liability shall be expressly limited to the period commencing from the Effective Date of the Plan and ending on the date that all disbursements in accordance with the Plan have been distributed.

### 2.       Timing of Distributions Under the Plan

Subject to Section 7.4 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim shall be deemed to be timely made if made on or within five (5) Business Days following the later of (i) the Effective Date, or (ii) the

expiration of any applicable objection deadline with respect to such Claim, or (iii) such other times provided in the Plan. Notwithstanding anything to the contrary contained in the Plan, distributions on account of Class 6 General Unsecured Claims will not be made until after the total amount of Allowed Claims in such Class has been determined, and distributions have been made to holders of Allowed Claims in Classes 1 through 5.

### 3.    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any disputed portion of a Disputed Claim.

### 4.    Escrow of Cash Distributions

Unless otherwise agreed to in writing by the Disbursing Agent and the holder of any Claim to which Section 7.5(a) of the Plan applies, on the Effective Date the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property (whether received from the Debtor, the Senior Mortgagee, or the Purchaser) equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) such Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Claims of Governmental Units for any tax, (iii) any disputed cure amount and (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code. Notwithstanding the foregoing, the undisputed portion of any Disputed Claim will be distributed in accordance with the Plan.

In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be deposited.

### 5.    Distribution After Allowance

Within ten (10) days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the funds placed in escrow in accordance with Section 7.5 of the Plan all Cash or other property to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

### F.    <u>Injunctions and Release</u>

### 1.    Injunction

**Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order**

shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date:    (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.    Except as otherwise provided in the Confirmation Order, entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from the Senior Mortgagee, from the Junior Mortgagee, from the Disbursing Agent, or from the Property, any claim, obligation or debt against the Debtor that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.    Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor herein shall not receive a discharge in connection with this liquidating Plan.

2.    Limitation of Liability

Neither the Debtor, the Senior Mortgagee, the Junior Mortgagee, the Disbursing Agent nor any of their respective officers, attorneys, directors, or employees (acting in such capacity) nor any professional person employed by any of them (collectively, the "Released Entities"), shall have or incur any liability between the Petition Date and the Effective Date to any holder of a Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any action taken or omitted to be taken in connection with, related to, or arising out of, the Chapter 11 Case, or the formulation, preparation, dissemination, Confirmation or consummation of the Plan, in each case other than claims or causes of action for fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.    Nothing in the Plan shall exculpate or release any Released Entities from any obligations under the Plan or a prior order of the Court.    Nothing in the Plan shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.    Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Senior Mortgagee, the Disbursing Agent or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Entities

**referred to herein.  Nothing in the Plan shall limit the liability of any professionals involved herein for malpractice.**

### 3. Plan and Confirmation Order as Release

Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to Article 8 of the Plan.

### 4. Injunction Against Interference with Plan

**Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, will be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided,* that nothing herein or in the Confirmation Order shall preclude, limit, restrict or prohibit any party in interest from seeking to enforce the terms of the Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.**

### 5. No Effect On Guarantees

Nothing in this Plan shall have the effect of  releasing or modifying any guaranty executed by any Person concerning any indebtedness of the Debtor.  Nothing in this Plan shall enjoin or stay any creditor or party in interest from pursuing its rights against any Person who guaranteed any indebtedness of the Debtor.

### G. Confirmation and Consummation of the Plan

### 1. Condition to Confirmation

The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee.

### 2. Conditions to Effective Date

Unless waived in a writing signed by both the Debtor and the Senior Mortgagee, the Plan will not become effective and the Effective Date will not occur, and the Senior Mortgagee will not be required to fund any obligations under the Plan, unless and until the Debtor and the Senior Mortgagee are reasonably satisfied that:

(a)    The Confirmation Order has been entered and is not stayed;

(b)    The Bankruptcy Court shall have entered the order approving the Sale Transaction in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee;

> (c) All Documents and agreements necessary to effectuate the Sale Transaction have been executed and delivered in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee, and the Sale Transaction shall have closed; and
>
> (d) Only in the case in which the Senior Mortgagee is the purchaser of the Property pursuant to credit bid, Allowed Administrative Claims, Professional Claims (not including the fees of the Broker) and Allowed Priority Claims do not exceed $400,000.00.

## H.    Revocation

The Plan Proponents may revoke or withdraw the Plan at any time prior to the Confirmation Date pursuant to a writing signed by both the Debtor and Senior Mortgagee and filed with the Bankruptcy Court.  If the Plan is revoked or withdrawn, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

**VII.**
**CONFIRMATION PROCEDURE**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

## A.    Solicitation of Votes

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims or Interests in Classes 4, 5, 6 and 7 of the Plan are impaired and are entitled to vote to accept or reject the Plan. Claims in Classes 1, 2 and 3 are unimpaired.  The holders of Allowed Claims in such Class are conclusively presumed to have accepted the Plan and the solicitation of acceptances with respect to such Class therefore is not required under section 1126(f) of the Bankruptcy Code.  Chapter 11 of the Bankruptcy Code provides that, in order for the Bankruptcy Court to confirm the Plan as a consensual plan, the holders of Impaired Claims against, and Impaired Interests in, the Debtor that are entitled to vote must accept the Plan.

An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any creditor in an impaired Class (i) whose Claim has been listed by the Debtor in the Debtor's Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated) or (ii) who filed a proof of Claim on or before

26

the Bar Date (or, if not filed by such date, any proof of Claim filed within any other applicable period of limitations or with leave of the Bankruptcy Court), which Claim is not the subject of an objection or request for estimation, is entitled to vote.

### B.    The Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing.  The Confirmation Hearing in respect of the Plan has been scheduled for [ ], 2025, at [ ] (Eastern Time) before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.  The Confirmation Hearing may be conducted via videoconference, and may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to Confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim.  Any such objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court and the following parties on or before [  ] 2025:

Rubin LLC
11 Broadway, Suite 715
New York, NY 10004
Attn.:  Paul A. Rubin
        Hanh V. Huynh

-and-

Holland & Knight LLP
787 Seventh Avenue
New York, New York 10019
Attn.:  Bruce J. Zabarauskas
        Keith M. Brandofino

-and-

Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
Attn:   Mark Bruh

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014 and orders of the Bankruptcy Court.

### C.    Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of the Plan are that the Plan is (i) accepted by all impaired Classes of Claims and

Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (ii) feasible and (iii) in the "best interests" of creditors and stockholders that are impaired under the Plan.

### 1.    Acceptance

Classes 4, 5, 6 and 7 are impaired under the Plan.  Classes 1, 2 and 3 are unimpaired and, therefore, are conclusively presumed to have voted to accept the Plan.

### 2.    Feasibility

The Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization.  Here, the Plan contemplates the liquidation of the Debtor.  In order to accomplish such liquidation, the Plan requires the Disbursing Agent to make distributions from the Sale Proceeds, Cash turned over by the Debtor to the Disbursing Agent pursuant to Section [6.1] of the Plan, and/or Cash to be contributed by the Senior Mortgagee or Junior Mortgagee, to the extent applicable, pursuant to the terms of the Plan.

### 3.    Best Interests Test

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of an Allowed Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  To determine what holders of Claims and Interests of each impaired Class would receive if the Debtor were liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  The cash amount that would be available for satisfaction of Claims and Interests would consist of the proceeds resulting from the disposition of the assets and properties of the Debtor, augmented by the cash held by the Debtor at the time of the commencement of the liquidation case.  Such cash amount would be reduced by the amount of allowed claims secured by such assets, the costs and expenses of the liquidation and by such additional administrative expense and priority claims that might result from the termination of the Debtor's business and the use of chapter 7 for the purposes of liquidation.

The Debtor's costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that such a trustee might engage.  The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition unsecured Claims.

To determine if the Plan is in the best interests of each impaired Class, the present value of the distributions from the proceeds of a chapter 7 liquidation of the Debtor's assets and properties

are compared with the value of the property offered to such Classes of Claims and Interests under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Case, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the absence of any assets other than the Property that require liquidation, and (iii) the absence of the GUC Contribution, the Plan Proponents have determined that confirmation of the Plan will provide each holder of an Allowed Claim or Interest with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtor under chapter 7.  The Plan Proponents also believe that the value of any distributions to each Class of Allowed Claims would be greater under the Plan because any distributions in a chapter 7 case would not occur for a substantial period of time.

A Liquidation Analysis of the Debtor, prepared by the Plan Proponents and their advisors, is attached hereto as <u>Exhibit B</u>.  The information set forth in Exhibit B provides a summary of the liquidation values of the Debtor's assets, assuming a chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtor's estates.

Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by the Plan Proponents, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Plan Proponents.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if the Debtor were, in fact, to undergo such a liquidation.

As set forth in the Liquidation Analysis, the Plan Proponents believe that Class 6 General Unsecured Creditors would likely receive no distribution or, at best, a significantly smaller pro rata distribution if the Debtor's assets were liquidated in a hypothetical chapter 7 case.

## VIII.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code and (ii) an alternative plan of reorganization.

### A.   <u>Liquidation Under Chapter 7</u>

If no plan is confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtor's remaining assets for distribution in accordance with the priorities established by chapter 7.  As discussed above, the Plan Proponents believe that liquidation under chapter 7 would result in no, or smaller distributions being made to unsecured creditors than those provided for in the Plan because there would be insufficient recoveries to make a significant distribution to unsecured creditors after distributions are made on account of Allowed Secured Claims against the Debtor.

B.      **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Debtor, the Senior Mortgagee, or any other party in interest could attempt to formulate a different plan.  Such a plan might involve either a reorganization and continuation of the Debtor's business or an orderly liquidation of its assets.  However, no party has expressed an interest in proposing an alternate plan of reorganization.

IX.
**CERTAIN RISK FACTORS TO BE CONSIDERED**

HOLDERS OF CLAIMS AGAINST THE DEBTOR AND INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

A.      **Certain Bankruptcy Law Considerations**

1.      **Risk of Non-Confirmation of the Plan**

Although the Plan Proponents believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

2.      **Risk of Non-Occurrence of the Effective Date**

Although the Plan Proponents believe that all of the conditions to the Effective Date will occur after the entry of the Confirmation Order, there can be no assurance as to the timing of the Effective Date or that such conditions will ever occur.

B.      **Certain Tax Matters**

For a summary of certain federal income tax consequences of the Plan to holders of Claims and to the Debtor, see Section XI , "Certain U.S. Federal Income Tax Consequences Of The Plan."

C.      **Additional Factors to be Considered**

1.      **The Plan Proponents Have No Duty to Update**

The statements contained in this Disclosure Statement are made by the Plan Proponents as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein

since that date.  The Plan Proponents have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

**2.      No Representations Outside This Disclosure Settlement Are Authorized**

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

**3.      No Legal or Tax Advice is Provided to You By This Disclosure Statement**

The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each holder of a Claim or Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest.

This Disclosure Statement is not legal advice to you.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

**4.      No Admission Made**

Prior to the approval of this Disclosure Statement, nothing contained herein shall constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Plan Proponents or on holders of Claims or Interests; provided, however, that upon approval of this Disclosure Statement, nothing contained herein shall constitute an admission in any proceeding other than the Chapter 11 Case.

**X.**
**SECURITIES LAWS MATTERS**

The Plan does not contemplate the issuance of any securities.

**XI.**
**CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and holders of certain claims against the Debtor.  This discussion does not address the U.S. federal income tax consequences of the implementation of the Plan to holders of claims that are entitled to reinstatement, unimpaired or otherwise entitled to payment in full in cash under the Plan.

The discussion of U.S. federal income tax consequences set forth below is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), U.S. Department of Treasury regulations promulgated or proposed thereunder, judicial authorities, published positions of the

Internal Revenue Service ("IRS") and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect). The U.S. federal income tax consequences of the contemplated transactions are complex and are subject to significant uncertainties. The Plan Proponents have not requested a ruling from the IRS or any other tax authority, or an opinion of counsel, with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or such other authorities. Thus, no assurance can be given that the IRS or such other authorities would not assert, or that a court would not sustain, a different position from any discussed herein.

Except as specifically stated otherwise, this summary assumes that a holder holds a claim or an existing Interest as a capital asset for U.S. federal income tax purposes. This summary does not address foreign, state or local tax consequences of the contemplated transactions, nor does it purport to address the U.S. federal income tax consequences of the transactions to special classes of taxpayers (*e.g.,* foreign persons or entities, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, holders that are, or hold claims or existing Interests through, pass-through entities, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, and persons holding claims or existing Interests as a hedge against, or that is hedged against, currency risk or as part of a straddle, constructive sale or conversion transaction).

The discussion does not address U.S. federal taxes other than income taxes, nor does it apply to any person that acquires any of the consideration issued pursuant to the Plan indirectly. If a partnership (or another entity that is treated as a partnership for U.S. federal income tax purposes) holds claims or existing Interests, the tax treatment of a partner (or other equity owner) generally will depend upon the status of such partner (or other owner) and upon the activities of the partnership (or other entity). This discussion is based on currently available information regarding the Plan terms and may not reflect the actual terms of the Plan upon its implementation. The foregoing summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of claims or existing Interests.

**IRS Circular 230 Notice**: To ensure compliance with IRS Circular 230, holders of Claims and existing Interests are hereby notified that: (A) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by such holders for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (B) such discussion is written in connection with the promotion or marketing by the Plan Proponents of the transactions or matters addressed herein; and (C) such holders should seek advice based on their particular circumstances from independent tax advisors.

A.    **Consequences to the Debtor**

The Plan, as currently contemplated, may result in U.S. federal income tax consequences to the Debtor. The Plan, as currently contemplated, may result in income tax consequences to the Debtor's Interest Holders in connection with the liquidation of the Debtor.

## B.    Consequences to Claim Holders

A Claim holder that receives money or other property on account of a Claim for interest accrued during the period the holder owned such Claim and not previously included in such holder's income will be required to recognize ordinary income equal to the amount of such money and the fair market value of such property received in respect of such Claim.  A holder generally may claim an ordinary deduction (or, possibly, a write-off against a reserve for bad debts) to the extent of any Claim for accrued interest that was previously included in such holder's taxable income and which will not be paid in full by the Disbursing Agent under the Plan (after allocating any payment to be made by the Debtor between principal and accrued interest), even if the underlying Claim is held as a capital asset.  The tax basis of any property received in exchange for a Claim for accrued interest under the Plan will equal the fair market value of such property on the Effective Date, and the holding period for such property will begin on the day following the Effective Date.

The extent to which consideration distributable under the Plan is allocable to interest is unknown.  Holders of Claims are advised to consult their own tax advisers to determine the amount, if any, of consideration received under the Plan that is allocable to interest.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY.   THE PLAN PROPONENTS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE ANY CREDITOR OR INTEREST HOLDER REGARDING THE TAX CONSEQUENCES OF THE PLAN.  ALL HOLDERS OF CLAIMS OR EXISTING INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES APPLICABLE TO THEM, INCLUDING WITH RESPECT TO CAPITAL GAINS TAXES, IF ANY.**

## XII.
## RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in the Disclosure Statement, the Plan Proponents believe that confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Plan Proponents urge all eligible holders of Impaired Claims to vote to **accept** the Plan, and to complete and return their ballots so that they will be **received** by counsel for the Debtor on or before 5:00 p.m. (Eastern Time) on [  ], 2025.

Dated: July 3, 2025

Respectfully submitted,

Viewstar LLC

By:   _/s/ Lee E. Buchwald_____
       Lee E. Buchwald
       Restructuring Officer

RREF IV-D SN Portfolio LLC

By:   _/s/ Jonathan Horowitz_____
       Jonathan Horowitz
       Managing Director

# EXHIBIT A
# (PLAN)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| VIEWSTAR LLC, | : |
| | : Case No.:  24-22716 (SHL) |
| Debtor. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## JOINT PLAN OF REORGANIZATION FOR VIEWSTAR LLC

New York, New York
July 3, 2025

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel:  (212) 390-8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

-and-

HOLLAND & KNIGHT LLP
Bruce J. Zabarauskas
Keith M. Brandofino
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 513-3200
bruce.zabarauskas@hklaw.com

*Counsel for RREF IV-D SN Portfolio LLC*

Viewstar LLC (the "**Debtor**") and RREF IV-D SN Portfolio LLC (the "**Senior Mortgagee**," and together with the Debtor, the "**Plan Proponents**") hereby propose the following Joint Plan of Reorganization (the "**Plan**") for the Debtor's chapter 11 case pursuant to sections 1121, 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires, (i) the terms set forth in this Article 1 shall have the following meanings when used in the Plan; (ii) any capitalized term that is used in the Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan without reference to a particular document are to the respective section of, article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and  other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and

2

effective on the Petition Date, except to the extent, that any post-Petition Date amendment to the

Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1    **"Administrative Bar Date"** means the first Business Day that is 10 days after

Confirmation.

1.2    **"Administrative Claim"** means a Claim for, or request for payment of, an

Administrative Expense (including, but not limited to, the amounts advanced to the Debtor under

the DIP Loan ) (i) as to which no objection to the allowance thereof has been interposed within the

applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or

the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the

extent such objection has been resolved in favor of the holder of such Claim.

1.3    **"Administrative Claims Objection Deadline"** means the first Business Day that

is 30 days after the Effective Date; provided that the Administrative Claims Objection Deadline

may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by a Plan

Proponent.

1.4    **"Administrative Expense"** means any actual and necessary cost or expense of

administration of this Case, other than U.S. Trustee Fees, allowable under sections 503(b),

507(a)(2), 507(b), 330 or 331 of the Bankruptcy Code, including, but not limited to, the amounts

advanced to the Debtor under the DIP Loan.

1.5    **"Allowed Claim"** means a Claim against the Debtor that has not been disallowed

pursuant to a Final Order and is not a Disputed Claim with respect to which (i) a Proof of Claim

has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been

filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount

and not disputed or contingent.

1.6    **"Allowed Interest"** means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.7    **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.8    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.9    **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

1.10    **"Bar Date"** means January 20, 2025 with respect to Creditors other than Governmental Units, and February 11, 2025 with respect to Governmental Units, the date fixed by Order of the Bankruptcy Court entered on December 5, 2024 [ECF No. 58], subsequent to which date a Proof of Claim may not be timely filed.

1.11    **"Bid Procedures"** means the bidding procedures to govern the sale of the Property approved by the Court pursuant to the Order Approving (I) Bid Procedures in Connection with the Sale of Real Property Located at 10 Mountainview Road, Upper Saddle River, New Jersey 07458, Subject to Higher or Better Offers, (II) the Form and Manner of Notice of Sale Hearing, and (III) Scheduling a Sale Hearing Date entered on April 30, 2025 [ECF No. 95].

1.12    **"Borough"** means the borough of Upper River Saddle, Bergen County, New Jersey.

1.13    **"Business Day"** means any day other than a Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.14    **"Case"** means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled *In re Viewstar LLC*, Case No. 24-22716 (SHL).

1.15    **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

1.16    **"Claim"** means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.17    **"Claims Objection Deadline"** means (a) the 30th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by a Plan Proponent.

1.18    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

1.19    **"Closing Date"** means the date of the closing of the sale of the Property under the Plan.

1.20    **"Confirmation"** means the entry of the Confirmation Order.

1.21    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.22    **"Confirmation Order"** means an Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.23    **"Creditor"** means a holder of an Allowed Claim.

1.24    **"Cure Amount"** means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an Executory Contract for any actual pecuniary loss resulting from a default in respect of an Executory Contract.

1.25    **"Debtor"** means Viewstar LLC.

1.26    **"DIP Lender"** means 10 Mountainview LLC in its capacity as lender in connection with the DIP Loan.

1.27    **"DIP Loan"** means that certain debtor-in-possession financing provided by the DIP Lender as authorized by order of the Bankruptcy Court entered on March 20, 2025 [ECF No. 85].

1.28    **"Disbursing Agent"** means Buchwald Capital Advisors LLC.

1.29    **"Disclosure Statement"** means the Disclosure Statement for the Plan, including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.30    **"Disputed Claim"** means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) any

Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if; (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.  To the extent that a Claim is held by an Insider, the Claim will be a Disputed Claim unless and until that Claim has been settled, withdrawn, or has been determined by a Final Order.

1.31    **"Disputed Claims Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to [Section 7.5] of the Plan.  All references to a banking institution and/or a domestic bank, for the purposes of (i) addressing a Disputed Claims Reserve, (ii) a domestic bank, refer only to a banking institution that is an authorized depository in the Southern District of New York.

1.32    **"Effective Date"** means the Closing Date of the sale of the Property, or such other date as may be designated in writing by both of the Plan Proponents.

1.33    **"Estate"** means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.34    **"Estimated Professional Fee Reserve"** means the reserve, in an amount not more than $250,000.00, established pursuant to [Section 2.3] of the Plan to pay Professional Fee Claims

in full, subject to their allowance by the Bankruptcy Court upon the later of (i) the Effective Date,

(ii) the date upon which the order relating to any such Allowed Professional Fee Claim become a

Final Order, or (iii) upon such other terms and conditions as may be agreed to between the holder

of such an Allowed Professional Fee Claim and the Senior Mortgagee.

1.35    **"Executory Contracts"** shall mean "executory contracts" and "unexpired leases"

of the Debtor as such terms are used within section 365 of the Bankruptcy Code.

1.36    **"Final Order"** means a judgment, order, ruling or other decree issued and entered

by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of

the states, territories or possessions of the United States or the District of Columbia, that has not

been stayed, reversed, or vacated, and that is no longer subject to appeal, certiorari proceeding, or

other proceeding for review or rehearing.  The possibility that a motion under Rule 59 or Rule 60

of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may

be filed relating to an order will not cause it not to be a Final Order.

1.37    **"Foreclosure Action"** means that certain foreclosure action commenced by the

Senior Mortgagee against the Debtor and certain other defendants in the Superior Court of New

Jersey, Bergen County.

1.38    **"Governmental Unit"** means the United States; State; Commonwealth, District;

Territory; municipality; foreign state; department; agency, or instrumentality of the United States

(but not a United States trustee while serving as a trustee in a case under this title), a State, a

Commonwealth, a District, a Territory a municipality, or a foreign state; or other foreign or

domestic government.

1.39    **"GUC Contribution"** means Cash in the amount of $10,000.00 to facilitate a Pro

Rata distribution therefrom to holders of Allowed Class 6 General Unsecured Claims should there

be insufficient available Cash from other sources under the Plan, to be funded by either: (i) the Sale Proceeds; (ii) the Senior Mortgagee to the extent that it is the Purchaser of the Property pursuant to a credit bid; or (iii) the Junior Mortgagee to the extent that it is the Purchaser of the Property pursuant to a credit bid.

1.40    **"Insider"** means an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

1.41    **"Insider Claim"** means an Allowed Claim held by or on behalf of an Insider or any successor in interest or assignee thereof.

1.42    **"Interest"** means an equity interest in the Debtor.

1.43    **"Interest Holder"** means the holder of an Allowed Interest in the Debtor.

1.44    **"Junior Mortgage"** means the junior mortgage lien dated April 1, 2020 encumbering the Property given by the Debtor to secure a loan from the Junior Mortgagee to the Debtor in the original principal amount of $4,200,000.00.

1.45    **"Junior Mortgagee"** means 10 Mountainview LLC.

1.46    **"Junior Mortgagee's Secured Claim"** means the Secured Claim of the Junior Mortgagee on account of the Junior Note and Junior Mortgage, and all other loan documents executed by the Debtor in connection therewith, allowed in the amount of $9,204,450.00 pursuant to the *Order Authorizing Debtor's Post-Petition Financing and Granting Related Relief* entered on March 20, 2025 [ECF No. 85].

1.47    **"Junior Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by the Junior Mortgagee in the original principal amount of $4,200,000.00.

1.48    **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.49    **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code, and any legally cognizable security device of any kind, and also includes Claims, any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, rights, liens, charges, judgments, rights, liabilities, interests, lis pendens, rights asserted in litigation matters, competing rights of possession, rights of any tenants, occupants or holdovers, encumbrances or claims of any kind or nature whatsoever (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated and whether due or to become due), whether arising by agreement, any statute or otherwise and whether arising before, on or after the Petition Date.

1.50    **"Litigation Claims"** means those claims that the Debtor holds against third parties which are being preserved under Article VI of this Plan.

1.51    **"Broker"** means Northgate Real Estate Group.

1.52    **"Other Priority Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.53    **"Order"** means an order of the Bankruptcy Court.

1.54    **"Petition Date"** means August 15, 2024, the date on which the Debtor commenced its Case by the filing of its voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

1.55    **"Personal Property"** means all personal property owned by the Debtor, except for (i) cash, and (ii) all Litigation Claims.

1.56    **"Plan"** means this Joint Plan of Reorganization for Viewstar LLC, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.57    **"Plan Proponents"** means, collectively, the Senior Mortgagee and the Debtor.

1.58    **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.59    **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.60    **"Professional"** means all professionals employed by the Debtor under section 327 of the Bankruptcy Code, except for the Broker.

1.61    **"Professional Fee Claim"** means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with sections 330 and 331 of the Bankruptcy Code.

1.62    **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (excluding Professional Fee Claims) filed pursuant to section 503 of the Bankruptcy Code.

1.63    **"Proof of Claim"** means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.64    **"Proof of Interest"** means a proof of Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.65    **"Property"** means singularly and/or collectively the real property of the Debtor

and the improvements thereon, located at and commonly known as 10 Mountainview Road, Upper

Saddle River, New Jersey 07458, and all Personal Property owned by the Debtor.

1.66    **"Pro Rata"** means the proportion that an Allowed Claim in a particular Class bears

to the aggregate amount of Allowed Claims within such Class.

1.67    **"Purchaser"** means the entity to whom the Property is sold pursuant to the Sale

Transaction.

1.68    **"Receiver"** means Colliers International of NJ, LLC, as the receiver of the Property

pursuant to an order dated November 17, 2022 entered by the Superior Court of New Jersey,

Bergen County in the Foreclosure Action, appointing it as the receiver in the Foreclosure Action.

1.69    **"Receivership Claims"** means Claims that have been incurred by the Receiver in

its administration and operation of the Property.

1.70    **"Released Entities"** shall have the meaning defined in [Section 8.2] of the Plan.

1.71    **"Reorganized Debtor"** means the Debtor after the Effective Date.

1.72    **"Rockland County Judgment"** means the Judgment entered on March 8, 2021

against 10 Mountain View LLC and Moshe Gold in favor of the Debtor and Yoel Abraham, in the

action *Viewstar LLC and Yoel Abraham v. 10 Mountainview LLC and Moshe Gold* filed in the

Supreme Court of the State of New York, Rockland County.

1.73    **"Rockland County Judgment Settlement"** shall have the meaning defined in

[Section 6.3] of the Plan.

1.74    **"Sale Proceeds"** means the proceeds from the Sale Transaction net of closing costs

including, but not limited to, title costs and other ordinary and necessary costs of, or credits related

to, the transfer of title to the Property.

1.75    **"Sale Transaction"** means the sale of the Property pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code to be conducted by public auction in accordance with the Bid Procedures, at which auction any party holding an Allowed Secured Claim arising from a Lien on the Property shall be entitled to credit bid to the extent permitted by the Bid Procedures.

1.76    **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the bankruptcy Rules and any amendments thereto.

1.77    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of either: (i) the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (ii) the amount permissible under applicable law in the event that a secured creditor makes a valid election under section 1111(b) of the Bankruptcy Code.

1.78    **"Senior Mortgage"** means the senior mortgage lien dated April 1, 2020 encumbering the Property given by the Debtor to secure a loan from the Sterling National Bank to the Debtor in the original principal amount of $12,600,000.00.  By virtue of certain allonges and assignments executed by Sterling National Bank, the Senior Mortgagee is the holder of the Senior Mortgage.

1.79    **"Senior Mortgagee"** means RREF IV-D SN Portfolio LLC.

1.80    **"Senior Mortgagee's Secured Claim"** means the Secured Claim of the Senior Mortgagee on account of the Senior Note and Senior Mortgage, and all other loan documents executed by the Debtor in connection therewith.

1.81    **"Senior Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by the Senior Mortgagee in the original principal amount of $12,600,000.00.

1.82    **"Transfer Taxes"** means any and all stamp taxes or similar taxes, which, but for the applicability of section 1146(a) of the Bankruptcy Code, would be applicable to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

1.83    **"Unimpaired"** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.84    **"U.S. Trustee Fees"** mean all fees and charges against the Estate under section 1930 of title 28 of the United States Code.

1.85    **"Unsecured Claim"** means an Allowed Claim which is not an Administrative Claim, a U.S. Trustee Fee, an Insider Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

**ARTICLE II**

**TREATMENT OF UNCLASSIFIED CLAIMS**

2.1    Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent they are Allowed Claims, shall receive the treatment provided in this Article 2 in full satisfaction thereof.

2.2    **Administrative Bar Date.**  Except as otherwise provided in [Section 2.3] of the Plan, requests for payment of and/or Proof of Administrative Claims must be filed no later than the Administrative Bar Date.  Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or its Property.

2.3    **Professional Fee Claims.**  All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications, on or before twenty-eight (28) days after the Confirmation Date, for allowance of compensation for services rendered and reimbursement of expenses incurred.  No later than five (5) days prior to the Confirmation Hearing, all entities holding claims for Professional Fee Claims (other than the Broker) shall serve via email upon counsels for the Plan Proponents a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals.  Professional Fee Claims, subject to allowance by the Bankruptcy Court shall be paid in full from the proceeds of the Sale Transaction upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Allowed Professional Fee Claim becomes a Final Order; provided, however that, if the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then the Allowed Professional Fee Claims shall be paid by the Senior Mortgagee.  Any compensation to be paid to the Broker shall be paid pursuant to the terms of an order of the Bankruptcy Court.

2.4    **Post-Petition Tax Claims.**  All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) the Administrative Bar Date, and (ii) 60 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit.  Any

holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor, the Property or the Purchaser, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

2.5    **Administrative Tax Claims Held by Governmental Units.**   Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) on such later date and upon such other terms as may be agreed to, in writing, between the Debtor or Reorganized Debtor, as applicable, and such Governmental Units on or before the Confirmation Date.

2.6    **Administrative Claims.**   Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three Business Days after such Claim becomes an Allowed Administrative Claim or (ii) on such later date and upon such other terms as may be agreed to in writing between the Debtor or Reorganized Debtor, as applicable, and the holder of such Claim.

2.7    **Priority Tax Claims.**   Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the applicable Governmental Unit, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in full on the Effective Date.

2.8    **U.S. Trustee Fees.**    The Disbursing Agent shall pay all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon until conversion, dismissal or closing of this Case by means of a final decree, whichever happens earlier.  Within ten (10) days after the Effective Date, the Debtor shall file a closing report detailing all disbursements made at the closing of the Property.  All fees and charges assessed against the Debtor under § 1930 of title 28 of the United States Code, and any applicable interest thereon, through dismissal, conversion or entry of a final decree, shall be paid by the Disbursing Agent, in Cash in full as required by statute from proceeds of the Sale Transaction, except that: (i) if the Senior Mortgagee is the Purchaser of the Property pursuant to a credit bid, then the U.S. Trustee Fees shall be paid by the Senior Mortgagee; (ii) if the Junior Mortgagee is the Purchaser of the Property, then the U.S. Trustee Fees shall be paid by the Junior Mortgagee.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims are classified as set forth in this Article 3.  A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class (and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes), and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1    **Class 1 – Other Priority Claims.**    Class 1 consists of all Allowed Other Priority Claims.

3.2    **Class 2 – Borough's Secured Claims.**    Class 2 consists of the Allowed Secured Claims of the Borough.

3.3    **Class 3 – Receivership Claims.**    Class 3 consists of the Allowed Receivership Claims.

3.4    **Class 4 – Senior Mortgagee's Secured Claim.**  Class 4 consists of the Allowed

the Senior Mortgagee's Secured Claim.

3.5    **Class 5 – Junior Mortgagee's Secured Claim.**  Class 5 consists of the Allowed

the Junior Mortgagee's Secured Claim.

3.6    **Class 6 – General Unsecured Claims.**  Class 6 consists of Allowed General

Unsecured Claims, including any deficiency claims of the Senior Mortgagee and the Junior

Mortgagee.

3.7    **Class 7 – Equity Interests.**  Class 7 consists of all Allowed Interests in the Debtor.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND INTERESTS**

4.1    **Class 1 – Other Priority Claims.**  Subject to the provisions of Article 7 of the Plan

with respect to Disputed Claims, in full satisfaction of Class 1 Other Priority Claims, the holders

of Other Priority Claims shall receive the following treatment:  on the Effective Date, or as soon

as practicable after such Claims become Allowed Claims, each holder of an Allowed Claim in

Class 1 shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction

(i) in Cash, in the full amount of its Allowed Other Priority Claim, or (ii) on such later date and

upon such other terms as may otherwise be agreed to in writing between the Debtor or Reorganized

Debtor, as applicable, and the holder of such Claim; provided, however, (x) in the event that the

Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such

payment shall be made by the Senior Mortgage; and (y) in the event that the Junior Mortgagee is

the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made

by the Junior Mortgagee.  Class 1 is unimpaired, and the holders of Other Priority Claims are

conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

18

Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.2    **Class 2 – Borough's Secured Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 2 Borough's Secured Claims, the holder of such Claims shall receive the following treatment:  on the Closing Date, the Disbursing Agent shall pay, in Cash, the full amount of the Allowed Class 2 Claim.  Class 2 is unimpaired, and the holder of Allowed Secured Claims in Class 2 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holder of Allowed Secured Claims in Class 2 is not entitled to vote to accept or reject the Plan.

4.3    **Class 3 – Receivership Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 3 Receivership Claims, the Receiver shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, the Receiver shall receive payment from the Disbursing Agent from the proceeds of the Sale Transaction (i) in Cash, in the full amount of its Allowed Receivership Claim that has not been paid, or (ii) as may be otherwise agreed in writing between the Debtor or Reorganized Debtor, as applicable, and the Receiver; provided, however: (x) in the event that the Senior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Senior Mortgage; and (y) in the event that if the Junior Mortgagee is the Purchaser under the Sale Transaction pursuant to a credit bid, then such payment shall be made by the Junior Mortgagee.  Class 3 is unimpaired, and the Receiver is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Receiver is not entitled to vote to accept or reject the Plan.

4.4    **Class 4 –Senior Mortgagee's Secured Claim.**    In full satisfaction of the Class 4

Senior Mortgagee's Secured Claim, the Senior Mortgagee shall receive the following treatment:

(i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims,

Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims,

on the Effective Date, or as soon as possible after the Senior Mortgagee's Secured Claim becomes

an Allowed Claim, the Senior Mortgagee shall receive from the Disbursing Agent remaining Cash,

plus any Deposit forfeited by a bidder pursuant to the Bid Procedures if any, up to the full amount

of its Allowed Secured Claim, or (ii) if the Property is sold to the Senior Mortgagee by credit bid,

then on the Effective Date, the Senior Mortgagee, or its designee, shall take title to the Property

free and clear of all Liens, except permitted encumbrances as determined by the Senior Mortgagee

(which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's

sole discretion).    To the extent that Cash and Sale Proceeds are insufficient to pay the Class 4

Claim in full, the deficiency amount shall be treated as a Class 6 Claim.    In the event that the holder

of the Class 4 Claim is the Purchaser of the Property pursuant to a credit bid, then the Class 4

Claim shall be deemed paid by the amount of its credit bid, and any remaining claim held by the

holder of the Class 4 Claim shall be treated as a Class 6 Claim.    The Class 4 Claim shall include

post-petition interest in accordance with applicable law to the extent that the value of the Property

exceeds the amount of the Class 4 Claim.

Until the Closing Date, the Senior Mortgagee shall retain its duly perfected and first priority

mortgage and security interests and liens in all of the Debtor's assets, including without limitation

the Property.    Effective as of the Closing Date, the mortgage, security interests and liens of the

Class 4 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same

extent, validity, and priority without any need for the holder of the Class 4 Allowed Claim to take

20

any act of perfection.  The Class 4 Senior Mortgagee's Secured Claim is Impaired, and the Senior
Mortgagee is entitled to vote to accept or reject the Plan.

      4.5    **Class 5 –Junior Mortgagee's Secured Claim.**  In full satisfaction of the Class 5
Junior Mortgagee's Secured Claim, the Junior Mortgagee shall receive the following treatment:
(i) to the extent any Cash and Sale Proceeds is remaining after payment of Administrative Claims,
Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims,
and Class 4 Claims, on the Effective Date, or as soon as possible after the Junior Mortgagee's
Secured Claim becomes an Allowed Claim, the Junior Mortgagee shall receive from the
Disbursing Agent remaining Cash, if any, up to the full amount of its Allowed Secured Claim, or
(ii) if the Property is sold to the Junior Mortgagee by credit bid, then on the Effective Date, the
Junior Mortgagee, or its designee, shall take title to the Property free and clear of all Liens, except
permitted encumbrances as determined by the Junior Mortgagee (which may include the existing
mortgage lien of the Junior Mortgagee, in the Junior Mortgagee's sole discretion).  In the event
that the holder of the Class 5 Claim is the Purchaser of the Property pursuant to a credit bid, then
the Class 5 Claim shall be deemed paid by the amount of its credit bid, and any remaining claim
held by the holder of the Class 5 Claim shall be treated as a Class 6 Claim.

      Until the Closing Date, the Junior Mortgagee shall retain its duly perfected and second
priority mortgage and security interests and liens in all of the Debtor's assets, including the
Property.  Effective as of the Closing Date, the mortgage, security interests and liens of the Class
5 Allowed Claim shall be transferred automatically to the proceeds of the Sale to the same extent,
validity, and priority without any need for the holder of the Allowed Class 5 Claim to take any act
of perfection.  The Class 5 Junior Mortgagee's Secured Claim is Impaired, and the Junior
Mortgagee is entitled to vote to accept or reject the Plan.

4.6    **Class 6 – General Unsecured Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction of Class 6 General Unsecured Claims, the holders of such Claims shall receive the following treatment:  each holder of an Allowed Class 6 General Unsecured Claim shall receive from the Disbursing Agent its Pro Rata payment of the remaining Cash and Sale Proceeds as soon as practicable after payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, the Class 3 Claim, Class 4 Claims, and Class 5 Claims; *provided, however,* if the amount of such remaining Cash and Sale Proceeds available to pay Allowed Class 6 Claims is less than $10,000.00, the Disbursing Agent shall pay each holder of a Allowed Class 6 Claim a pro rata share of the GUC Contribution in an amount sufficient to pay all holders of Allowed Class 6 Claims the total amount of $10,000.00, because the Senior Mortgagee and Junior Mortgagee have agreed to waive any distribution from the GUC Contribution. In addition to the foregoing, the proceeds of any Litigation Claims following the payment of the legal fees and expenses associated with such Litigation Claims shall be paid to the holders of Class 6 Allowed Claims on a pro-rata basis.  Class 6 Claims are Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.7    **Class 7 – Equity Interests.**  On the Effective Date, all Interest Holders shall retain their Interests and their rights as to any remaining balance of Cash, if any, that may exist after payment in full of all Allowed Claims and Classes of Claims against the Debtor.  Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for winding down its own affairs.  Class 7 Equity Interests are Impaired, and the holders of Equity Interests are entitled to vote to accept or reject the Plan.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    **Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and unexpired leases to which the Debtor is a party shall be deemed rejected unless assumed by order of the Bankruptcy Court.

5.2    **Rejection Claims.**  Allowed Claims arising from the rejection of Executory Contracts and unexpired leases of the Debtor pursuant to Section 5.1 of the Plan shall be treated as General Unsecured Claims.

5.3    **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Plan Proponents within thirty (30) days after the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in a manner provided in such Final Order).  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or their successors or their respective Property.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.1    **The Sale Transaction and Plan Funding**.  Payments under the Plan will be paid from either the Sale Proceeds, Cash held by or on behalf of the Debtor as of the Effective Date, and/or any Cash to be contributed by the Senior Mortgagee or Junior Mortgagee under the Plan. The Sale Transaction will be implemented pursuant to sections 363 and 1123(a)(5)(D) of the

Bankruptcy Code and the Bid Procedures.  Prior to or on the Effective Date, the Property shall be sold to the Purchaser, pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code free and clear of all Liens (except permitted encumbrances as determined by the Purchaser), with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan.  Except as set forth elsewhere in the Plan, all distributions to be made on the Effective Date shall be transferred to the escrow account of the Disbursing Agent promptly following the closing of the Sale Transaction.  Only in the event that the Senior Mortgagee or its assignee or designee is the Purchaser of the Property by credit bid or if the Property is sold to a third party and the Cash and Sale Proceeds are insufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims in accordance with the terms of the Plan, then the Senior Mortgagee shall deliver to the Disbursing Agent no later than the Closing Date for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims in accordance with the terms of the Plan, and (ii) the GUC Contribution.  Only in the event that the Junior Mortgagee or its assignee or designee is the Purchaser of the Property by credit bid, then the Junior Mortgagee shall deliver to the Disbursing Agent no later than the Closing Date for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 4 Claims in accordance with the terms of the Plan, and (ii) the GUC Contribution.  Within two (2) Business Days after entry of the Confirmation Order, the Debtor will deliver to the Disbursing Agent all

Cash of the Debtor wherever located which amounts may be utilized by the Plan Proponents to pay any and all Allowed Claim(s) in their sole discretion.

The Property will be sold free and clear of all Liens (except permitted encumbrances as determined by the Purchaser (which may include the existing mortgage lien of the Senior Mortgagee, in the Senior Mortgagee's sole discretion) and the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan).  The Property will be sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.  The Purchaser will be required to pay at closing, in cash, all pre-petition and post-petition claims secured by a lien that is senior in priority to the Senior Mortgagee's lien.

6.2    **Sale Approval.**  As a part of the Sale Transaction under the Plan, and in order to ensure consummation of the Plan, the order approving the Sale Transaction to be entered after the auction shall, subject to Bankruptcy Court approval, contain the following findings of fact and conclusions of law: (i) that the terms and conditions of the Sale Transaction and the purchase agreement are fair and reasonable, (ii) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, without any fraud, (iii) that the transfer of the Property to the Purchaser represents

an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) that the Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code, with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan; except that in the event that the Senior Mortgagee is the Purchaser, then the Property may be sold subject to its mortgage lien in the sole discretion of the Senior Mortgagee, (vi) that the Sale Transaction was not controlled by an agreement among potential purchasers for purposes of section 363(n) of the Bankruptcy Code, and (vii) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser.  All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

6.3     **General Settlement of Claims.**  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies against the Debtor resolved pursuant to the Plan, including the Rockland County Judgment Settlement.  Pursuant to the Rockland County Judgment Settlement, on the Effective Date, 10 Mountainview LLC and/or Moshe Gold, as judgment debtors under the Rockland County Judgment, will be responsible to the Debtor, in full and final satisfaction, settlement and discharge of the Debtor's 50% interest in the Rockland County Judgment, the sum of $83,812.98 ("Rockland County Judgment Settlement Payment"), which amount constitutes the Debtor's 50% interest in the Rockland County Judgment.  The Rockland County Judgment Settlement Payment will be

offset against the total amount that the Junior Mortgagee will be entitled to receive under the Plan.

Except for claims under and pursuant to the Rockland County Judgment, nothing herein shall

release any claim against a non-debtor person or entity.

      6.4    **The Disbursing Agent.**    The Disbursing Agent shall be appointed on the

Confirmation Date on behalf of the Debtor and its estate in order to take such actions as may be

necessary or appropriate to implement the Plan, including the Sale Transaction, the claims

administration process, and distributions to creditors.  The Disbursing Agent is authorized to

employ and compensate professionals to represent it with respect to its responsibilities under the

Plan.  Except as set forth elsewhere in the Plan, all payments required to be made under the Plan

shall be made by the Disbursing Agent in accordance with the terms of the Plan.  The Disbursing

Agent shall take all necessary steps, and perform all necessary acts, to consummate the terms and

conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent

with section 1142 of the Bankruptcy Code, authorizing and directing the Debtor and any other

necessary party to execute or deliver, or to join in the execution or delivery, on the Effective Date,

of any instrument required to effect a transfer of property required by the Plan, in form and

substance satisfactory to Purchaser, and to perform any act, including the satisfaction of any Lien,

that is necessary for the consummation of the Plan.  Each of the Plan Proponents is designated a

party in fact to execute all documents in the name of the Debtor as may be required to consummate

the Sale Transaction, including, without limitation, execute any and all documents necessary to

effectuate the transfer of title of the Property to the Purchaser at the closing of the Sale Transaction,

including without limitation a deed, a bill of sale and all required transfer tax returns and any other

documents in the name of the Debtor as may be required to consummate the Sale Transaction.

Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, should the Property be sold to the

Senior Mortgagee, or its designee, free and clear of any and all Liens, the Senior Mortgagee shall have the option, in its sole and absolute discretion, to take title to the Property subject to its existing mortgage lien of record, or to extend that option to any third party purchaser.  The Confirmation Order will also authorize the Disbursing Agent to hold all Sale Proceeds from the closing of the Sale Transaction until Disbursing Agent makes distributions or disbursements under the Plan.  The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.

6.5    **Vesting of Assets.**  Except as otherwise provided in the Plan, upon the closing of the sale of the Property, the Property shall vest in the Purchaser, free and clear of all Liens.  From and after the Effective Date, the Purchaser may operate the Property and use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as otherwise provided herein.  After the Plan has been fully administered, including payment of all Allowed Claims, fees and expenses, any remaining property of the Estate that the Debtor was not required to turnover to the Disbursing Agent under the Plan shall vest in the Reorganized Debtor free and clear of all Liens, unless otherwise provided pursuant to the Plan and the Confirmation Order.

6.6    **Exemption from Certain Taxes.**  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of

28

the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.7    **Execution of Documents.**

(a)    On the Effective Date, the Debtor and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)    Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, claim or encumbrance that is to be released and satisfied under compliance with the provisions of the Plan) not expressly in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.8    **Filing of Documents.**    Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.9 **Preservation of Insurance.** The Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor or any other person or entity. Likewise, the Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or any insurance carrier.

6.10 **Preservation of Rights of Action.** Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor or its designee, who may, in accordance with its determination of the best interest of the estate, enforce any claims, rights and causes of action arising under section 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory. The proceeds of any Litigation Claims following the payment of the legal fees and expenses associated with such Litigation Claims shall be paid to the holders of Class 6 Allowed Claims on a pro-rata basis.

6.11 **Funding.** Except as set forth otherwise in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan. Except as set forth elsewhere in the Plan, the Plan will be funded from the Sale Proceeds, any Cash turned over by the Debtor, and, if necessary, the GUC Contribution. At Closing, the Disbursing Agent shall segregate sufficient Cash to pay or reserve for all payments that are to be made pursuant to the terms of the Plan. In the event that the proceeds of the Sale Transaction are insufficient to fund the GUC Contribution, then, on the Closing Date, the GUC Contribution shall be paid by: (i) the Senior Mortgagee to the Disbursing Agent if the Senior Mortgagee is the Purchaser pursuant to a credit bid; and (ii) the Junior Mortgagee to the Disbursing Agent if the

Junior Mortgagee is the Purchaser pursuant to a credit bid.  The Disbursing Agent shall retain

sufficient funds in a segregated account to make distributions as provided in the Plan on account

of Allowed Claims, including Allowed Professional Fee Claims and U.S. Trustee Fees.  Any fees

due to the Broker will be paid in accordance with the order authorizing the Broker's retention.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

7.1    **Disbursing Agent.**  The Disbursing Agent has posted a bond in the amount of

$2,500,000.00 as security for the performance of its duties.  The Disbursing Agent shall have no

obligation to file tax returns or similar reports with the appropriate taxing authorities.  The

Disbursing Agent shall not have, or incur any liability to any entity for any action take or omitted

to be taken in connection with or related to the formulation, preparation, dissemination,

Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument,

release or other agreement or document created or entered into, or any other action taken or omitted

to be taken in connection with the Plan, except in the case of gross negligence, willful misconduct,

criminal conduct, or for any liability pursuant to 28 U.S.C. § 959 solely in connection with carrying

out of its duties under the Plan, which liability shall be expressly limited to the period commencing

from the Effective Date of the Plan and ending on the date that all disbursements in accordance

with the Plan have been distributed.

7.2    **Timing of Distributions Under the Plan.**  Subject to Section 7.4 of the Plan, any

payments, distributions or other performance to be made pursuant to the Plan on account of any

Allowed Claim shall be deemed to be timely made if made on or within five (5) Business Days

following the later of (i) the Effective Date, or (ii) the expiration of any applicable objection

deadline with respect to such Claim, or (iii) such other times provided in the Plan.  Notwithstanding

anything to the contrary contained in the Plan, distributions on account of Class 6 General

31

Unsecured Claims will not be made until after the total amount of Allowed Claims in such Class has been determined, and distributions have been made to holders of Allowed Claims in Classes 1 through 5.

7.3    **Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

7.4    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any disputed portion of a Disputed Claim.

7.5    **Escrow of Cash Distributions.**

(a)    Unless otherwise agreed to in writing by the Disbursing Agent and the holder of any Claim to which this Section 7.5(a) applies, on the Effective Date the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property (whether received from the Debtor, the Senior Mortgagee, or the Purchaser) equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) such Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Claims of Governmental Units for any tax, (iii) any disputed cure amount and (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code.  Notwithstanding the foregoing, the undisputed portion of any Disputed Claim will be distributed in accordance with the Plan.

(b)        In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c)        The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be deposited.

7.6        **Distribution After Allowance.**  Within ten (10) days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the funds placed in escrow in accordance with Section 7.5 of the Plan all Cash or other property to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

7.7        **Investment of Segregated Cash and Property.**  To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for an investment made or any omission to invest such Cash, other property or proceeds.

7.8        **Distribution After Disallowance.**  Subject to Section 7.5(c) of the Plan, the remaining Cash, if any, and other property segregated on account of Disputed Claims, including

all allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be paid to the Allowed Interests, if any.

7.9    **Delivery of Distributions.**    Except as provided in Sections 7.11 and 7.12 of the Plan, distributions to holders of Allowed Claims shall be made:  (i) at the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) at the addresses set forth in any written notices of address change delivered to the Disbursing Agent; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of change of address.

7.10    **Undeliverable Distributions.**

(a)    If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution become deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 7.12 of the Plan.

(b)    Nothing contained in the Plan shall require the Senior Mortgagee, the Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

7.11    **Unclaimed Distributions.**    Any Cash or other property to be distributed under the Plan shall be retained by the Disbursing Agent if it is not claimed by the entity entitled thereto before the later of (i) six months after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

7.12    **Set-offs.**  The Disbursing Agent may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.  Parties affected by set-offs will receive a three (3) day notice of such a set-off.

7.13    **Interest on Claims.**  Except as otherwise expressly provided for in the Plan or the Bankruptcy Code, the Confirmation Order, other order of the Bankruptcy Court, or required by applicable bankruptcy law, interest accruing after the Petition Date shall not be paid on any unsecured or under-secured Claims, and no unsecured or under-secured Claimant shall be entitled to be paid interest accruing on or after the Petition Date on any Claim.

## ARTICLE VIII

## INJUNCTION AND RELEASES

8.1    **Injunction.**  Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date:  (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.  Except as otherwise provided in the Confirmation Order, entry of the Confirmation Order shall constitute an injunction

against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from the Senior Mortgagee, from the Junior Mortgagee, from the Disbursing Agent, or from the Property, any claim, obligation or debt against the Debtor that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.  Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor herein shall not receive a discharge in connection with this liquidating Plan.

8.2    **Limitation of Liability.**  Neither the Debtor, the Senior Mortgagee, the Junior Mortgagee, the Disbursing Agent nor any of their respective officers, attorneys, directors, or employees (acting in such capacity) nor any professional person employed by any of them (collectively, the **"Released Entities"**), shall have or incur any liability between the Petition Date and the Effective Date to any holder of a Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any action taken or omitted to be taken in connection with, related to, or arising out of, the Chapter 11 Case, or the formulation, preparation, dissemination, Confirmation or consummation of the Plan, in each case other than claims or causes of action for fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in the Plan shall exculpate or release any Released Entities from any obligations under the Plan or a prior order of the Court.  Nothing in the Plan shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or

any criminal laws of the United States or any state and local authority against the Debtor, the Senior Mortgagee, the Disbursing Agent or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Entities referred to herein. Nothing in the Plan shall limit the liability of any professionals involved herein for malpractice.

8.3     **Plan and Confirmation Order as Release.**  Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 8 of the Plan.

8.4     **Injunction Against Interference with Plan.**  Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, will be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided,* that nothing herein or in the Confirmation Order shall preclude, limit, restrict or prohibit any party in interest from seeking to enforce the terms of the

Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

8.5    **No Effect On Guarantees**.  Nothing in this Plan shall have the effect of releasing or modifying any guaranty executed by any Person concerning any indebtedness of the Debtor. Nothing in this Plan shall enjoin or stay any creditor or party in interest from pursuing its rights against any Person who guaranteed any indebtedness of the Debtor.

## ARTICLE IX

## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1    **Condition to Confirmation.**   The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee.

9.2    **Conditions to Effective Date.**   Unless waived in a writing signed by both the Debtor and the Senior Mortgagee, the Plan will not become effective and the Effective Date will not occur, and the Senior Mortgagee will not be required to fund any obligations under the Plan, unless and until the Debtor and the Senior Mortgagee are reasonably satisfied that:

(a)    The Confirmation Order has been entered and is not stayed;

(b)    The Bankruptcy Court shall have entered the order approving the Sale Transaction in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee;

(c)    All Documents and agreements necessary to effectuate the Sale Transaction have been executed and delivered in form and substance reasonably satisfactory to the Debtor and the Senior Mortgagee, and the Sale Transaction shall have closed; and

(d)    Only in the case in which the Senior Mortgagee is the purchaser of the Property pursuant to credit bid, Allowed Administrative Claims, Professional Claims (not including the fees of the Broker) and Allowed Priority Claims do not exceed $400,000.00.

9.3     Each of the conditions to confirmation, the Plan becoming effective, or the occurrence of the Effective Date may be waived in whole or in part only by both the Debtor and the Senior Mortgagee in their sole discretion without the need for notice or a hearing.

9.4     **Binding Effect.**  Subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of the Plan will bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

10.2     **Compliance with Tax Requirements.**  In connection with the Plan, the Debtor, and where applicable, the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.3     **Due Authorization by Creditors.**  Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or

39

implied, that may or can in any way defeat or modify the right released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

10.4    **Amendments.**    The Plan may be altered, amended or modified by the Plan Proponents at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 provided such alteration, amendment or modification is evidenced by a writing signed by both the Debtor and  Senior Mortgagee, and filed with the Bankruptcy Court.

10.5    **Revocation.**    The Plan Proponents may revoke or withdraw the Plan at any time prior to the Confirmation Date pursuant to a writing signed by both the Debtor and Senior Mortgagee and filed with the Bankruptcy Court.  If the Plan is revoked or withdrawn, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

10.6    **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Plan Proponents may request confirmation under section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponents and the Disbursing Agent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor (and not the Disbursing Agent), shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting

requirements; provided, however, that the that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

10.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.10   **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.11   **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein.

<u>If to the Debtor</u>:

Viewstar LLC
c/o Buchwald Capital Advisors LLC
420 Lexington Avenue, Suite 1402
New York, NY 10170-0057
Lbuchwald@buchwaldcapital.com

with a copy to Counsel to the Debtor:

Rubin LLC
Paul Rubin
11 Broadway, Suite 715
New York, NY 10004
prubin@rubinlawllc.com

<u>If to the Senior Mortgagee</u>:

Rialto Capital Advisors, LLC
Attn: Jonathan Horowitz

200 S. Biscayne Blvd., Suite 3550
Miami, Florida 33131

with a copy to Counsel to the Senior Mortgagee:

Holland & Knight LLP
Attn: Bruce Zabarauskas
Keith Brandofino
787 Seventh Avenue
New York, NY 10019
bruce.zabarauskas@hklaw.com
keith.brandofino@hklaw.com

If to any Creditor:

At (i) the addresses set forth on the applicable Proofs of Claim filed by such holder, (ii) the
addresses set forth in any written notices of address changes delivered to the Disbursing
Agent after the date of any written notices of address changes delivered to the Disbursing
Agent after the date of any related Proof of Claim, or (iii) the address reflected in the
Schedules if no Proof of Claim is filed and then Disbursing Agent has not received a written
notice of a change of address

If to any Entity that has filed a notice of appearance:

At the address set forth on such notice of appearance

10.12    **Governing Law.**    Except to the extent that the Bankruptcy Code or Bankruptcy

Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument,

release or other agreement or document entered into in connection with the Plan, the rights and

obligations arising under the Plan shall be governed by, and construed and enforced in accordance

with the laws of the State of New York without giving effect to the principle of conflict of laws

thereof.

10.13    **Other Actions.**    Nothing contained herein shall prevent the Senior Mortgagee, the

Debtor, the Disbursing Agent or Creditors from taking such actions as may be reasonably

necessary to consummate the Plan, although such actions may not specifically be provided for

within the Plan.

42

10.14  **No Discharge.**  Notwithstanding anything to the contrary contained in the Plan or any exhibit or supplement thereto, pursuant to 11 U.S.C. § 1141(d)(3), the Debtor shall not receive a discharge in connection with this liquidating Plan.

10.15  **Severability.**  In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

10.16  **Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

11.1  **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

a.    Ensure that the Plan is consummated, and to enter an Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

b.    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

c.    Grant or deny any and all applications for the allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

43

d.       Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

e.       Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

f.       Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

g.       Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

h.       Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

i.       Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, and modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

j.       Cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

k.      Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

l.      Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

m.      Determine any disputed arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

n.      Enter and implement such orders as are necessary or appropriate to implement or consummate the proposed sale of the Property.

o.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

p.      Enter an Order or Final Decree concluding the Case.

11.2    **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XII

## CLOSING THE CASE

12.1    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.  The Plan may be altered, amended, modified or withdrawn by the Plan Proponents at any time before substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy

Code and Bankruptcy Rule 3019.  11 U.S.C. § 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan.  Prior to Confirmation, if the Plan is modified consistent with the terms hereof, pursuant to section 1127(a) "the plan as modified becomes the plan."  No order of the Court is required to modify the Plan under the terms of section 1127(a); however, the proponent of a modification to a plan must comply with section 1125 of the Bankruptcy Code with respect to the plan as modified. If the Plan Proponents revoke or withdraw the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

12.2    **Closing the Case.**  Within fourteen (14) days following the full administration of the Debtor's Estate, the Disbursing Agent or the Debtor shall file on notice to the United States Trustee's Office, an application and proposed order seeking a final decree, closing this case pursuant to Bankruptcy Rule 3022.

12.3    **Post-Confirmation Status Reports.**    The Debtor shall file quarterly post-confirmation status reports and disbursement reports and schedule post-confirmation status conferences until the closing of the Debtor's case by means of a final decree, dismissal or conversion of this case, whichever is earlier.

Dated:  July 3, 2025
        New York, New York

Viewstar LLC

By:  */s/ Lee E. Buchwald*
        Lee E. Buchwald
        Restructuring Officer

RREF IV-D SN Portfolio LLC

By:  */s/ Jonathan Horowitz*
        Jonathan Horowitz
        Managing Director

# EXHIBIT B
# (LIQUIDATION ANALYSIS)

Viewstar LLC
Case No. 24-22716 (SHL)

Liquidation Analysis

This Liquidation Analysis compares the potential distributions to creditors under chapter 7 of the Bankruptcy Code and the proposed distributions under the *Joint Plan of Reorganization for Viewstar LLC* (the "Plan") proposed by Viewstar LLC (the "Debtor") and RREF IV-D SN Portfolio LLC (the "Senior Mortgagee," and together with the Debtor, the "Plan Proponents"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

| Potential Distribution In A Chapter 7 Liquidation | | |
|---|---|---|
| **Assets** | **Est. Liquidation Value** | **Notes** |
| Remaining Cash (as of 6/1/25) | $1,552.00 | |
| Property | $21,500,000.00[1] | |
| Total Assets | **$21,501,552.00** | |
| | | |
| **Estimated Administrative and Priority Tax Claims** | | |
| Chapter 7 Trustee Fees | $668,250.00 | |
| Chapter 7 Professional Fee Claims | $25,000.00 | |
| Chapter 11 Professional Fee Claims | $250,000.00 | |
| Administrative Tax Claims | $0.00 | |
| Priority Tax Claims | $12,929.02 | POCs 2 (IRS) and 6 (New Jersey) |
| Other Priority Claims | $0.00 | |
| | | |
| Total Est. Admin. and Priority Tax Claims | $956,179.02 | |
| | | |
| **Estimated Secured Claims** | | |
| | | |
| Borough's Secured Claims | $0 | |
| Senior Mortgagee's Secured Claim | $17,413,335.80 | Amended POC |
| Junior Mortgagee's Secured Claim | $9,204,450.00 | POC |
| | | |
| Total Est. Secured Claims | $26,617,785.80 | |
| | | |
| **Total Administrative, Priority and Secured Claims** | **$27,573,964.82** | |
| Available Distribution to General Unsecured Claims | $0.00 | 0% distribution |

---

[1] This figure is based on the offer from the Stalking Horse Bidder.

1

| Proposed Distributions Under Plan Proponent's Chapter 11 Plan | | |
|---|---|---|
| **Assets** | **Est. Value** | **Notes** |
| Remaining Cash (as of 6/1/25) | $1,552.00 | |
| Property | $21,500,000.00 | |
| Total Assets | **$21,501,552.00** | |
| | | |
| **Estimated Administrative and Priority Tax Claims** | | |
| Statutory Fees | $172,000.00 | |
| Administrative Claims | $0.00 | |
| Professional Fee Claims | $250,000.00 | |
| Administrative Tax Claims | $0.00 | |
| Priority Tax Claims | $12,929.02 | POCs 2 (IRS) and 6 (New Jersey) |
| | | |
| Total Est. Admin. and Priority Tax Claims | **$434,929.02** | |
| | | |
| **Estimated Plan Distributions** | | |
| | | |
| Class 1 Other Priority Claims | $0.00 | |
| Class 2 Borough's Secured Claims | $0.00 | |
| Class 3 Receivership Claims | $0.00 | |
| Class 4 Senior Mortgagee's Secured Claim | $17,413,335.80 | Amended POC |
| Class 5 Junior Mortgagee's Secured Claim | $3,626,835.18 | |
| Class 5 General Unsecured Claims | $10,000.00 | pro rata distribution of 1%[2] |
| Class 6 Equity Interests | $0.00 | |

---

[2] The total amount of General Unsecured Claim is $8,249,284.77, which includes the claim of the Debtor's sole member, Yoel Abraham, in the amount of $7,726,746.81 filed under Proof of Claim No. 1 on the Debtor's claims register.